**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

_____

|  |  |  |
|---|---|---|
| | ) | |
| PAMELA STELLA, individually and | ) | |
| on behalf of all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 07-CV-6509 |
| | ) | |
| LVMH PERFUMES AND COSMETICS | ) | Hon. Elaine E. Bucklo |
| USA, INC., a New York corporation, | ) | Magistrate Judge Arlander Keys |
| | ) | |
| Defendant. | ) | |

_____)

**MEMORANDUM IN SUPPORT OF DEFENDANT LVMH PERFUMES AND**
**COSMETICS, INC.'S MOTION TO DISMISS**

This action is one of several lawsuits inspired by a sensationalist report about lead in lipstick recently published by an advocacy group calling itself the Campaign for Safe Cosmetics ("CSC"). The CSC report is full of inflammatory rhetoric about a supposed new health concern, but neglects to mention that the presence of trace amounts of lead in some lipstick has actually been known for many years, including by the U.S. Food & Drug Administration ("FDA"). Among other things, the CSC report contends that FDA's 0.1 parts per million (ppm) guideline for lead in candy is the appropriate standard by which to evaluate lead in lipstick. The FDA, however, has flatly rejected any such comparison between candy, which is intended to be ingested regularly and in significant quantities by children, and lipstick, which obviously is not.

In her complaint, plaintiff takes an even more extreme, and somewhat contradictory, approach to the CSC data. Undeterred by the FDA's repudiation of the candy comparison, plaintiff adopts the CSC's view that the lipstick at issue in this case, Dior Addict Positive Red (hereinafter "Dior lipstick"), is unsafe because it allegedly contains 0.21 ppm lead, which plaintiff contends exceeds the 0.1 ppm guideline recommended by the FDA for lead in candy.

But plaintiff must know that any legitimate comparison of the amount of lead *actually ingested* shows that the daily lead exposure from candy is more than 100 times greater than the daily lead exposure from lipstick.  So, plaintiff goes on to contend that there is *no* safe level of lead in lipstick at all, arguing that even the slightest trace of lead in lipstick renders it *ipso facto* dangerous and defective.  If accepted, however, plaintiff's theory would mean that products such as bottle water and candy that also contain trace amounts of lead are *ipso facto* dangerous and defective as well, even though the FDA has expressly adopted (and plaintiff herself endorses) lead tolerance thresholds of greater than zero for such products.

Against this dubious backdrop, it is significant that plaintiff does not allege that she or anyone else has ever been injured by lead in lipstick.  Indeed, she eschews any claims for personal injury whatsoever.  Rather, plaintiff claims that she and other members of the putative class have "an increased risk" of lead poisoning and "may" have been poisoned.  (Cmplt. ¶¶ 7, 34.)  Based on this inherently speculative proposition, plaintiff purports to assert a variety of consumer fraud and warranty claims to recover purely economic damages.  These include the purchase price of the lipstick, the cost of diagnostic testing to determine whether she or any member of the putative class has been poisoned, and the cost of future medical monitoring. (Cmplt. ¶¶ 34, 53, 61, 79, 74.)

Plaintiff's transparent attempt to bring what is essentially a faulty personal injury claim (faulty for lack of any actual injury) as an action sounding in fraud fails at the pleading stage. The entire complaint is based on speculation and unsupported conclusions that run afoul of the U.S. Supreme Court's decision in *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007).  It also defies both common sense and incontrovertible facts of which the

Court may properly take judicial notice.  Finally, as demonstrated below, the complaint suffers from myriad claim-specific defects.

In Count I, for example, plaintiff attempts to state a claim for fraud under the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.* ("ICFA"), but fails to plead the elements of such a claim with the heightened specificity required by Fed. R. Civ. P. 9(b) ("Rule 9(b)").  Thus, plaintiff relies on nothing but bare conclusions and base speculation in asserting any fraudulent or deceptive conduct by LVMH and that she was somehow damaged as a result.  Likewise, she asserts, without any factual support and in defiance of known facts, that LVMH knew or should have known that trace amounts of lead would render its lipstick unsafe and defective, notwithstanding a regulatory scheme directly to the contrary.  This lack of specificity, especially when combined with the fundamental irrationality of her complaint, is fatal to her ICFA claim.

Plaintiff's implied warranty claims in Count II (Illinois Uniform Commercial Code ("U.C.C.")) and Count III (Magnuson Moss Act, 15 U.S.C. § 2301 *et seq.*) are similarly defective.  Plaintiff has not alleged facts sufficient to show any breach of implied warranty by LVMH or any resulting injury, both essential elements of her claims.  Nor has plaintiff alleged that she provided notice or that she was in vertical privity with LVMH, as implied warranty claims require.  Plaintiff's implied warranty claim under the Magnuson Moss Act also fails because this action does not meet the statutory standing requirements of 15 U.S.C. § 2310(d)(3).

In Counts IV and V, plaintiff tries to state common law strict liability and negligence *per se* claims, but both claims fail for lack of wrongful conduct and/or actual injury.  In addition, these claims violate the economic loss doctrine.  Plaintiff's unjust enrichment claim in Count VI likewise fails because she has not alleged facts sufficient to establish any wrongful conduct by LVMH or that it was otherwise unjustly enriched.

Finally, in Count VII, plaintiff seeks to enjoin supposed violations of the Federal Food

Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq*. ("FDC Act").  Injunctive relief is a remedy,

however, not a stand-alone claim, and all of plaintiff's substantive claims fail as a matter of law.

Plaintiff also has not alleged facts establishing that such an extraordinary remedy is necessary or

appropriate.  Plaintiff also lacks standing to enjoin any alleged violations of the FDC Act.

In short, plaintiff's complaint is entirely defective and should be dismissed.

## BACKGROUND[1]

The alarmist tone of the CSC report notwithstanding, the presence of trace amounts of

lead in some lipstick is not news.  Lead is a naturally occurring element widely found in the

environment, including in the pigments used to color some lipsticks.  These pigments are heavily

regulated and subject to pre-market approval as "color additives" by the FDA, which has set

exacting standards (not alleged to be violated here) for the allowable lead content.  *See* FDC Act,

21 U.S.C. §379e; 21 CFR Parts 70 and 80.[2]  Fully aware of the presence of lead in some lipstick,

the FDA has been monitoring those levels since at least the 1990's, determining that existing

levels of lead in lipstick are not harmful.[3]  Indeed, at least until the CSC first made its claim that

---

[1] A court's consideration of a motion to dismiss is generally limited to the pleadings, but documents or other materials attached to the pleadings, incorporated into the pleadings by reference, or otherwise integral to the pleadings shall be deemed part of the pleadings for purposes of a Fed. R. Civ. P. 12(b)(6) motion to dismiss.  *See Menominee Indian Tribe v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998).  Likewise, a court may take judicial notice of historical documents, documents in the public record, and reports of administrative bodies on a motion to dismiss.  *Id.*; *see also Nicketta v. National Tea Co*., 338 Ill. App. 159, 162, 87 N.E.2d 30, 31-32 (1st Dist. 1949) (affirming dismissal and noting that courts will take judicial notice of the statutes, historical and scientific facts, and matters of common knowledge).

