# EXHIBIT H

**EDMUND G. BROWN JR.**
*Attorney General*

*State of California*
***DEPARTMENT OF JUSTICE***



1515 CLAY STREET, 20TH FLOOR
P.O. BOX 70550
OAKLAND, CA 94612-0550

Public: (510) 622-2100
Telephone: (510) 622-2149
Facsimile: (510) 622-2270
E-Mail: Ed.Weil@doj.ca.gov

March 12, 2008

David Lavine
Laralei Paras
Hirst & Chanler
2560 Ninth Street
Parker Plaza, Suite 214
Berkeley, CA 94710

RE: Proposition 65 claims concerning lead in lipstick

Dear Mr. Lavine and Ms. Paras:

Presumably, you have received our letter of March 3, 2008, in which we set forth the clear scientific evidence establishing that there is no plausible claim that lead in lipstick at concentrations less five parts per million requires a warning under Proposition 65.

Proposition 65 requires that the attorney for a noticing party execute a certificate of merit attesting that "there is a reasonable and meritorious case for the private action." (Health & Saf. Code, § 25249.7, subd. (d)(1).) Implementing regulations provide that this certificate must state that, based on the attorney's consultation with experts and "all other information in my possession," the elements of the prima facie case are established and that "the information did not prove that the alleged violator will be able to establish any of the affirmative defenses set forth in the statute." (Cal. Code Regs., tit. 11, § 3101, subd. (b) (4).)

Our letter of March 3th was based on publicly available information, plus additional information that we exchanged with you, and information that you presented with your prior notices of violation. We think that information establishes that defendants who make lipstick containing less than 5 parts per million lead clearly have a valid affirmative defense to the action. Accordingly, unless you possess scientifically valid test results (including proper validation, accuracy, and representative samples), showing lead concentrations in lipstick greater than 5 parts per million, or substantial new information contradicting the exposure analysis based on the existing materials and studies, we do not think you can execute a certificate of merit, and therefore cannot serve a proper Notice of Violation under Proposition 65, concerning lead in lipstick.

David Lavine
Laralei Paras
March 12, 2008
Page 2


      We hope you will carefully consider this in deciding whether to serve any additional notices of violation with respect to lead in lipstick.

                              Sincerely,

                              EDWARD G. WEIL
                              Supervising Deputy Attorney General

                For    EDMUND G. BROWN JR.
                          Attorney General

# EXHIBIT I

LEXSEE 2007 U.S. DIST. LEXIS 34948

RON LANTZ, DENNIS GRIBBINS, RICHARD ALLEN and CLARENCE ALVORD, individually and on behalf of all others similarly situated, Plaintiffs, v. AMERICAN HONDA MOTOR COMPANY, INC., Defendant.

No. 06 C 5932

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

2007 U.S. Dist. LEXIS 34948

May 14, 2007, Decided
May 14, 2007, Filed

**SUBSEQUENT HISTORY:** Motion granted by *Lantz v. Am. Honda Motor Co.*, 2007 U.S. Dist. LEXIS 76007 (N.D. Ill., Sept. 27, 2007)

**COUNSEL:** [*1] For Ron Lantz, Dennis Gribbins, Richard Allen, Clarence Alvord, individually and on behalf of all others similarly situated, Plaintiffs: Elizabeth A. Fegan, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP, Oak Park, IL; Timothy Patrick Mahoney, LEAD ATTORNEY, Daniel J. Kurowski, Hagens Berman Sobol Shapiro LLP, Chicago, IL; Steve W. Berman, Hagens & Berman, Seattle, WA.

For American Honda Motor Company, Inc., Defendant: Charlene M. Yaneza, David Brian Johnson, Michael Christian Andolina, Sidley Austin LLP, Chicago, IL.

**JUDGES:** NAN R. NOLAN, United States Magistrate Judge.

**OPINION BY:** NAN R. NOLAN

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Ron Lantz, Dennis Gribbins, Richard Allen, and Clarence Alvord filed a class action complaint against Defendant American Honda Motor Company, Inc. ("Honda"), alleging a variety of state law claims arising from Honda's deceptive and unlawful conduct in designing, manufacturing, marketing, distributing, selling, servicing and/or failing to service, GL1800 Gold Wing Motorcycles. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to *28 U.S.C. § 636(c)*. Honda now moves to dismiss all [*2] of Plaintiffs' claims. For the reasons set forth here, the motion is granted in part and denied in part.

**BACKGROUND** [1]

[1] In reviewing this motion to dismiss, the court accepts all well-pleaded factual allegations in the complaint. *Richards v. Kiernan, 461 F.3d 880, 882 (7th Cir. 2006)*.

**A. The Parties**

Honda is a California corporation with its principal place of business in Torrance, California. Honda designs, manufactures, markets, distributes, supplies, sells, and services motorcycles and other vehicles in the United States. (Cmplt. P 10.) [2] In 1975, Honda produced a Gold Wing GL1000 model motorcycle and became a front-runner in the manufacture of "luxury touring motorcycles." These motorcycles are designed for ultimate comfort and convenience, and usually have "the biggest engines; great acceleration and cruising speed; lots of storage including top trunks and saddlebags; amenities like cruise control, stereo radios, CB communications, large windshields, heated seats [*3] and grips; and high reliability." (*Id.* PP 11, 12.) In 2001, Honda introduced a new Gold Wing GL1800 model. (*Id.*

P 13.) Honda advertised the new motorcycle as being perfect for touring long distances, and capable of handling on highways across America, whether straight, curvy, flat, or mountainous. (*Id.* P 14.)