[2] A summary of the regulatory scheme, entitled "Color Additives and Cosmetics," is posted on the FDA website, *at* http://www.cfsan.fda.gov/~dms/cos-col.html, and attached hereto as Ex. A.

[3] *See* FDA Center for Food Safety and Applied Nutrition Press Release:  "Lipstick and Lead: Questions and Answers," Dec. 27, 2007, *at* http://www.cfsan.fda.gov/~dms/cos-pb.html (FDA's previous analysis of such claims "did not detect levels of lead that would be considered harmful . . . [and] . . . [t]he levels found did not exceed amounts that would be unavoidable even under conditions of good manufacturing practice given background levels in the environment.") A hardcopy of the "FDA Lead in Lipstick Press Release," of which the Court may properly take judicial notice, is attached as Ex. B.

trace levels of lead in lipstick are dangerous last October, there has been nothing to suggest that known levels of lead in lipstick pose any concern whatsoever.

One reason for this is that lead is present in a vast number of consumer products. Consistent with its authority under the FDC Act, the FDA has evaluated the presence of lead in a wide variety of contexts and promulgated lead-content standards where necessary. For example, the FDA has enacted a lead standard for bottled water (.0005 mg/l), a product consumed in large quantities by millions of Americans every day. *See* 21 CFR § 165.110(b) [Table 2]. And, as noted above, the FDA has established a recommended maximum lead level of 0.1 ppm for candy likely to be consumed by small children.[4]

Apart from limiting the lead content of color additives used in lipsticks, the FDA has found it unnecessary to impose more stringent controls on lead in lipstick. The reason is simple: the amount of lead in lipstick – even based on plaintiff's own allegations – is infinitesimally small and not per se dangerous. Indeed, the Court can and should consider the very comparison (lipstick to candy) invited by plaintiff's allegations. As demonstrated in Ex. D, even a conservative calculation shows that the amount of lead ingested from a single serving of candy at 0.1 ppm is more than 100 times greater than the amount a typical woman would ingest daily from Dior lipstick based on plaintiff's own allegations.

The lead exposure from lipstick is also infinitesimally small compared with the FDA-determined Provisional Tolerable Intake Level ("PPTIL") for lead.[5] The level of lead exposure

---

[4] *See* FDA Center for Food Safety and Applied Nutrition Guidance Document, "Lead in Candy Likely to Be Consumed Frequently by Small Children: Recommended Maximum Level and Enforcement Policy," Nov. 2006, *at* http://www.cfsan.fda.gov/~dms/pbguid3.html. A hardcopy of the FDA "Lead in Candy" Guidance Document, of which the Court may properly take judicial notice, is attached as Ex. C.

[5] The PPTIL is the total daily lead intake from all sources that provides a reasonable margin of protection against the known adverse effects of lead. *See* Health Consultation Exposure Investigation, U.S. Dep't of Health & Human Svcs., June 9, 2005 (identifying PTTIL for lead in children and adults), *at* http://www.atsdr.cdc.gov/HAC/PHA/HerculaneumLeadSmelterSiteEI/HerculaneumLeadSmelterFinalEI0

from lipstick (less than 0.0174 µg/day) is only 0.023% of the FDA-determined PPTIL of 75 µg/day for lead for adults.  *See* Ex. D.  By comparison, lead exposure from one small candy bar (21 grams) is 2.8% of PPTIL for adults – again, more than 100 times greater than from lipstick. Significantly, the FDA has determined that the exposure level from candy is safe even for children, a group plaintiff says is particularly vulnerable to lead-related health issues.[6]

The FDA is not alone in dismissing alleged health concerns about the presence of trace amounts of lead in lipstick.  In recent months, a number of plaintiffs' attorneys have served so called "notices of violation" relating to lead in lipstick on cosmetic manufacturers and distributors pursuant to the state of California's Safe Drinking Water and Toxic Enforcement Act of 1986, Calif. Health & Saf. Code §§ 25249.6, 25249.10(c) ("Proposition 65").[7]  Just last week, in an open letter to several plaintiffs' counsel, the California Department of Justice ("CDOJ") rejected such claims as spurious, even though Proposition 65 recognizes that lead raises potential health concerns.   (*See* CDOJ Opinion Letter (March 3, 2008) attached as Ex. G, carbon copied to Linda Katz (Director, Office of Cosmetics and Colors, FDA/CFSAN) and Elizabeth Anderson (Personal Care Products Council), of which this Court may properly take judicial notice.)  In so doing, the CDOJ rejected both of the core themes asserted by plaintiff in this case: (1) that the FDA's lead-in-candy guideline has any applicability to lead in lipstick; and (2) that the presence of any lead whatsoever renders a product *per se* dangerous and defective.

---

60905.pdf. ("HHS Report").  A hardcopy of the excerpted HHS Report, of which the Court may properly take judicial notice, is attached as Ex. F.

[6] At less than 0.0174 µg/day, the daily lead exposure for lipstick is also well within the 15 µg/day safe harbor level ("No Significant Risk Level") established by the California Office of Environmental Health Hazard Assessment ("OEHHA") for lead.  Cal.Code. Regs. tit. 22 § 12705(b)(1).

[7] Proposition 65 is intended to protect California citizens and the State's drinking water sources from chemicals known to cause cancer, birth defects or other reproductive harm, and to inform citizens about exposures to such chemicals.  *See* OEHHA statement, at http://www.oehha.ca.gov/prop65.html.

As the CDOJ explained, Proposition 65 does not require a business entity that knowingly exposes consumers to potentially harmful chemicals to provide a warning so long as the entity can prove that the exposure would have "no observable effect" assuming exposure at 1,000 times the level in question for reproductive toxicants or pose "no significant risk" for carcinogens. (*Id*. at p. 2.) That is, no warning is required unless the exposure exceeds the safe harbor level (Maximum Allowable Dose Level or "MADL"), which for lead is 0.5 µg/day under California law. (*Id*. at p. 3.) Notably, the MADL does not directly correspond to the concentration of lead in the product. (*Id*.) Rather, the MADL is based on the "reasonably anticipated rate of intake or exposure," which in this context means how much lipstick people typically use and might accidentally ingest. (*Id*.)