   2   The Class Action Complaint is cited as "Cmplt. P  ."

Ron Lantz is a citizen of Florida who purchased a 2002 Gold Wing GL1800 in September 2002 from an authorized Honda dealership in Leesburg, Florida. (*Id.* PP 6, 23.) Dennis Gribbins, a citizen of Illinois, purchased his 2002 Gold Wing GL1800AZ from an authorized Honda dealer in Bradley, Illinois on November 15, 2001. (*Id.* PP 7, 27.) Richard Allen is a citizen of Florida who purchased a pre-owned 2002 Gold Wing GL1800 from an authorized Honda dealership in Leesburg, Florida in August 2006. (*Id.* PP 8, 31.) Clarence Alvord, also a citizen of Florida, purchased a 2005 Gold Wing GL1800 from an authorized Honda dealership in [*4] Venice, Florida on March 3, 2005. (*Id.* PP 9, 35.)

### B. The Gold Wing Wobble

Plaintiffs allege that the Gold Wing GL1800 model has a design defect that causes it to wobble at low speeds between 25 and 40 mph. As a result, Gold Wing GL1800 owners are not able to use the motorcycle for touring at higher speeds and long distances, as advertised and intended. (*Id.* PP 15, 16.) According to Plaintiffs, "[a] wobble should be corrected immediately as it can cause a serious accident and even death." (*Id.* P 15.) Honda, however, has concealed the design defect, describing it as merely a "characteristic" of the Gold Wing GL1800 model. As a result, Honda has consistently declined to recall the motorcycle or to pay for needed repairs. (*Id.* PP 17, 22, 41.)

Frustrated consumers have turned to the internet, where they post complaints and seek to share and obtain information about the wobble problem. (*Id.* P 18.) In addition, Wing World magazine, which bills itself as the world's largest monthly magazine specifically targeted to the interests of the Honda Gold Wing and Valkyrie motorcyclist, has featured two articles in March and June 2006 discussing the low speed wobble. [*5] (*Id.* PP 19, 20.)

### C. Plaintiffs' Experiences

Plaintiffs claim that they have all personally experienced the wobble problem with their Gold Wing motorcycles. After riding his new Gold Wing for approximately 3,000 miles, for example, Ron Lantz noted a severe wobble at speeds between 25 and 40 miles per hour ("mph"). (*Id.* PP 6, 25.) Lantz took the motorcycle back to the dealership and was told that the wobble stemmed from faulty tires. Lantz replaced the tires several times and added a Super-Brace fork stabilizer, but none of these efforts fixed the wobble. Finally, Lantz solved the problem by replacing the steering head bearings with tapered bearings. (*Id.* P 25.) In all, Lantz spent in excess of $ 2,500 to fix his Gold Wing, but Honda refused to pay for any of the repairs. (*Id.* P 26.)

Dennis Gribbins rode his new motorcycle only 5,978 miles before it, too, developed a wobble on July 27, 2002 at speeds of approximately 35 to 45 mph. Over the next four years, Gribbins took his Gold Wing to numerous dealers and repair shops, but none was able to fix the wobble. Throughout this period, Gribbins also complained about the problem to Honda and its authorized dealers, [*6] and asked the Company to reimburse him for the repair expenses. (*Id.* PP 27-29.) In May 2006, Gribbins finally fixed the wobble by installing new tapered steering head bearings. (*Id.* P 30.)

Richard Allen first noticed a severe wobble on his pre-owned Gold Wing while riding the motorcycle home from the dealership in August 2006. The wobble occurred at speeds between 30 and 40 mph, and Allen feared losing control of the motorcycle. He contacted the Honda dealership and was informed that they knew about the problem but could not fix it. When Allen contacted Honda's TechLine, however, he was told to contact his dealer. Allen has since replaced the Gold Wing's tires, but this has not eliminated the wobble. (*Id.* PP 32-34.)

Clarence Alvord's Gold Wing developed a wobble in May 2005, with only 2,000 miles on the motorcycle. The wobble was significant at speeds of 35 to 40 mph, and somewhat lesser at speeds of 10 to 20 mph. (*Id.* P 35.) Alvord spent the next year taking his motorcycle to authorized dealerships in Florida and Ohio, but none could fix the wobble. At the suggestion of the dealerships, Alvord changed the tires twice and installed a fork brace, but these efforts [*7] failed. Throughout this time, Alvord complained about the problem to Honda and its authorized dealerships, but Honda refused to help or reimburse Alvord for his expenses in attempting to fix the wobble. (*Id.* PP 37-40.)

**D. Plaintiffs' Lawsuit**

Plaintiffs filed this federal class action diversity jurisdiction lawsuit on November 1, 2006. Counts I through VI seek recovery under a variety of California state laws, including the California Business and Professions Code, *Cal. Bus. & Prof. Code §§ 17200 et seq.* (Count I) and *§§ 17500 et seq.* (Count II); the California Civil Code, *Cal. Civ. Code §§ 1750 et seq.* (Count III); the California Commercial Code, *Cal. Comm. Code §§ 2313 and 2314* (Counts IV and V); and California's common law of unjust enrichment. In these counts, Plaintiffs allege that Honda has violated California's unfair competition law; utilized untrue and misleading advertising; violated the California Consumers Legal Remedies Act; breached express and implied warranties; and unjustly benefitted from its unlawful conduct at Plaintiffs' expense.