Based on its review of the relevant data (including several studies regarding how much lipstick consumers actually use), the CDOJ concluded that, even under the extremely stringent notice provisions of Proposition 65,[8] no duty to warn would arise until lead concentration levels in lipstick reached 5 ppm of lead. (*Id*. at p. 6.) By comparison, in this case, plaintiff alleges that the Dior lipstick she purchased contains 0.21 ppm – *less than 5%* of the amount necessary to trigger any disclosure obligation under Proposition 65.

The CDOJ closed its March 3, 2008 letter as follows: "We hope this objective review of the merits of the issue will discourage your client and any other private plaintiffs from pursuing these matters." (*Id*. at p. 7.) Just this week, the CDOJ sent a follow-up letter to the Proposition 65 plaintiff's counsel regarding pending and any future Notices of Violation. (*See* CDOJ Opinion Letter (March 12, 2008) attached as Ex. H, of which this Court may properly take judicial notice.) In its second letter, the CDOJ reiterated that, based on the "clear scientific evidence" set forth in its March 3, 2008 letter, "there is no plausible claim that lead in lipstick at

---

[8] Compare the California NSRL for lead for adults (15µg/day) to the FDA PPTIL for lead for adults (75 µg/day).

concentrations less [sic] five parts per million requires a warning."  Accordingly, the CDOJ opined that "we do not think you can execute a certificate of merit [as required], and therefore cannot serve a proper Notice of Violation under Proposition 65 concerning lead in lipstick."

## LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint if the plaintiff fails "to state a claim upon which relief can be granted."  In considering a motion to dismiss, the Court should accept as true only *well-pled* factual allegations and draw only *reasonable* inferences in the plaintiff's favor.  *McCullah v. Gadert,* 344 F.3d 655, 657 (7th Cir. 2003).

Further, as the United States Supreme Court recently held, "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Killingsworth v. HSBC Bank Nev., N.A.,* 507 F.3d 614, 618 (7th Cir. 2007), *quoting Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007).  Rather, to survive a motion to dismiss, a complaint must now include enough specific factual allegations to "raise a right to relief above a speculative level."  *Id.* at 1965.  Courts need not "strain to find inferences favorable to the plaintiff which are not apparent on the face of the complaint."  *Coates v. Illinois State Bd. of Educ.,* 559 F.2d 445, 447 (7th Cir. 1977).

By these standards, all of plaintiff's claims are deficient.

**I.      Plaintiff's Claim Under the Illinois Consumer Fraud Act ("ICFA") Should Be Dismissed for Failure to State a Claim.**

The elements of a claim under ICFA are: (1) the defendant engaged in a deceptive act or practice; (2) the defendant intended for the plaintiff to rely on the deception, (3) the deception occurred in the course of trade or commerce, (4) the plaintiff suffered actual damage; and (5) the damage was proximately caused by the deception. *Avery v. State Farm Mut. Ins. Co.,* 216 Ill. 2d

100, 180, 835 N.E.2d 801, 850 (2005). Where a claim is based on an omission rather than an affirmative misrepresentation, there is no liability unless the seller had actual knowledge of the material fact omitted and, moreover, intended for the plaintiff to rely on the omission in purchasing the product. *Jensen v. Bayer AG*, 371 Ill. App. 3d 682, 689, 862 N.E.2d 1091, 1098 (1st Dist. 2007) (affirming judgment for defendant drug manufacturer in action asserting consumer fraud, breach of implied warranty, and medical monitoring claims based on plaintiff's purchase of a drug that was subsequently recalled by manufacturer due to safety concerns).

A complaint alleging a consumer fraud violation must be pled with the same particularity as a claim for common law fraud. *Lantz v. Am. Honda Motor Co.*, No. 06-C-5932, 2007 U.S. Dist. LEXIS 34948, *25 (N.D. Ill. May 14, 2007) (granting motion to dismiss ICFA and unjust enrichment claims) (attached as Ex. J); *Pantoja-Cahue v. Ford Motor Credit Co.*, 375 Ill. App. 3d 49, 61, 872 N.E.2d 1039, 1048-49 (1st Dist. 2007) (affirming dismissal of plaintiff's ICFA claim, noting that like other claims sounding in fraud, an ICFA claim "must state with particularity and specificity the deceptive [unfair] manner of defendant's acts or practices, and the failure to make such averments requires the dismissal of the complaint."). Therefore, a plaintiff asserting an ICFA claim must meet the standards of Fed. R. Civ. P. 9(b). As demonstrated below, plaintiff has failed to plead four of the five required elements of a valid claim under ICFA with the requisite specificity or otherwise.[9]

### A.  Plaintiff Has Failed to Allege Any Deceptive Act or Practice by LVMH.

To begin with, plaintiff does not even properly allege that LVMH actually knew about the presence of lead in any Dior lipstick. Rather, she contends throughout her complaint only that LVMH knew or *should have known* (Cmplt. ¶¶ 25, 48, 49, 60, 68), which is legally

---

[9] The only element that plaintiff has arguably pled with the necessary specificity is that the supposed "deception" occurred in the course of trade or commerce.

insufficient given that her claim is based on an alleged fraudulent omission.  *Jensen*, 371 Ill. App. 3d at 689, 862 N.E.2d at 1098 (requiring that the omitted fact be known to defendant). Moreover, plaintiff's allegations about what LVMH supposedly *should have known* about the presence of lead in any Dior lipstick are based on bare conclusions that simply do not pass muster under Rule 9(b) and *Twombly*.  Plaintiff does not allege the existence of any prior reports or statements regarding the presence of lead in any Dior lipsticks.  Plaintiff does not allege any prior testing or studies identifying trace levels of lead in Dior lipstick.  Plaintiff does not allege that lead is intentionally or knowingly added by LVMH to any of its lipsticks.

The complaint is also devoid of specific allegations regarding any allegedly fraudulent statements or representations by LVMH regarding the presence of lead in lipstick or any other matter.  Although plaintiff alleges that "LVMH's marketing of the concerned lipstick products affirmatively and impliedly assures customers that the concerned lipstick products are safe for use" (Cmplt. ¶¶ 13, 47), she does not identify a single item of marketing or advertising material to support her assertion.  This bare conclusion, too, is legally insufficient under Rule 9(b) and *Twombly*.  Plaintiff also does not allege that she (or any member of the putative class) had any contact with LVMH or any of its authorized agents or representatives.

Instead, plaintiff alleges that she purchased her Dior lipstick from a Nordstrom department store in Chicago, not from LVMH.  Plaintiff does not allege that the packaging or labeling of the lipstick included any express or written warranties whatsoever.  To the contrary, plaintiff alleges that nothing was said about lead at all.  The sole source of the so-called fraud is, therefore, plaintiff's unsupported conclusion that LVMH fraudulently omitted to tell consumers about the supposed danger of lead in some Dior lipstick.