Plaintiffs also allege four alternative [*8] counts in the event the court finds that class-wide application of California law is inappropriate. Each of these counts alleges violations of the laws of the District of Columbia and every state except California. Specifically, Alternate Count I alleges violation of state consumer protection laws; Alternate Counts II and III allege breach of state express and implied warranties, respectively; and Alternate Count IV alleges claims for common law unjust enrichment.

On December 18, 2006, Honda moved to dismiss the Complaint in its entirety for failure to state a claim. Shortly thereafter, on December 28, 2006, the parties consented to the jurisdiction of the United States Magistrate Judge. On January 8, 2007, Honda moved to stay discovery pending a ruling on the motion to dismiss, and the court granted the stay on March 7, 2007. (Minute Order of 3/7/07, Doc. 35.) The court now addresses Honda's motion to dismiss.

**DISCUSSION**

The purpose of a motion to dismiss is to test the sufficiency of plaintiffs' complaint, not to decide its merits. *Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990).* A motion to dismiss will be granted only "if it appears [*9] beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitles him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).* In reviewing a motion to dismiss for failure to state a claim, the court accepts as true all factual allegations in the plaintiffs' complaint and draws all reasonable inferences in their favor. *Franzoni v. Hartmarx Corp., 300 F.3d 767, 770 (7th Cir. 2002).*

Honda argues that Counts I through VI must be dismissed because Illinois conflict of laws principles do not support the application of California law. Honda claims that Alternate Counts I through IV must also be dismissed with respect to all states except Illinois and Florida, which are the only states in which Plaintiffs reside. As for the Illinois and Florida state law claims, Honda argues that they all fail because Plaintiffs have not pled fraud with particularity; the statute of limitations has run on the warranty claims; and Plaintiffs have an adequate remedy at law precluding any recovery for unjust enrichment. The court considers each argument in turn.

**A. The California Law Counts**

Honda argues that Illinois conflict of law [*10] principles require that the California state law counts be dismissed. Before assessing the merits of this argument, the court first addresses Plaintiffs' assertion that it is premature to consider the choice-of-law issue prior to class certification.

**1. Timing of Conflicts Analysis**

Plaintiffs seek certification of a nationwide class under *Rule 23(b)(2)* and *(b)(3)*. Plaintiffs note that "choice-of-law issues in nationwide class actions are rarely so uncomplicated that one can delineate clear winning and losing arguments at an early stage in the litigation." *Mirfasihi v. Fleet Mortg. Corp., 450 F.3d 745, 750 (7th Cir. 2006).* None of Plaintiffs' cited cases, however, stands for the proposition that choice-of-law issues must await a determination as to class certification. In *Mirfasihi,* for example, the court considered whether to approve a proposed class action settlement, noting that "it would seem that the legal uncertainty resulting from the complicated choice-of-law issues in this case should not cut solely against the value of plaintiff's claims here, but should also be a factor in considering the value of Fleet's defenses." *Id.* Nowhere in the [*11] case does the Seventh Circuit address the timing of choice-of-law determinations relative to motions to dismiss.

In *Spence v. Glock, Ges.m.b.H., 227 F.3d 308 (5th Cir. 2000),* and *In re St. Jude Med., Inc. Silzone Heart Valve Prod. Liab. Litig., 425 F.3d 1116 (8th Cir. 2005),*

the Fifth and Eighth Circuits rejected nationwide class certifications where the district court adopted one state's consumer protection law without conducting a proper choice-of-law analysis. 227 F.3d at 313-14; 425 F.3d at 1120. The Eighth Circuit expressly relied on the Seventh Circuit's pronouncement in *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002), that "[s]tate consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules." *Id.* (quoting *In re Bridgestone/Firestone*, 288 F.3d at 1018). Neither of these cases requires that the court delay a choice-of-law analysis to the time of class certification. Indeed, both cases undermine the theory that a nationwide California class will be appropriate [*12] at all. The court thus turns to the merits of Honda's conflicts argument.

### 2. Conflicts Analysis

It is well-established that in a diversity suit such as this, "the federal court applies the conflicts principles of the state in which it sits." *Carris v. Marriott Int'l, Inc.*, 466 F.3d 558, 560 (7th Cir. 2006). Illinois conflicts principles "require the court to select the law of the jurisdiction that has the 'most significant relationship' to the events out of which the suit arose, and to the parties." *Id.* (citing *Esser v. McIntyre*, 169 Ill. 2d 292, 297-98, 661 N.E.2d 1138, 1141, 214 Ill. Dec. 693 (1996)). For tort claims, courts look to (1) where the injury occurred; (2) where the injury-causing conduct occurred; (3) the domicile of the parties; and (4) where the relationship of the parties is centered." *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 916 (7th Cir. 2006). "[T]he law of the place of injury controls unless Illinois has a more significant relationship with the occurrence and with the parties." *Id.* at 915-16 (quoting *Esser*, 169 Ill. 2d at 298, 661 N.E.2d at 1141). For contract claims, courts [*13] consider (1) the place of contracting; (2) the place of the negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile and nationality of the parties. *Curran v. Kwon*, 153 F.3d 481, 488 (7th Cir. 1998).