Under Illinois law, LVMH could not have fraudulently concealed the presence of trace amounts of lead in Dior lipstick unless it had an obligation to disclose it, and ICFA does not require sellers to state or reveal facts regarding its products unless those facts are both material and known. *Jensen*, 371 Ill. App. 3d at 689, 862 N.E.2d at 1098. As a result, plaintiff must allege specific facts that (if proved) would establish that the fact concealed was known to the defendant at the time of the alleged concealment and that the defendant intended for the plaintiff to rely on the omission in making their decision to purchase the product. *Id.* Plaintiff has not alleged any facts to meet either of these elements of the claim, only bare conclusions, which are plainly insufficient under both Rule 9(b) and *Twombly*. [10]

As noted above, plaintiff does not even allege that LVMH actually knew there was lead in the lipstick. For purposes of a fraudulent omission claim, however, the relevant inquiry is *not* whether LVMH actually knew there were trace amounts of lead in Dior lipstick. Rather, it is whether LVMH actually knew such miniscule amounts would render the lipstick dangerous or otherwise defective, thereby making the presence of lead material to the consumer. Plaintiff has not alleged any specific facts sufficient to establish (1) that a trace amount of lead in lipstick is *ipso facto* dangerous in the first place, and (2) if so, that LVMH knew it. The insufficiency of plaintiff's allegations is even more striking given the extensive public and governmental record supporting the widely-held belief (including by the FDA) that trace amounts of lead in lipstick are harmless and therefore immaterial.

---

[10] *See also White v. Daimler-Chrysler Corp.*, 368 Ill. App. 3d 278, 284-88, 856 N.E.2d 542, 548-51 (1st Dist. 2006) (affirming dismissal of plaintiff's ICFA claim for diminished value of vehicle with allegedly defective exhaust manifold on the grounds that the plaintiff failed to allege with sufficient particularity (1) how defendant knew of the defect, (2) how defendant intended for plaintiff to rely, (3) the materiality of defendant's alleged omission or concealment material and (4) how the value of plaintiff's vehicle was thereby diminished.

Indeed, plaintiff's complaint actually contradicts any conclusion that lead in lipstick is dangerous at all, let alone that LVMH recognized any such danger. On the one hand, plaintiff contends that any amount of lead renders a product unsafe. On the other hand, plaintiff contends that the FDA's 0.1 ppm lead-in-candy guideline is "the accepted level of lead for products that are ingested." Not only are these two propositions internally inconsistent, but plaintiff's "zero tolerance" argument is wholly inconsistent with the federal regulatory regime. For example, in keeping with its pre-market approval authority for color additives used in cosmetics, the FDA allows such color additives to contain as much as 20 ppm of lead, which is almost 100 times *greater than* the amount of lead allegedly found in the Dior lipstick here.

Perhaps more importantly, simple calculations based on plaintiff's own allegations show that the alleged lead exposure from the Dior lipstick in this case is itself more than 100 times *less than* the lead exposure from candy at 0.1 ppm (Ex. D), which, according to plaintiff, is the "accepted level of lead for products that are ingested" (Cmplt. ¶ 30). In her complaint, plaintiff alleges that the average woman inadvertently ingests four pounds of lipstick during her lifetime. (Cmplt. ¶ 23.) Even if that were true, the maximum daily lead exposure from the Dior lipstick in this case is infinitesimally small (less than 1%) compared with the "accepted level of lead for products that are ingested" like candy. (*See* Ex. D.)

In short, against this backdrop, plaintiff's bald assertion that LVMH knew or should have known that any lead would render its lipstick unsafe (thereby triggering any disclosure obligation) is insufficient as a matter of law to plead any alleged wrongdoing, knowing or otherwise, by LVMH.[11]

---

[11] *See also DiPirro v. J.C. Penny Company, Inc*., No. 407150, *mem. op*. (Stmt. of Dec.) (Super. Ct. Cal. Feb. 9, 2005), the only reported case of which LVMH is aware regarding the presence of lead in lipstick. In *DiPirro*, the court found that the defendant did not violate California Proposition 65 by selling Dior cosmetics, including lipstick, that contained lead. The court also rejected plaintiff's related false

**B.    Plaintiff Fails to Adequately Allege That LVMH Intended for Plaintiff to <u>Rely on the Non-Disclosure of Trace Amounts of Lead in the Lipstick.</u>**

Plaintiff also fails to allege any specific facts in support of her conclusion that LVMH intended for consumers to rely on the supposed omissions in making their purchasing decisions. As stressed above, plaintiff has failed to adequately allege that LVMH knew or should have known of the presence of lead in its lipstick, let alone that, as plaintiff insists, the presence of lead rendered its lipstick unsafe.  Therefore, as a matter of law, plaintiff cannot have sufficiently pled that LMVH intended for her (or any other consumer) to rely on the undisclosed information.

In addition, given that plaintiff has failed to allege any facts demonstrating that LVMH had reason to believe that consumers would consider trace amounts of lead in lipstick to be material, under *Twombly*, plaintiff cannot rely on a bare assertion that LVMH intended for consumers to rely on any nondisclosure.  Indeed, given the prevalence in the marketplace of lipsticks containing trace amounts of lead, none of which (according to plaintiff's own allegations) makes any such disclosure, the allegations of the complaint do not support any reasonable inference that LVMH intended for consumers to rely on the nondisclosure in purchasing Dior lipstick.

**C.    <u>Plaintiff Fails to Adequately Allege Any Injury.</u>**

To bring a civil action for damages under ICFA, plaintiff must establish that she suffered "actual damages."  *Avery*, 216 Ill. 2d at 195, 835 N.E.2d at 858-59.   By contrast, plaintiff has failed to allege that she has suffered any injury whatsoever.

---

advertising claim.  Notably, in *DiPirro*, the plaintiff did not produce any evidence of actual harm, but (like the plaintiff here) relied instead on the notion that there is no safe level of lead.  With respect to plaintiff's false advertising claim, the court stated: "If that were sufficient to support a false advertising claim, the fact that lead is present in virtually everything that consumers come into contact with would mean that virtually everything would require a disclosure, and consumers would be deluged with useless warnings that were unrelated to actual or potential harm posed by a product."  *Id*. at 122.  A copy of the Statement of Decision in *DiPirro* is attached as Ex. J.