In this case, Plaintiffs purchased and used their Gold Wing motorcycles in Florida and Illinois, the states in which they reside. Any alleged fraud made in connection with the purchases occurred at the points of purchase in those two states. Assuming Plaintiffs allege fraud or misrepresentations originating in California, moreover, Plaintiffs received and acted on the representations in Florida and Illinois, and that is where the parties' relationships are centered. *See, e.g., Clark v. Experian Info. Solutions, Inc.*, No. 03 C 7882, 2005 U.S. Dist. LEXIS 8243, 2005 WL 1027125, at *3 (N.D. Ill. Apr. 26, 2005) (quoting *In re Bridgestone/Firestone*, 288 F.3d at 1017) ("The Seventh Circuit has unequivocally held that in a consumer fraud case, 'the injury is decidedly where the *consumer* is located.'") (emphasis in original). In addition, Plaintiffs negotiated and contracted to buy the motorcycles [*14] in Florida and Illinois, and that is where delivery occurred and where the motorcycles are located. It is true that Honda is domiciled in California, but this is the least significant factor and does not suffice to establish a more significant relationship with that state. 3 See *CSX Transp., Inc. v. Chicago and North Western Transp. Co.*, 62 F.3d 185, 189 (7th Cir. 1995) (citing Restatement (Second) of Conflicts § 188(3)) (noting that if the place of contract negotiation and performance are the same, that state's law usually will apply).

> 3  Plaintiffs allege that Mr. Gribbins, Mr. Allen, and Mr. Alvord communicated with Honda, but all such communications occurred after the men purchased their motorcycles and cannot form the basis of the fraud claims.

Plaintiffs nonetheless argue that California law should apply based on an Illinois Appellate Court's decision in *Barbara's Sales, Inc. v. Intel Corp.*, 367 Ill. App. 3d 1013, 857 N.E.2d 717, 306 Ill. Dec. 318 (5th Dist. 2006). [*15] The plaintiffs in *Barbara's Sales* filed a nationwide class action lawsuit on behalf of purchasers of computers containing Intel Pentium 4 computer processors. *Id.* at 1014, 857 N.E.2d at 718. The plaintiffs alleged that Intel engaged in unfair business practices by concealing information that the Pentium 4 processor "does not perform to the expectations of a reasonable consumer." *Id.* The court determined that all 50 states and the District of Columbia "bear some relationship to this litigation by virtue of the nationwide sales of computers containing Pentium 4 processors." *Id.* at 1019, 857 N.E.2d at 722. The court held, however, that California had the most significant relationship to the litigation. In reaching this conclusion, the court noted that (1) Intel is headquartered in California; (2) Intel's corporate marketing and press relations groups are located in California; (3) Intel launched a billion-dollar marketing strategy based upon putting forth a consistent message across all 50 states; (4) the Intel group responsible for the

design of the Pentium 4 processor was located in California; and (5) Intel tested the Pentium 4 processor in [*16] California and disseminated the results from that state. *Id. at 1015, 1019, 857 N.E.2d at 719, 722.*

The court also found it significant that "[t]he needs of the interstate system and the basic policies of predictability and uniformity of result require one forum with one result rather than results in 51 jurisdictions with the distinct possibility of conflicting decisions." *Id. at 1019, 857 N.E.2d at 722.* The court cautioned, however, that "[o]ur decision today should not . . . be considered a new rule requiring courts to always apply the consumer fraud law of a foreign state to adjudicate the claims of Illinois residents for products purchased in Illinois if the defendant's place of business is outside Illinois and the alleged misconduct originated from the defendant's place of business." *Id. at 1020, 857 N.E.2d at 723.* The court described its decision as "a narrow one" and acknowledged that "in another factual situation, this analysis might very well produce a different result." *Id. at 1020-21, 857 N.E.2d at 723.*

The court is not persuaded that the narrow holding in *Barbara's Sales* is applicable here. Plaintiffs [*17] have not alleged that Honda engaged in a billion-dollar marketing campaign for its Gold Wing GL1800 model. Rather, the Complaint states only that Honda has generally "advertised and marketed the Gold Wing," including posting stories and maintaining a video on the Honda website. (Cmplt. PP 12-14.) *Compare Huthwaite, Inc. v. Randstad General Partner (US), L.L.C., No. 06 C 1548, 2006 U.S. Dist. LEXIS 81363, 2006 WL 3065470, at *3 (N.D. Ill. Oct. 24, 2006)* (following *Barbara's Sales* in case involving "a broad campaign involving many companies.") Nor are there any allegations regarding the testing of the motorcycles or the dissemination of any related results.

Even assuming Plaintiffs could add such allegations, moreover, the court finds the analysis contrary to established Illinois and Seventh Circuit case law. *See, e.g., Connick v. Suzuki Motor Co., Ltd., 174 Ill. 2d 482, 489, 675 N.E.2d 584, 588, 221 Ill. Dec. 389 (1996)* (applying Illinois law to consumer fraud claims asserted by Illinois residents under "most significant relationship" test); *Nicholson v. Marine Corps West Fed. Credit Union, 953 F. Supp. 1012, 1015-16 (N.D. Ill. 1997)* (dismissing claim under California Business [*18] and Professions Code, even though defendant's principal place of business was in California, where the plaintiff resided in Illinois, the parties' relationship was centered in Illinois, and the injury occurred in Illinois). Notably, the decision in *Barbara's Sales* is currently on appeal to the Illinois Supreme Court. *222 Ill. 2d 567, 861 N.E.2d 653, 308 Ill. Dec. 322 (2006).*

Plaintiffs have failed to demonstrate that California law should apply in this case, and their claims under California state law (Counts I through VI) are all dismissed.