In *Verb v. Motorola, Inc.*, 284 Ill. App. 3d 460, 672 N.E.2d 1287 (1st Dist. 1996), a case brought by some of the same lawyers representing the plaintiff in this case, the Illinois Appellate Court rejected claims virtually identical to the "artful" claims asserted in the case at bar.  In *Verb*, a putative class of cell phone owners filed a lawsuit against defendant phone manufacturers, alleging that the defendants made fraudulent misrepresentations and provided inadequate warnings regarding the safety of their cellular phones.  In particular, the plaintiffs complained that the cell phones emit potentially dangerous levels of high frequency electromagnetic radio waves and therefore may have serious long-term adverse health effects.  Just as here, the *Verb* plaintiffs' eight-count complaint asserted claims for consumer fraud, breach of warranty (U.C.C. and Magnuson Moss Act), negligence and strict liability.

Like the plaintiff in this case, the plaintiffs in *Verb* did not assert any genuine claims for personal injury.  Rather, those plaintiffs alleged they had suffered damages in the form of diminution in value of their cell phones and increased risk of injury (whether or not currently manifested) as a result of the exposure to defendants' cell phones.  The trial court dismissed the complaint on several grounds, including that the plaintiffs' claims were preempted by federal law, the FDA had primary jurisdiction over the case, and the plaintiffs had failed to allege a compensable injury on any of their claims.

On appeal, the Illinois Appellate Court affirmed.  Among other things, the appeals court found that plaintiffs' unsupported allegations regarding the reduction in value of their cell phones, as well as their claim for economic damages in the form of medical monitoring for increased risk of future injury, were insufficient to state a claim on any of the eight counts of the complaint.  The appellate court stressed that "notwithstanding plaintiffs' apparent indecision as to what their alleged injuries were, they were required to allege a present personal injury and/or

damages in each count of their complaint," but failed to do so. *Verb*, 284 Ill. App. 3d at 471-72, 672 N.E.2d at 1295. Noting that "possible future damages in a personal injury action are not compensable," the appellate court dismissed as "conjecture and speculation" the *Verb* plaintiffs' claims relating to any future personal injury, as well as their claims for economic damages based on diminution in value. *Id.*; *see also Wehmeier v. UNR Indus., Inc.*, 213 Ill. App. 3d 6, 34, 572 N.E.2d 320, 339 (1st Dist. 1991) ("damages may not be awarded on the basis of mere conjecture or speculation; a plaintiff must prove that there is a reasonable certainty that the anticipated harm or condition will actually result in order to receive monetary compensation.")

Like the plaintiffs in *Verb*, plaintiff in this case has failed to adequately allege that she has suffered any compensable personal injury or damage. Plaintiff does not allege that she has suffered any present personal injury. Plaintiff also fails to allege facts establishing that she suffered any economic damage as a result of her purchase. To the contrary, plaintiff alleges that she purchased the Dior lipstick in question and applied it to her lips. Plaintiff does not allege that the lipstick did not perform as expected. Nor does plaintiff allege that she has discarded or otherwise discontinued use of the lipstick upon learning of the presence of lead.

Plaintiff likewise does not allege that she attempted to return the lipstick to the immediate seller for a refund of the purchase price, but was refused. Indeed, the only reasonable inference to be drawn from the complaint is that plaintiff purchased a Dior lipstick, received a Dior lipstick, and used the Dior lipstick to no ill effect. Given that plaintiff received a lipstick in exchange for the purchase price (and has not properly alleged any defect in the lipstick), plaintiff has not alleged facts sufficient to show any actual injury or damage.

Plaintiff's request for immediate diagnostic testing and medical monitoring to detect any future personal injury should also be rejected as a matter of law. Although the Illinois Supreme

Court has not yet determined whether medical monitoring can ever be a cognizable injury under Illinois law, the case law shows that plaintiff's request for medical monitoring here is not viable as a matter of law.   Indeed, the one Illinois lower court that has speculated that the Illinois Supreme Court might permit a medical monitoring claim applied it only in narrow circumstances not applicable to this case.  *See Carey v. Kerr-McGee Chemical Corp*., 999 F. Supp 1109, 1119-20 (N.D. Ill. 1998).

In *Carey,* the appellate court opined that "if faced with the precise issue now before the court, the Illinois Supreme Court would uphold a claim for medical monitoring without requiring plaintiffs to plead and prove either a present physical injury or a reasonable certainty of contracting a disease in the future."  *Id*. at 1119.  The court noted, however, that the appropriate inquiry for such a claim would be whether "medical monitoring is, to a reasonable degree of medical certainty, necessary in order to diagnose properly the warning signs of disease."  *Id*.; *see also Lewis v. Lead Industries Assn, Inc*., 342 Ill. App. 3d 95, 101-02, 793 N.E.2d 869, 874 (1st Dist. 2003) (stating in *dicta* that diagnostic testing might be a basis for claim, but only "[i]f a defendant's breach of duty makes it necessary for a plaintiff to incur expenses to determine if he or she has been physically injured.") In such cases, the focus is on whether the circumstances suggest that medical testing is necessary to determine whether plaintiff suffered an *actual* injury.

In this case, plaintiff does not claim to have suffered any actual injury.  Moreover, the exposure level is so low relative to the PPTIL (only .023% of PPTIIL) established by the FDA that, as a matter of law, plaintiff cannot establish that it is reasonable, let alone necessary, for her to incur the expense associated with diagnostic testing to determine whether she has been injured.   Plaintiff does not allege that she believes that she actually has lead poisoning.  Nor

does plaintiff allege that she has been advised by any health care professional that she is showing any signs of lead poisoning or is otherwise at risk of lead poisoning.

Plaintiff fails in numerous other respects to allege facts that give rise to any reasonable inference that plaintiff has developed or ever will develop lead poisoning as a result of using Dior lipstick. First, the maximum daily exposure from lipstick is less than 1% of the maximum daily exposure from candy at 0.1 ppm. Thus, if plaintiff's theory were accepted, everyone who consumes a candy bar containing 0.1 ppm of lead would also have a colorable (indeed stronger) claim for diagnostic testing for lead poisoning. Second, even if diagnostic testing revealed elevated lead levels, the level of exposure from lipstick is so low that that it would be impossible for plaintiff to establish that LVMH's infinitesimally small contribution to her overall lead exposure was the cause-in-fact of any lead-related illness.

Finally, based on her own complaint, plaintiff had the Dior lipstick at issue here in her possession for only a few months before filing this complaint. The only exposure to Dior lipstick alleged by plaintiff in the complaint is her single purchase in June 2007. Plaintiff does not allege that she used the lipstick more frequently than the typical woman. Plaintiff's exposure was necessarily short-term and at exceedingly low levels, and plaintiff has not manifested any injury resulting from such exposure. *See Jensen*, 371 Ill. App. 3d at 692, 862 N.E.2d at 1100-01 (denying plaintiff's claim for medical monitoring as not medically necessary even where plaintiff claimed to have a present physical injury and the drug at issue had been recalled due to safety concerns). Therefore, there is no basis to reasonably infer that diagnostic testing or any other form of medical monitoring is necessary or appropriate.