### B. The Alternate Counts

Plaintiffs have asserted four alternative claims under the laws of the District of Columbia and all 50 states except California. Specifically, Plaintiffs allege violations of state consumer protection laws; breach of state express and implied warranties; and claims for common law unjust enrichment.

As a preliminary matter, the court agrees with Honda that Plaintiffs cannot assert claims under the laws of any state except Florida and Illinois, the two states in which they reside. None of the Plaintiffs alleges any connection whatsoever between his claims and the other jurisdictions. As discussed above, Illinois [*19] choice-of-law principles require application of Florida and Illinois law. Plaintiffs do not argue otherwise.

Honda contends that the Florida and Illinois claims all fail because Plaintiffs have not pled fraud with particularity; the statute of limitations has run on the warranty claims; and Plaintiffs have an adequate remedy at law precluding any recovery for unjust enrichment. The court considers each in turn.

#### 1. The Consumer Fraud Claims

The Illinois Consumer Fraud Act ("ICFA"), *815 ILCS 505/1 et seq.*, prohibits deceptive acts or practices that occur in the course of conduct involving trade or commerce, and that proximately cause damage to the plaintiff. *See Geschke v. Air Force Ass'n, 425 F.3d 337, 345 (7th Cir. 2005).* The Florida Deceptive and Unfair Trade Practices Act ("DUTPA"), *Fl. Stat. §§ 501.201 et seq.*, similarly prohibits deceptive acts or unfair practices that cause actual damage to the plaintiff. *See Marino v. Home Depot U.S.A., Inc., No. 06-80343-CIV., 2007 U.S. Dist. LEXIS 5094, 2007 WL 201260, at *7 (S.D. Fla. Jan. 24, 2007).* Honda argues that the claims of several

Plaintiffs are barred [*20] by the applicable statutes of limitations, and that none of the Plaintiffs has alleged a fraud claim with the particularity required by FED. R. CIV. P. 9(b) in any event.

### a. Statutes of Limitations

Honda argues that Mr. Gribbins' ICFA claim and Mr. Lantz's DUTPA claim are both time-barred. The statute of limitations for ICFA claims is three years. *815 ILCS 505/10a(e)*. A claim accrues under the ICFA "when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Tammerello v. Ameriquest Mortg. Co.*, No. 05 C 466, 2006 U.S. Dist. LEXIS 71249, 2006 WL 2860936, at *7 (N.D. Ill. Sept. 29, 2006). Mr. Gribbins purchased his Gold Wing on November 15, 2001 and became aware of the wobble on July 27, 2002. (Cmplt. P 27.) Mr. Gribbins did not file this lawsuit, however, until November 1, 2006, more than three years later.

Plaintiffs do not dispute these dates, but argue that Mr. Gribbins "exercised due diligence in interacting with Honda and its dealers in attempting to remedy the wobble," and should not now be penalized for "dealing with Honda in Honda's suggested [*21] manner." (Pl. Resp., at 9.) The Illinois doctrine of equitable estoppel can toll the running of the statute of limitations, but only where the defendant took "active steps to prevent the plaintiff from suing in time, . . . such as by hiding evidence or promising not to plead the statute of limitations." *Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 11 F. Supp. 2d 1006, 1011 (N.D. Ill. 1998) (internal quotations omitted); *Ruffin v. Kane County Sheriff Dep't*, No. 01 C 4898, 2006 U.S. Dist. LEXIS 55991, 2006 WL 2088186, at *23 (N.D. Ill. July 21, 2006). Plaintiffs "must plead specific facts to support the court's tolling of the statute of limitations." *Ogilvie v. Beale*, No. 93 C 2934, 1994 U.S. Dist. LEXIS 1123, 1994 WL 33972, at *6 (N.D. Ill. Feb. 4, 1994).

Plaintiffs' allegations that Mr. Gribbins contacted Honda but found the representatives to be unhelpful and rude are not sufficient to plead estoppel. Plaintiffs do not allege that Honda made any representations with the specific intent to prevent Plaintiffs from filing suit within the limitations period, or that they would have filed suit earlier had they not relied on such representations. See *National Black Expo v. Clear* [*22] *Channel Broadcasting, Inc.*, No. 03 C 2751, 2007 U.S. Dist. LEXIS 9783, 2007 WL 495307, at *7 (N.D. Ill. Feb. 8, 2007) (equitable estoppel did not apply where the plaintiff "has not alleged sufficient facts, nor plead th[at] theor[y] with the required specificity.") Thus, Mr. Gribbins' ICFA claim is untimely and must be dismissed.

The Florida DUTPA does not have an express statute of limitations. Courts thus apply Florida's general four year statute of limitations for unfair and deceptive trade practices claims. See *Fla. Stat. § 95.11(3)(f)*; *Yusuf Mohamed Excavation, Inc. v. Ringhaver Equip. Co.*, 793 So.2d 1127, 1128 (Fla. Dist. Ct. App. 2001). Mr. Lantz purchased his Gold Wing in September 2002, and discovered the wobble after putting some 3,000 miles on the motorcycle. The court cannot discern from these allegations exactly when Mr. Lantz's claim accrued. Assuming it accrued within the four-year limitations period, Honda argues that the court should apply Illinois' three-year limitations period instead.