For these reasons, plaintiff's allegations are insufficient to establish the existence of any injury-in-fact, an essential element of her ICFA claim.[12]

### D.     Plaintiff Fails to Adequately Allege Proximate Causation.

Proximate cause is also an essential element of any claim under the ICFA.  *Avery*, 216 Ill. 2d at 199-200, 835 N.E.2d at 861.  Where the ICFA claim is predicated on an alleged fraudulent concealment or omission, the plaintiff must also allege facts indicating that he or she was actually deceived by the omission.  *Jensen*, 371 Ill. App. 3d at 690, 862 N.E.2d at 1099 (*citing Avery* for proposition that plaintiff "must establish that he was deceived by defendant's representations or omissions").  Here, the allegations of the complaint are insufficient to support a reasonable inference that plaintiff was actually deceived.

Plaintiff does not allege that she has ever had any communication with LVMH regarding the ingredients in its lipstick (or anything else for that matter).  Plaintiff does not allege that she has ever reviewed the ingredient label on any LVMH or Dior product in making a purchasing decision.  Plaintiff does not allege that she reviewed or considered any other information regarding the presence (or absence) of lead in lipstick in making any purchasing decision.  Absent such allegations, plaintiff has failed to plead the requisite causal nexus between any culpable omission by LVMH and any purported damages.  *See Oliveira v. Amoco Oil Co*., 201 Ill. 2d 134, 142-155, 776 N.E.2d 151, 1560-164 (2002) (plaintiff must have been deceived by the

---

[12] Plaintiff's failure to allege any injury-in-fact also means that she lacks standing under Article III, Section 2 of the U.S. Constitution.  As the U.S. Supreme Court held in *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103-104 (1998), "[t]he triad of injury in fact, causation, and redressibility comprises the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence.  To show injury-in-fact, the plaintiff must demonstrate that she suffered an injury that is "concrete and actual or imminent, not conjectural or hypothetical."  *Id*. at 102-103.  The sort of artful pleading plaintiff attempts here is not sufficient to establish standing.  *See Williams v. Purdue Pharma. Co*., 297 F. Supp. 2d 171, 175-78 (D.D.C. 2003) (claim of economic injury in no-injury product liability action does not establish injury-in-fact).

alleged wrongful conduct); *Zekman v. Direct Am. Marketers, Inc.*, 182 Ill. 2d 359, 375-76, 695 N.E.2d 853, 861-62 (1998) (plaintiffs cannot be deceived by what they did not read).

## II.     Plaintiff's Breach of Implied Warranty Claims Should Be Dismissed for Failure to State A Claim.

Plaintiff's claims for breach of implied warranty under the U.C.C. and for a violation of the Magnuson Moss Act are almost identical because the Magnuson Moss Act simply creates a federal warranty claim that depends on state warranty law. Therefore, except as noted in Section II.B below, LVMH will address plaintiff's breach of implied warranty claims under the U.C.C. and the federal statute simultaneously, as they are subject to the same deficiencies.

### A.     Plaintiff Fails to Adequately Plead Facts Supporting the Elements of Her Implied Warranty Claims (U.C.C. and Magnuson Moss Act).

To state a claim for breach of implied warranty of merchantability under Illinois law (U.C.C., 810 ILCS § 5/2-314), a plaintiff must allege that (1) the product was not merchantable at the time of sale, (2) she suffered damages as a result of the product defect, and (3) she gave notice of the defect to the seller. *Industrial Hard Chrome Ltd. v. Hetran, Inc.*, 64 F. Supp. 2d 741 (N.D. Ill. 1999).

#### 1.     Merchantability.

To be merchantable, goods must be fit for the ordinary purpose for which such goods are used. *Id*. As demonstrated above, plaintiff has failed to allege facts sufficient to establish that the Dior lipstick she purchased was not fit for its ordinary purpose – adding color to plaintiff's lips in a reasonably safe and effective way. All plaintiff has done is to assert that there are trace amounts of lead in lipstick and then to conclude summarily that the lipstick is *per se* defective. Plaintiff has alleged no credible facts, however, establishing that lipstick containing the trace amounts of lead alleged in her complaint poses any genuine health risk. To the contrary, the

level of lead claimed is miniscule even in comparison with the lead exposure determined by the FDA to be reasonably safe with respect to candy intended for ingestion by small children.

Further, the FDA has previously analyzed lipstick containing trace amounts of lead and determined that trace levels are both harmless and largely unavoidable given the presence of lead in the environment.  Finally, given that the FDA authorizes the use of color pigments in cosmetics containing far more lead (concentrations at 100 times the amount allegedly detected in the Dior lipstick at issue here), plaintiff cannot credibly argue, consistent with the standards in *Twombly,* 127 S. Ct. at 1964-65, that a lipstick that contains a minute quantity of lead is unmerchantable.

### 2.    Damages.

Plaintiff's breach of warranty claim also fails because plaintiff cannot establish that she suffered any compensable injury for the reasons stated above, including her failure to allege facts that reasonably support any inference that the trace amounts of lead reported pose any genuine health risk in the first instance.

### 3.    Notice.

Both the U.C.C. and the Magnuson-Moss Act require that the plaintiff give the defendant notice and an opportunity to cure within a reasonable time after discovering the alleged breach. *See* U.C.C. § 2-607(3)(a); 15 U.S.C. § 2310(e).  The failure to provide notice is fatal to implied warranty claims.  *Connick v. Suzuki Motor Co., Ltd*., 175 Ill.2d 482, 495, 675 N.E.2d 584, 590-91 (1996) (holding that plaintiff's "failure to allege sufficient notice is fatal to [his] breach of warranty claims.")  Moreover, absent a claim of personal injury, the filing of a lawsuit does not satisfy the statutory notice requirement.  *Id.*

In this case, the complaint includes no allegations whatsoever that plaintiff provided notice of any alleged defect to LVMH.  Again, the complaint does not include any allegations of communications between LVMH and plaintiff before this lawsuit was filed.  Because plaintiff has not asserted any claims for personal injury (and has not suffered any personal injury), she cannot rely on this lawsuit to constitute notice to LMVH.  *Connick*, 175 Ill. 2d at 495 675 N.E.2d at 591.  Accordingly, plaintiff's implied warranty claims must be dismissed.