The Seventh Circuit has stated that "[a] federal court sitting in diversity must follow the statute of limitations that the state in which [*23] it is sitting would use." *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 707 (7th Cir. 2004). See also *Hollander v. Brown*, No. 05 C 57, 2005 U.S. Dist. LEXIS 13601, 2005 WL 1563125, at *2 (N.D. Ill. June 28, 2005) ("Statutes of limitation are governed by the law of the forum state.") Honda argues that this precedent mandates that the court apply Illinois' three year statute of limitations to Mr. Lantz's DUTPA claim. (Def. Mem., at 11.) Plaintiffs disagree, arguing that "because such claims are not based on common law, but were instead created by Florida's legislature," Florida's statute of limitations must apply. (Pl. Resp., at 8 (citing *Cox v. Kaufman*, 212 Ill. App. 3d 1056, 571 N.E.2d 1011, 156 Ill. Dec. 1031 (1st Dist. 1991).) This argument misses the point.

The Cox court confirmed that "where the cause of action is created by statute and a time is fixed within which the cause of action must be asserted, the law of the state where the action occurred must govern." 212 Ill. App. 3d at 1062, 571 N.E.2d at 1015. In such circumstances, the limitations period is not merely procedural, but a fundamental component of the right itself. *Kalmich v. Bruno*, 553 F.2d 549, 553 (7th Cir. 1977) [*24] ("[W]here (a) statute creates a right that did not exist at common law and restricts the time within which the right might may be availed of, or otherwise imposes conditions, such statute is not a statute of

limitation (in the normal sense) but the time element is an integral part of the enactment.") As noted, the DUTPA does not have a statute of limitations. Thus, the court must apply Illinois' three year statute of limitations to Mr. Lantz's claim.

All we know at this point is that Mr. Lantz purchased his Gold Wing in September 2002, and discovered the wobble after putting some 3,000 miles on the motorcycle. Though it is probable that Mr. Lantz discovered the wobble prior to November 1, 2003, absent further information, the court cannot say that Mr. Lantz's DUTPA claim is absolutely time-barred. The court therefore declines to dismiss Mr. Lantz's claim on this basis.

### b. Pleading Requirements

Defendants argue that even if Mr. Lantz's claim is not time-barred, both his and Mr. Gribbins' claims must be dismissed for failure to plead fraud with particularity. Plaintiffs dispute that their ICFA and DUTPA claims must in fact comply with *Rule 9(b)*. According to Plaintiffs, [*25] "because state consumer protection statutes are not specifically mentioned in *Rule 9(b)*, they are not subject to heightened pleading standards in federal court." (Pl. Resp., at 10-11.) In support of this contention, Plaintiffs cite *Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)*, in which the Supreme Court held that *Rule 8(a)*'s notice pleading standard applied to a claim for age discrimination. *Id. at 512-13.* See also *Educadores Puertorriquenos En Accion v. Hernandez, 367 F.3d 61, 66-67 (1st Cir. 2004)* ("We join several of our sister circuits in holding that there are no heightened pleading standards for civil rights cases.") The Supreme Court expressly confirmed, however, that *Rule 9(b)* "provides for greater particularity in all averments of fraud or mistake." *Id. at 513.*

One Massachusetts district court has interpreted *Swierkiewicz* as "sound[ing] the death knell for the imposition of a heightened pleading standard" in a fraud claim under the Massachusetts Consumer Protection Act, Ch. 93A. *Lawson v. Affirmative Equities Co., L.P., 341 F. Supp. 2d 51, 67 n.25 (D. Mass. 2004)* (quoting *Hernandez, 367 F.3d at 66*). [*26] The *Lawson* court offers no clear explanation for this conclusion, however, which is at odds with precedent in Illinois and Florida. See *Costa v. Mauro Chevrolet, Inc., 390 F. Supp. 2d 720, 731 (N.D. Ill. 2005)* ("A complaint alleging a violation of the Illinois [Consumer] Fraud Act must be pled with the same particularity and specificity as that required under common law fraud under *Rule 9(b)*."); *Zlotnick v. Premier Sales Group, Inc., 431 F. Supp. 2d 1290, 1295 (S.D. Fla. 2006)* (noting that fraud claim under the Florida DUTPA must be pled "with the level of particularity required under *FED. R. CIV. P. 9(b)*."); *Florida Digital Network, Inc. v. Northern Telecom, Inc., No. 6:06-CV-889-Orl-31-JGG, 2006 U.S. Dist. LEXIS 61983, 2006 WL 2523163, at *5 (M.D. Fla. Aug. 30, 2006)* ("[C]laims arising under the FDUTPA must be pled with particularity.") The court does not find the reasoning of *Lawson* persuasive and declines to follow it here.

Having concluded that claims under both the Illinois and Florida consumer fraud statutes must be pled with particularity in accordance with *FED. R. CIV. P. 9(b)* [*27], the court next considers whether Plaintiffs have alleged the "who, what, when, and where" of the fraud "sufficient to reasonably notify the defendant[] of [its] purported role in the scheme." *IFC Credit Corp. v. Aliano Bros. General Contractors, Inc., No. 04 C 6504, 2007 U.S. Dist. LEXIS 3595, 2007 WL 164603, at *3 (N.D. Ill. Jan. 12, 2007)* (internal quotations omitted). See also *American United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1064 (11th Cir. 2007)* (quoting *Cooper v. Blue Cross & Blue Shield of Florida, Inc., 19 F.3d 562, 568 (11th Cir. 1994))* ("[T]he plaintiff's complaint must allege the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.")