### 4.    <u>Privity</u>

Vertical privity is required in an action in which plaintiff seeks economic (not personal injury) damages on a breach of implied warranty claim under the U.C.C. and the Magnuson-Moss Act.  *See Kutzler v. Thor Industries, Inc.*, No. 03-C-2389, 2003 U.S. Dist. LEXIS 11886, *17-18 (N.D. Ill. July 11, 2003) (dismissing breach of implied warranty claims, noting that "[t]he overwhelming weight of authority in this district . . . has held that privity is required under the Act, just as under Illinois law, in order to state an implied warranty claim for economic loss.") (attached as Ex. K); *Rothe v. Maloney Cadillac, Inc.*, 119 Ill. 2d 288, 292, 518 N.E.2d 1028 (1988) (holding that a claim for breach of implied warranty under Illinois law against a manufacturer for damages can be brought only against the immediate seller); *Jensen*, 371 Ill. App. 3d at 690-91, 862 N.E.2d at 1099 (affirming dismissal of an implied warranty claim against defendant drug manufacturer where plaintiff purchased drug from pharmacy, not defendant).

In short, a plaintiff suing for purely economic loss on an implied warranty theory has no claim against anyone but the immediate seller.   In this case because plaintiff is suing for purely economic loss (not personal injury) and because she admits that she purchased the complained-of lipstick from a department store (Nordstrom), not from LVMH (Cmplt. ¶ 11), her breach-of-implied-warranty claims must be dismissed.

**B.    This Action Does Not Satisfy Section 2310(d)(3) of the Magnuson-Moss Act.**

Plaintiff's claim under the Magnuson-Moss Act also must be dismissed because this action does not satisfy Section 2310(d)(3) of the Act, which states as follows:

> No claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection --
>
> (A)    if the amount in controversy of any individual claim is less than the sum of $25;
>
> (B)    if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; *or*
>
> (C)    if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

15 U.S.C. § 2310(d)(3) (emphasis added).

In Count III of her complaint, plaintiff seeks damages under 15 U.S.C. §2310(d)(1)(B) on behalf of herself and a putative class.  (Cmplt. ¶ 64.)   But, because the action is brought as a class action with plaintiff Stella as the only named plaintiff (and not with at least 100 named plaintiffs as the statute requires), there can be no cognizable claim under the Magnuson Moss Act pursuant to 15 U.S.C. § 2310(d)(3)(C) above.  *See Abraham v. Volkswagen of America, Inc*., 795 F.2d 238, 244-45 (2nd Cir. 1986) (class must have 100 named members to be certified under Magnuson-Moss); *see also Lieb v. American Motors Corp*., 538 F. Supp. 127, 132 (S.D.N.Y. 1982) (dismissing putative Magnuson-Moss class action claim where sole plaintiff promised to add members before certification).

**III.    Plaintiff's No-Injury Product Liability Claims for Negligence *Per Se* and Strict Liability Must Be Dismissed for Failure to State a Claim.**

The existence of an actual present injury is an obvious element of any tort claim, including any product liability claim such as common law negligence *per se* and strict liability

claims. *Verb*, 284 Ill. App. 3d at 471 (affirming dismissal of negligence claim based on plaintiffs' purchase of cellular phones emitting potentially harmful radio waves and seeking damages for increased risk of personal injury for failure to allege present personal injury or damages, stating "plaintiffs' future 'personal injury and damages' claims constitute conjecture and speculation"); *Valenti v. Mitsubishi Motor Sales of America, Inc.*, 332 Ill. App. 3d 969, 973, 773 N.E.2d 1199, 1203 (1st Dist. 2002); *Yu v. Int'l Bus. Mach. Corp.*, 314 Ill. App. 3d 892, 897, 732 N.E.2d 1173, 1177 (1st Dist. 2000) (affirming dismissal of class action to recover damages arising out of sale of computer software that allegedly was not year 2000 compliant and that may cause potential harm, because "[a]s plaintiff's claims of consumer fraud, deceptive trade practices and negligence require actual injury or damage, we hold that plaintiff's claims constitute conjecture and speculation").

No matter how plaintiff attempts to re-characterize her negligence and strict liability claims, they are simply no-injury product liability claims based on a failure-to-warn theory. As demonstrated above, any such claims fail as a matter of law based on plaintiff's failure to allege either any wrongful conduct[13] or any actual injury. *See, supra*, Section I.A and C.

Plaintiff's common law tort claims are also barred because plaintiff is seeking damages for purely economic loss rather than personal injury. As explained by the Illinois Supreme Court in the seminal "economic loss" doctrine case, *Moorman Manufacturing Co. v. National Tank*

---

[13] Plaintiff's negligence *per se* claim is purportedly predicated on LVMH's violation of some unspecified provision of the FDC Act by manufacturing, distributing, delivering, or selling cosmetics that contain a poisonous and deleterious substance – *i.e.*, lead. Of course, under the FDC Act, a product is not adulterated and disclosure obligations are not triggered unless the complained-of substance is something other than an "incidental ingredient" and is present in a quantity sufficient to make the product dangerous. *See* 21 U.S.C. § 331, 361, 632 (adulterated products); 21 C.F.R. § 701.3(l)(1)(incidental ingredients). As set forth above, plaintiff has failed to allege facts sufficient to establish any violation of the FDC Act by LVMH. To the contrary, the allegations of the complaint, combined with the FDA's recent pronouncements that trace levels of lead are not harmful, definitively rebut any assertion of a violation of the Act, causing plaintiff's claims to fail under *Twombly*.

*Co.*, 91 Ill.2d 69, 82, 435 N.E.2d 443, 449 (1982), economic damages are "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits – without any claim of personal injury or damage to other property – as well as the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold."  In *Moorman*, the Court held that purely economic losses "caused by qualitative defects falling under the ambit of a purchaser's disappointed expectations" may not be recovered under the tort theories of strict liability, negligence or innocent misrepresentation, which are more "appropriately suited for personal injury or property damage resulting from a sudden or dangerous occurrence." 91 Ill.2d at 85-86, 435 N.E.2d at 450-51.  Under Illinois law, the remedy for economic loss lies in contract.

Nor can a plaintiff avoid this result by alleging that her damages were proximately caused by LVMH's "intentional, false representation that the concerned lipstick products are safe when, in fact, they are not."  (Cmplt. ¶ 73).  Like all fraud claims, any such strict liability claim must meet the stringent pleading requirements of Rule 9(b), which requires a plaintiff to plead the factual basis for averments of fraud with particularity.  *Stephenson v. Hartford Life & Annuity Ins. Co.*, 2003 U.S. Dist. LEXIS 17036, at *12-14 (N.D. Ill. Sept. 26, 2003) (attached as Ex. L).  Put simply, Rule 9(b) particularity "means the who, what, when, where, and how." *DiLeo v. Ernst & Young,* 901 F. 2d 624, 627 (7th Cir. 1990).