Plaintiffs' Complaint is deficient on several grounds. Plaintiffs allege that Honda "advertised and marketed the Gold Wing as being a luxury motorcycle perfect for touring long distances and capable of handling on highways across the United States," but that the motorcycle actually has a defect that limits riders' ability to travel in comfort and safety. (Cmplt. PP 14-16.) Plaintiffs also allege that they each purchased Gold Wing motorcycles that had the stated [*28] defect. (*Id.* PP 23, 27, 31, 35.) It is not clear that advertising a product as a luxury motorcycle perfect for long-distance touring constitutes an actionable misrepresentation. See, e.g., *Avery v. State Farm Mut. Auto. Ins. Co., 216 Ill. 2d 100, 173-74, 835 N.E.2d 801, 846-47, 296 Ill. Dec. 448 (2005)* (statement by automobile insurer that it sold "quality replacement parts" that were subject to "very high performance criteria" was mere puffing and not actionable under the ICFA); *Breckenridge v. Cambridge*

*Homes, Inc.*, 246 Ill. App. 3d 810, 823, 616 N.E.2d 615, 623-24, 186 Ill. Dec. 425 (2d Dist. 1993) (vendor's statements that home would be built with "expert workmanship" and "custom quality," and delivered to plaintiffs in "perfect" condition constituted puffing and did not violate the ICFA).

In any event, none of the Plaintiffs indicates if or when they saw any misleading statements before purchasing their motorcycles, or that such statements induced them to make these purchases. To the extent Plaintiffs allege that Honda promised but failed to deliver a luxury motorcycle, such a claim is not actionable under the ICFA or DUTPA. *Avery*, 216 Ill. 2d at 169, 835 N.E.2d at 844 [*29] (a "deceptive act or practice" requires "more than the mere fact that a defendant promised something and then failed to do it. That type of 'misrepresentation' occurs every time a defendant breaches a contract.") (internal quotations omitted); *Haun v. Don Mealy Imports, Inc.*, 285 F. Supp. 2d 1297, 1307 (M.D. Fla. 2003) ("[B]ecause Plaintiff fails to allege *how* he was 'aggrieved by' Defendant's acts, he fails to state the elements of harm and causation, essential to his [DUTPA] claim."). Thus, Plaintiffs' consumer fraud claims must all be dismissed.

**2. The Warranty Claims**

Honda next seeks dismissal of Plaintiffs' claims for breach of express and implied warranties. Honda argues that the claims are time-barred, fail to allege any defect within the scope of the express warranty, and/or fail to allege the requisite privity.

**a. Statute of Limitations**

In Alternate Counts II and III of the Complaint, Plaintiffs allege that Honda violated express and implied warranties under the Illinois and Florida Uniform Commercial Codes. *810 ILCS 5/2-725; Fla. Stat. § 672.313*. The limitations period [*30] for a breach of warranty action in Illinois is four years from the date of breach. *810 ILCS 5/2-725(1)*. A breach occurs when "tender of delivery is made" or "when the breach is or should have been discovered." *810 ILCS 5/2-725(2); Bethlehem Steel Corp. v. Chicago Eastern Corp.*, 863 F.2d 508, 511 n.3 (7th Cir. 1988); *Thorogood v. Sears, Roebuck & Co.*, No. 06 C 1999, 2006 U.S. Dist. LEXIS 82975, 2006 WL 3302640, at *3 (N.D. Ill. Nov. 9, 2006). Mr. Gribbins discovered the Gold Wing's wobble on July 27, 2002, more than four years before he filed suit on November 1, 2006. Mr. Gribbins' claims are time-barred and, for the reasons stated above, he has not alleged any facts supporting equitable estoppel sufficient to avoid dismissal.

Honda argues that Mr. Lantz's warranty claims are similarly time-barred. The court agrees with Honda that Illinois' four-year statute of limitations applies because the Florida statute does not contain a limitations period on such claims. *See Fla. Stat. §§ 672.313, 672.314. See also Thomas*, 381 F.3d at 707 ("[a] federal court sitting in diversity [*31] must follow the statute of limitations that the state in which it is sitting would use.") Plaintiffs' argument for application of Florida's five-year limitations period as set forth in *Fla. Stat. § 95.11(2)(b)* is rejected. (Pl. Resp., at 8.) As with Mr. Lantz's consumer fraud claim, however, the court declines to dismiss the warranty claims on statute of limitations grounds absent further information as to the date he discovered the wobble in his motorcycle.

**b. Defects**

Honda seeks dismissal of Mr. Allen's and Mr. Alvord's express warranty claims for failure to allege any defect within the scope of the warranty. (Def. Mem., at 12.) The warranty states that "the motorcycle is free from defects in materials and workmanship." (Ex. 1 to Def. Mem., at 6.) *See also Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.") Honda argues that neither Mr. Allen nor Mr. Alvord has alleged any such defect. To the contrary, "the so-called [*32] 'wobble' was not remedied by any change to their motorcycle." (Def. Mem., at 12.) Plaintiffs disagree, noting their allegations that the Gold Wing has a design defect that is eliminated by replacing the steering head bearings. (Pl. Resp., at 14.) Honda responds that these allegations are made only by the other two Plaintiffs, Mr. Gribbins and Mr. Lantz. (Def. Reply, at 14-15.)

The court declines to dismiss the express warranty claims of Mr. Allen and Mr. Alvord. It is true that both men rely on statements made by the other two Plaintiffs. However, the court cannot say that Mr. Allen and Mr. Alvord will be unable to present any facts that will entitle them to relief under this claim. *See Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001) (quoting

*Veazey v. Communications & Cable of Chicago, Inc.*, 194 F.3d 850, 854 (7th Cir. 1999)) ("[I]f it is possible to hypothesize a set of facts, consistent with the complaint, that would entitle the plaintiff to relief, dismissal under Rule 12(b)(6) is inappropriate.")