As already stressed, plaintiff has not made such a showing.  Although plaintiff alleges that LVMH distributed lipsticks containing lead without listing lead as an ingredient on the package, plaintiff fails to identify any actual *fraudulent* conduct whatsoever, let alone with the specificity required by Rule 9(b), as already demonstrated above.  (Cmplt. ¶¶ 4-5).  Accordingly, under Rule 9(b), plaintiff's allegations of fraud fail as a matter of law.  *Chapman v. Ontra, Inc.,*

1997 U.S. Dist. LEXIS 8331, at *18-19 (N.D. Ill. June 6, 1997) (dismissing claim where plaintiff failed to allege "in what way" defendant's letters were deceptive) (attached as Ex. M); *accord Stephenson*, 2003 U.S. Dist. LEXIS 17036, at *12-14 (Rule 9(b) requires plaintiff to plead the "how" of fraud).

**IV.    Plaintiff's Unjust Enrichment Claim Should Be Dismissed for <u>Failure to State A Claim</u>.**

To state a claim for unjust enrichment under Illinois law, a plaintiff must allege facts establishing that (1) plaintiff conferred a benefit on defendant and (2) defendant's acceptance of that benefit (3) under circumstances that make it inequitable for defendant to retain the benefit. *Lapine v. Edward Marshall Boehm, Inc*., No. 89-C-8420, 1990 U.S. Dist. LEXIS 3459, *28 (N.D. Ill. Mar. 28, 1990) (attached as Ex. N).   Moreover, where a claim for unjust enrichment is predicated on allegedly fraudulent conduct, that conduct must be pled with specificity. *See Chatham v. Sears, Roebuck & Co*., MDL-1703, No. 05-C-4742, No. 05-C-2623, 2006 U.S. Dist. LEXIS 92169, *14 (N.D. Ill. Dec. 18, 2006) (dismissing unjust enrichment claims under Rule 9(b) in action alleging that defendant deceptively advertised its "Craftsman" line of tools as exclusively "Made in USA" when many of the tools were exclusively or substantially foreign-made) (attached as Ex. O).

Plaintiff's unjust enrichment claim fails as a matter of law for many of the same reasons her other claims do.  First, plaintiff has not adequately alleged any facts demonstrating that the Dior lipstick she purchased was either unreasonably dangerous or unfit for its intended purpose. In effect, plaintiff has alleged no reasonable factual basis for the notion that she could not safely use her lipstick and she did not otherwise get what she paid for.  If plaintiff paid for and received a merchantable lipstick, it is not inequitable for anyone to retain any tangential benefit it received as a consequence of the transaction.

Second, plaintiff did not confer any benefit on LVMH because she did not purchase the lipstick from LVMH. Rather, to the extent she conferred a benefit on anyone, she conferred a benefit on the department store at which she purchased the lipstick. Finally, if any of her other claims had been (or could be) properly pled, plaintiff would have an adequate remedy at law.

**V.    Plaintiff's Claim for Injunctive Relief Should Be Dismissed for <u>Failure to State a Claim</u>.**

Plaintiff is not entitled to injunctive relief. First, injunctive relief is a remedy, not a stand-alone cause of action. Because all of plaintiff's substantive claims fail as a matter of law, plaintiff's request for injunctive relief cannot be sustained. Second, plaintiff fails to allege facts establishing that injunctive relief (an extraordinary remedy) is necessary or appropriate. Indeed, given that plaintiff is now armed with the CSC report and therefore aware of the possibility that certain lipsticks contain lead, she will presumably be able to avoid purchasing Dior lipsticks containing lead in the future. Accordingly, injunctive relief is not necessary to prevent plaintiff from suffering any future harm as a result of any supposed violation.

Finally, plaintiff does not have standing under 21 U.S.C. § 332 to enjoin or restrain violations of the FDC Act. The FDC Act does not create a private right of action, and all actions to enjoin or restrain violations of the Act must be brought by or in the name of the United States or one of the several States. *See* 21 U.S.C. § 337(a)-(b) ("Except as provided in subsection (b) of this section [proceeding by a State], all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States.")

**CONCLUSION**

For all of these reasons, defendant LVMH Perfumes and Cosmetics, Inc. asks the Court to grant its motion and dismiss the complaint in its entirety.

Date:  March 14, 2008                     Respectfully submitted,

                                          **LVMH PERFUMES AND COSMETICS, INC.**


                                          By: s/ Robert E. Shapiro
                                                 One of Its Attorneys

Peter J. Barack (ARDC No. 108367)
Robert E. Shapiro (ARDC No. 3125180)
Rachael M. Trummel (ARDC No. 6274278)
BARACK FERRAZZANO KIRSCHBAUM
     & NAGELBERG LLP
200 West Madison Street, Suite 3900
Chicago, Illinois 60606
Ph:  312.984.3100
Email:  rob.shapiro@bfkn.com
Email:  rachael.trummel@bfkn.com

Francis A. Citera (ARDC No. 6185263)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 2500
Chicago, Illinois 60601
Ph: 312.856.8413
Email:  citeraf@gtlaw.com

## CERTIFICATE OF SERVICE

I, Robert E. Shapiro, an attorney, hereby certify that I caused a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANT LVMH PERFUMES AND COSMETICS, INC.'S MOTION TO DISMISS** to be served upon the following on this date, March 18, 2008, by ECF/PACER electronic notice and by U.S. Mail as indicated:

**By ECF/PACER Electronic Notice**

Ben Barnow
Erich Paul Schork
Sharon Harris
BARNOW & ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, IL  60602
(312) 621-2000
Email:  b.barnow@barnowlaw.com
Email:  e.schork@barnowlaw.com
Email:  s.harris@barnowlaw.com
*ATTORNEYS TO BE NOTICED*

Aron David Robinson
LAW OFFICE OF ARON D. ROBINSON
19 South LaSalle Street, Suite 1300
Chicago, IL  60603
(312) 857-9050
Email: adroblaw@aol.com
*ATTORNEY TO BE NOTICED*

**By U.S. Mail, Proper Postage Prepaid**

Kevin Rogers
LAW OFFICES OF KEVIN ROGERS
307 North Michigan Avenue, Suite 305
Chicago, IL  60602
(312) 621-2000
*COURTESY COPY*

Lance A. Harke, P.A.
Sarah Clasby Engel, P.A.
HARKE & CLASBY LLP
155 South Miami Avenue, Suite 600
Miami, FL  33130
(305) 536-8220
*COURTESY COPY*

_____ s/ Robert E. Shapiro _____