### b. Privity

Honda argues that regardless of any statute of limitations, each Plaintiffs' implied warranty claim fails to allege [*33] sufficient privity between Plaintiffs and Honda. Plaintiffs all purchased their Gold Wing motorcycles from Honda dealers which, Honda contends, is not sufficient to allege any statements or representations on the part of Honda. (Def. Mem., at 9.) *See Rothe v. Maloney Cadillac, Inc.*, 119 Ill. 2d 288, 292, 518 N.E.2d 1028, 1029, 116 Ill. Dec. 207 (1988) ("UCC article II implied warranties give a buyer of goods a potential cause of action only against his immediate seller."); *Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 347 Ill. App. 3d 828, 832, 807 N.E.2d 1165, 1169, 283 Ill. Dec. 324 (1st Dist. 2004) ("[O]ur supreme court still requires privity even where the manufacturer issues a written warranty."); *Weiss v. Johansen*, 898 So.2d 1009, 1012 (Fla. Dist. Ct. App. 2005) (requiring privity of contract for breach of implied warranty claims).

Plaintiffs direct the court to their allegations that they purchased motorcycles from authorized Honda dealers, and argue that the dealers are Honda's agents "for purposes of warranty implementation." (Pl. Resp., at 12.) The Complaint, however, sets forth no allegations suggesting that any such agency relationship exists. Nor is it [*34] clear that any dealers were in fact Honda's agents in connection with the motorcycle sales *See Hood v. Dryvit Sys., Inc.*, No. 04 C 3141, 2005 U.S. Dist. LEXIS 27055, 2005 WL 3005612, at *5 (N.D. Ill. Nov. 8, 2005) (quoting *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 498, 675 N.E.2d 584, 592, 221 Ill. Dec. 389 (1996)) ("A complaint relying on agency must plead facts which, if proved, could establish the existence of an agency relationship. It is insufficient to merely plead the legal conclusion of agency.") Plaintiffs attempt to rely on *Mydlach v. DaimlerChrysler Corp.*, 364 Ill. App. 3d 135, 846 N.E.2d 126, 301 Ill. Dec. 164 (1st Dist. 2005), for the proposition that privity exists where a manufacturer extended a written warranty to the consumer. *Mydlach*, however, involved a claim brought pursuant to the federal Magnuson-Moss Act, 15 U.S.C. §§ 2301 et seq., which is not at issue here. Honda's motion to dismiss the implied warranty claims for lack of privity is granted.

### 3. The Unjust Enrichment Claims

Honda finally argues that Plaintiffs' unjust enrichment claims must be dismissed because they have an adequate remedy at law under the warranty provisions [*35] of their purchase agreements. (Def. Mem., at 9-10, 12.) It is undisputed that "where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *People ex rel. Hartigan v. E & E Hauling, Inc.*, 153 Ill.2d 473, 497, 607 N.E.2d 165, 177, 180 Ill. Dec. 271 (1992) (internal quotations omitted). *See also Bowleg v. Bowe*, 502 So.2d 71, 72 (Fla. Dist. Ct. App. 1987) ("Bowleg's second count fails because the theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy-here, an action on the presumably valid Final Contract.") Mr. Gribbins' unjust enrichment claim is therefore dismissed.

The Florida Plaintiffs argue that their claims must nonetheless stand because under Florida law, "unjust enrichment claims may be pursued until it is proven that an express contract applies." (Pl. Resp., at 15 (citing *Williams v. Bear Stearns & Co.*, 725 So.2d 397, 400 (Fla. Dist. Ct. App. 1998) ("Until an express contract is proven, a motion to dismiss a claim for . . . unjust enrichment on these grounds [the existence of an adequate remedy at law] [*36] is premature.").) According to Plaintiffs, dismissal of the unjust enrichment claims is premature, "particularly where Honda argues that its express written warranties do not apply to Plaintiffs' claims." (*Id.*) Defendants insist that the claims are properly dismissed now as "[t]here is no dispute that a contract of warranty exists," regardless of whether the warranty will provide Plaintiffs with a "successful" remedy. (Def. Reply, at 15.)

It does appear that Plaintiffs agree that they have express written warranties in this case. In addition, Plaintiffs nowhere allege that they do not in fact have an adequate remedy at law. Thus, Plaintiffs' unjust enrichment claims under Florida law must be dismissed. *See In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1337 (S.D. Fla. 2002) ("The Plaintiffs have not explicitly alleged that an adequate remedy at law does not exist, and the failure to do so is fatal.")

### CONCLUSION

For the reasons stated above, Honda's motion to

dismiss [Doc. 15] is granted in part and denied in part. The court will grant Plaintiffs leave to file an amended complaint consistent with this opinion by June 8, 2007. See Collins v. [*37] Prater, No. 06-396-GPM, 2007 U.S. Dist. LEXIS 9477, 2007 WL 490971, at *1 (S.D. Ill. Feb. 9, 2007) ("Federal Rule of Civil Procedure 15(a) dictates that leave to amend a pleading 'shall be given whenever justice so requires,' . . . and, indeed, the rule expressly grants a plaintiff one opportunity to amend her complaint as a matter of course before a responsive pleading is served."

Dated: May 14, 2007

Nan R. Nolan

United States Magistrate Judge