# EXHIBIT N

LEXSEE 1990 U.S. DIST. LEXIS 3459

**ELLYN SUE LAPINE, Plaintiff, v. EDWARD MARSHALL BOEHM, INC., and HELEN BOEHM, Defendants**

**No. 89 C 8420**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*1990 U.S. Dist. LEXIS 3459*

**March 28, 1990, Decided**

**OPINION BY:** [*1] KOCORAS

**OPINION**

*MEMORANDUM OPINION*

CHARLES P. KOCORAS, UNITED STATES DISTRICT JUDGE

This matter comes before the Court on defendants' motion to dismiss plaintiff's complaint pursuant to *Federal Rules of Civil Procedure 12(b)(1)* and *12(b)(6)*. For the reasons set forth below, defendants' motion is granted in part and denied in part.

BACKGROUND

Plaintiff Ellyn Sue Lapine was hired by defendants Edward Marshall Boehm, Inc. and Helen Boehm to serve as a store manager for their newest establishment. The Company was planning a September, 1988, store opening and throughout August and part of September of that year, plaintiff was involved in the preparations for the store opening, including hiring sales personnel. Prior to opening, defendants terminated plaintiff's employment citing plaintiff's incompetency as cause for the termination. Plaintiff, however, disagreed with defendants' purported reason for dismissal and filed a charge with the Equal Employment Opportunity Commission ("EEOC") on July 14, 1989. After obtaining her right to sue letter from the EEOC, plaintiff filed this action alleging that defendants discriminated against her on the basis of religion and national origin.

Plaintiff's [*2] four-count complaint sets forth causes of action based on Title VII, *42 U.S.C. §§ 2000e-2000e-17*, as well as state contract law. Specifically, plaintiff claims that defendants discriminated against her on the basis of religion and national origin and invokes Title VII as a remedy. Plaintiff also claims that by firing her before the expiration of one year, defendants breached an express contract by which the parties were bound. Alternatively, plaintiff contends that the defendants breached a contract implied in fact and/or one implied in law.

In lieu of answering plaintiff's complaint, defendants have filed this motion to dismiss. Defendants assert that plaintiff's Title VII action is barred by plaintiff's failure to exhaust her administrative remedies as required under the statute and that any attempt to do so at this time would be futile because the time for filing her claim with the state agency or the EEOC has expired. Furthermore, defendants argue that if plaintiff's Title VII claim fails, the pendent state claims cannot be brought in federal court.

Alternatively, defendants argue that plaintiff's complaint is insufficient on a number of other levels. First, defendants argue that [*3] plaintiff has not properly joined defendant Helen Boehm because her name was not listed on the EEOC charge. Next, defendants contend that plaintiff has not set forth the terms of the express agreement or explained how her termination allegedly caused a breach of that agreement. Further, because the parties agreed in a writing that the plaintiff was terminable at will, defendants assert that as a matter of law, a contract embodying a different term cannot be implied.

1990 U.S. Dist. LEXIS 3459, *3

## DISCUSSION

### I. Motion To Dismiss

In order to have a claim dismissed under *Rule 12(b)(6)*, the moving party must meet a high standard. The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the case. Under the "simplified notice pleading" of the Federal Rules of Civil Procedure, the allegations of a complaint should be construed liberally and "the complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 46, 78 S.Ct. 99, 102 L.Ed.2d 80 (1957)*; *see also Lewis v. Local Union No. 199 of Laborers' Intern.* [*4] *Union of North America, AFL-CIO, 750 F.2d 1368 (7th Cir. 1984)*. Generally, "mere vagueness or lack of detail does not constitute sufficient grounds for a motion to dismiss." *Strauss v. City of Chicago, 760 F.2d 765 (7th Cir. 1985)*.

When considering a defendant's motion to dismiss the Court must view the complaint's allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)*; *Conley, 355 U.S. at 45, 78 S.Ct. at 102*. All well-pleaded facts and allegations in the plaintiff's complaint must be taken as true, *Ed Miniat Inc. v. Globe Life Ins. Group, Inc., 805 F.2d 732, 733 (7th Cir. 1986)*, and the plaintiff is entitled to all reasonable inferences that can be drawn therefrom. "Furthermore, a complaint is not required to allege all, or any, of the facts logically entailed by the claim . . . . [A] complaint does not fail to state a claim merely because it does not set forth a complete and convincing picture of the alleged wrongdoing." *American Nurses Ass'n v. State of Illinois, 783 F.2d 716, 727 (7th Cir. 1986)*.

### II. Title VII

### A. Exhaustion

Defendant first argues that plaintiff has failed to [*5] exhaust her state administrative remedies, a prerequisite to filing her EEOC charge and her Title VII suit. Therefore, although plaintiff was entitled to a 300-day limitations period in which to file her EEOC charge, plaintiff was required to file first with the state agency. According to defendants, the fact that plaintiff filed with the EEOC within 300 days is irrelevant because she failed to meet the jurisdictional requirement of exhaustion.

Plaintiff insists that her charge was timely filed. She contends that she was not required to exhaust her state remedies because her charge was the subject of a worksharing agreement between the EEOC and the Illinois Department of Human Rights ("IDHR"), the state agency responsible for processing discrimination charges. According to plaintiff, the worksharing agreement provides that a charge such as plaintiff's is subject to processing by the EEOC and that the state agency has waived the 60-day deferral period with respect to this type of claim. Consequently, plaintiff's charge did not have to be referred to the state agency and was considered filed with the EEOC on the date plaintiff submitted her charge to that office.

As a prerequisite to [*6] filing an action in federal court, Title VII requires that a plaintiff file a charge with the Equal Employment Opportunity Commission. *42 U.S.C. § 2000e-5(c)*. The EEOC is the federal agency charged with the responsibility of processing and investigating all employment discrimination claims. Once the EEOC has investigated the claim and attempted a resolution through informal methods such as conciliation or conference, the EEOC decides whether to pursue the claim as an agency or whether to turn the case over to the individual claimant. *42 U.S.C. § 2000e-5*. Because the EEOC can handle very few cases out of the multitude it processes, most claimants pursue their own law suit in federal court. The EEOC provides these claimants with a right to sue letter which entitles them to file their federal action.

In order to allow the EEOC to most expeditiously and effectively meet its objectives, Congress has required plaintiffs to adhere to an abbreviated limitations period. Generally, a charge of unlawful discrimination must be filed with the EEOC within 180 days of the alleged discriminatory act. *42 U.S.C. § 2000e-5(e)*. However, where a claimant is a resident of a deferral state, a state which [*7] provides a regulatory scheme of its own to which the EEOC can refer charges, the filing period is extended to 300 days. *Id.* The filing period is a statutory prerequisite and absent cause for the application of some sort of equitable tolling exception, a federal court may not entertain a suit based on charges filed after the expiration of these periods. *See Jennings v. American Postal Workers Union, 672 F.2d 712 (8th Cir. 1982)*.

Where the charge of discrimination is brought in a deferral state, the applicable limitations period is expanded to allow the claimant to use the state regulatory scheme to resolve the dispute before invoking the powers of the federal agency. In addition to accommodating concerns of federalism, the deferral provisions were designed to promote "time economy and the expeditious handling of cases." 110 Cong. Rec. 9790 (1964) (remarks of Senator Dirksen). Indeed, claimants in a deferral state are required to exhaust their state administrative remedies prior to filing a charge with the EEOC. *42 U.S.C. § 2000e-5(c)*. Claimants may file their claims with the state agency in the first instance or they may file with the EEOC and rely on the EEOC to transfer the [*8] charge to the state agency for review and investigation. *See Love v. Pullman Co., 404 U.S. 522 (1972)* (approving procedure whereby claimant files first with EEOC and EEOC refers case to state agency; claimant considered to have exhausted state remedies); *see also 29 C.F.R. § 1601.13* (requiring EEOC to refer all charges to appropriate state agency). Either method satisfies the claimant's duty to exhaust state remedies. However, in calculating their 300-day limitations period, claimants must account for the 60-day deferral period provided state agencies. Claimants must exhaust their state remedies and file with the EEOC within the 300-day period. *See Gilardi v. Schroeder, 833 F.2d 1226, 1229-33 (7th Cir. 1987)*.

Once a state agency receives a claim referred by the EEOC, several things may occur. The state agency may choose to take action on the charge by investigating the charge and where feasible, by seeking conciliation with the employer. If the state chooses to take either of these actions, the state agency has 60 days in which to complete investigation and or conciliation. The agency may, however, conclude its activities with respect to a charge prior to the 60-day deadline, [*9] in which case if the charge has not been resolved, it would be reinstated and considered filed with the EEOC on the date the state agency terminates its activities. *42 U.S.C. § 2000e-5(c)*. Claimants who do not file their complaint with the state agency within that limitations period -- 180 days -- are not precluded from thereafter exhausting their state remedies, however, they must ultimately comply with the 300-day deadline for filing with the EEOC. *See Gilardi, supra*. Therefore, claimants actually have 240 days in which to file with the state agency. This insures that the claimant will meet his 300-day filing deadline with the EEOC should the state decide to make use of its entire 60-day deferral period.

A third procedure exists by virtue of worksharing agreements. These agreements, entered into by the EEOC and certain state agencies, divide the caseload by class of case and provide that one agency will have the primary responsibility for investigation and conciliation of specific classes of cases. These agreements serve to reduce duplication in the work of the two agencies by making it unnecessary for the EEOC to defer all cases to the state agency before initiating its own [*10] procedures. The state agency "waives" its 60-day deferral period in the case of claims that fall within the primary responsibility of the EEOC. As a consequence, charges that are never referred to the state agency and pursuant to which the state agency has waived its 60-day deferral period are considered "terminated" by the state agency. *EEOC v. Commercial Office Products Co., 108 S.Ct. 1666 (1988)*. This automatic termination has the same effect as if the charge had been deferred to and investigated by the state agency pursuant to the 60-day deferral period. *Commercial Office Products, 108 S.Ct. at 1676*. Accordingly, a charge filed with the EEOC which falls within that agency's ambit pursuant to a worksharing agreement and to which the state agency waives its 60-day deferral period is considered immediately filed with the EEOC. *Id.*

Here, the parties agree that plaintiff filed her charge with the EEOC within the 300-day period. Further, under the Supreme Court's recent case of *Commercial Office Products, supra*, a state's waiver of its 60-day deferral period "terminates" its proceedings within the 300-day limit. *See Commercial Office Products, 108 S.Ct. at 1676*. [*11] As a consequence, charges which fall within the class of suits to which the state waives its deferral period are considered immediately filed with the EEOC. Thus, the only issue to be decided is whether plaintiff's charge falls within the class of claims to which the IDHR has waived its deferral period. We find that it does.

Paragraph 7 of the Worksharing Agreement between the EEOC and the IDHR provides the list of charges which the state processes in the first instance; paragraph 8 lists those classes of cases which the EEOC will process and to which the IDHR waives its deferral period. Paragraph 7 indicates that the state will process all charges that are filed by claimants located in specific Illinois counties. Paragraph 8 indicates that the EEOC will process all charges filed by claimants located in the

balance of the Illinois counties. Paragraph 8 incorporates all charges filed by claimants located in Cook county, the county in which plaintiff resides. Thus we find that plaintiff's charge falls within the EEOC's processing ambit and constitutes a charge to which the IDHR has waived its deferral period. Consequently, the plaintiff's charge was considered filed with the EEOC on [*12] the date plaintiff submitted it to the EEOC and falls within the 300-day limitations period. Thus, plaintiff's charge was timely filed and her exhaustion requirement has been satisfied. [1]

> [1]    Although the defendant contends that the Supreme Court's determination of automatic waiver in the case of *EEOC v. Commercial Office Products, 108 S.Ct. 1666 (1988)*, turned on the Court's finding that the state agency affirmatively terminated their jurisdiction through a letter to the EEOC, we disagree. The existence of the letter of termination was mentioned in the fact section of the Court's opinion; the letter was not mentioned or discussed anywhere else in the opinion. The focus of the Court's analysis was the effect of the waiver as set forth in the worksharing agreement between the state agency and the EEOC. There was absolutely no discussion of a further notice requirement as between the agencies. Indeed, whether the federal and state agencies communicate termination through letter, telephone conversation, or whether the termination is assumed once a certain type of claim comes into the agency is a matter of formality and one that involves a decision by the agencies as to the logistics of handling claims.

[*13] B. Failure to Establish a Prima Facie Case

Defendants make two arguments challenging the pleading sufficiency of plaintiff's Title VII claims. First, defendants assert that plaintiff's claim of discrimination based on her status as a Jew does not state a claim for national origin discrimination. Additionally, defendants argue that plaintiff's claim fails to state a claim altogether. Specifically, defendants contend that plaintiff has failed to set forth in her complaint the elements of a prima facie case.

Plaintiff can point to no authority for the proposition that the characteristic of being "Jewish" indicates national origin. Judaism is indisputably a religion and has been held to constitute a race as well. *See Shaare Tefila*

*Congregation v. Cobb, 481 U.S. 615 (1987)* (definition of race under *42 U.S.C. § 1982* includes Jews). However, stating that one is Jewish gives no indication of that individual's country of origin. Nor does it indicate the country of origin of one's ancestors or suggest the physical or cultural characteristics of a national origin group. Indeed, Jews, like Catholics and Protestants, hail from a variety of different countries. Accordingly, applying the standards [*14] for national origin as set forth in *Espinoza v. Farah Mfg. Co., 414 U.S. 86 (1973)*, we do not find that plaintiff has stated a claim for discrimination based on national origin.

Although plaintiff's complaint fails to state a claim for discrimination based on national origin, we do find that the complaint states a claim based on religious discrimination. Defendants argue that plaintiff has not alleged facts which would constitute a prima facie case under *Flowers v. Crouch-Walker Corp., 552 F.2d 1227, 1282 (7th Cir. 1977)*. Plaintiff is not, however, required to establish a prima facie case in her complaint. "The office of the complaint is to show the type of case brought and to give the defendant fair notice of the alleged wrongs." *McCray v. Standard Oil Co. (Indiana), 76 F.R.D. 490 (N.D. Ill 1977)* (addressing sufficiency of complaint in Title VII action). The prima facie case is designed to allow a plaintiff to get to trial where, as is usually the case, there is no direct proof of discriminatory intent. Indeed, the prima facie case is a proxy for intent. Thus, it is conceivable that plaintiff will never have to establish a prima facie case if she is able to prove discrimination [*15] directly, such as through statements by the decision maker that indicate discrimination was a factor in the decision to fire her.

Here, the complaint satisfies the standards of *Federal Rule of Civil Procedure 8*. Defendants are on notice of the nature of the claim and are aware of the conduct which plaintiff alleges constitutes the violation of her rights. Additionally, while plaintiff's allegations indicate that there may exist some causation problems at this point in the proceedings, plaintiff is entitled to discovery and an attempt to shore up her case before she will be forced to meet the test of a summary judgment motion. It is at that point in time that defendants can raise the challenge of a prima facie case and refer this Court to the *Ortiz v, Ciba-Geigy Corp, 87 F.R.D. 723 (N.D. Ill. 1980)* (discussion of prima facie case in the context of motion for summary judgment).

C. Helen Boehm as an Individual Defendant

Defendants next contend that because plaintiff failed to include Helen Boehm in her EEOC charge, she is barred from adding Boehm as a new defendant in the federal court suit. Plaintiff concedes that Helen Boehm was not a named party in the EEOC charge but contends [*16] that joinder in the federal court suit is nonetheless proper. Specifically, plaintiff argues that in this case the requirements of an exception to the rule precluding joinder are met. The plaintiff is correct.

It is well settled that ordinarily a party not named in an EEOC charge may not be sued under Tile VII. *See Eggleston v. Chicago Journeymen Plumbers, 657 F.2d 890* (7th Cir.), *cert. denied, 455 U.S. 1017 (1981)*. The purpose of this requirement is that the charge "serves to notify the charged party of the alleged violation and also brings the party before the EEOC, making possible the effectuation of the Act's primary goal of securing voluntary compliance with its mandates." *Eggleston, 657 F.2d at 905*. However, in order to prevent frustration of Title VII's important remedial goal through unrelenting adherence to procedural requirements, courts have recognized several exceptions to the rule that a party not named in the EEOC charge may not be sued in federal court.

In *Eggleston v. Chicago Journeymen Plumbers, supra*, the Seventh Circuit set forth the factors a court should consider when determining whether a particular party who has not been named in the EEOC charge [*17] may be joined in the subsequent federal court suit. The court emphasized the two-fold purpose of the general requirement of EEOC charge filing and held that where these two goals were not frustrated by failure to include an individual defendant in plaintiff's charge, this failure to name the defendant should not preclude joining the defendant in the federal court suit. *Eggleston, 657 F.2d at 905*. Specifically, where the unnamed defendant was sufficiently apprised of the charge so that the requirement of notice is satisfied and has been given an adequate opportunity to participate in or initiate a conciliation process to avoid suit, the party may be joined in the federal suit. *Id.*

In *Eggleston*, the Seventh Circuit addressed a situation where the Joint Apprenticeship Committee of a local union had not been named in the EEOC charge, but was added to the subsequently filed federal court suit. The court found that the local union, which was named in both the charge and the suit, and the Joint Apprenticeship Committee shared substantially similar interests and thus, joinder was appropriate. *Eggleston, 657 F.2d at 906*. Specifically, because the members of the board of the [*18] apprenticeship committee were also officers within the local union and in the EEOC charge plaintiff complained of behavior by the apprenticeship committee, the committee had adequate notice of the charges filed and the conduct underlying those charges.

Additionally, the Seventh Circuit found that the apprenticeship committee had an adequate opportunity to participate in conciliation proceedings. *Eggleston, 657 F.2d at 906*. The Court noted that the purpose of conciliation was to allow an employer to resolve a dispute without litigation and its ensuing cost and publicity. *Id. at 907*. However, while conciliation is encouraged it is not an absolute right and thus failure to actually conciliate will not preclude joinder. The Court found that based on the relationship between the apprenticeship committee and the local union, the committee knew of the charge and of its own involvement in the underlying incidents, the committee could have made an attempt to resolve the dispute prior to litigation. *Id. at 907*.

Here, as in *Eggleston*, we find there was adequate notice to defendant Helen Boehm. Helen Boehm is a principal of the company named in the EEOC charge and as such would [*19] be acutely aware of any legal proceedings instituted against the business. More significantly, however, is the fact the Helen Boehm was personally involved in the conduct which gave rise to the charge and indeed, was almost single-handedly responsible for that conduct and the entire incident. Thus, in light of the substantial similarity in the interests of Helen Boehm and Boehm, Inc., as well as her personal participation in the incident, we hold that Helen Boehm knew or should have known of the EEOC charge.

Similarly, based on the relationship of Helen Boehm to the corporation named in the charge and to the incidents giving rise to the charge, this Court finds that Helen Boehm had an adequate opportunity to conciliate. Helen Boehm must have known of the charge as a principal of the company charged. Further, if the company had decided to conciliate, that decision would likely have been made by Ms. Boehm or at least with her approval. Thus, the company's decision not to conciliate was also Ms. Boehm's decision. Helen Boehm cannot

contend that joinder in this case is a surprise or unfair in any way. We note, however, that while Ms. Boehm may be appropriately sued in her capacity as [*20] a principal of Boehm, Inc., it is not appropriate to bring an action against Ms. Boehm personally. *See, e.g., Maxey v. Thompson, 680 F.2d 524 (7th Cir. 1982)* (suit was appropriately brought against director of Illinois Department of Revenue although director was not named in EEOC charge; however, plaintiff may only sue director in official capacity because this is the capacity in which defendant director would have been involved in decision regarding conciliation and would not have been on notice to protect himself in individual capacity).

II. Contract Claims

A. Express Contract

Plaintiff contends that she and defendants entered into an employment contract and defendants' breached that contact when they terminated plaintiff. According to plaintiff, the contract consisted of the letter that Boehm, Inc.'s president, Mr. Cosentino, sent to plaintiff prior to her joining the company, the company's employee handbook and an oral representation made by Mr. Cosentino that plaintiff's probationary period with the company would be extended from the standard 3 months to a full year.

Defendants make several arguments in response. First, defendants argues that plaintiff fails to indicate anywhere [*21] in her complaint how defendants breached the alleged contract. Second, defendants contend that the documents and representation to which plaintiff refers did not constitute a contract for employment. Finally, defendants argue that even if these documents along with the representation constituted a contract, no duration of employment was specified in the alleged contract and therefore, the contract was at will and subject to termination by either party at any time.

Plaintiff's counter-argument is that the alleged contract was breached because defendants fired plaintiff prior to the expiration of one year, the duration of her contract. Plaintiff claims that the duration term can be derived from the promise of an annual salary and bonus and from Mr. Cosentino's representation that plaintiff's probationary period would be extended to one year.

It is well established that an employee has no cause of action for breach of an employment contract where

that employment is on an at will basis. Under Illinois law, "a contract for employment is considered to be at will and terminable by either party at any time for any reason unless a period of duration of employment is specified." *See Medina* [*22] *v. Spotnail, Inc., 591 F. Supp. 190, 197 (N.D. Ill. 1984).* Salary calculated on an annual basis does not constitute a term of duration. *See Medina, 591 F. Supp at 197.* Similarly, the expectation of an annual bonus does not also support the expectation that employment will last for a year. Thus, plaintiff must establish that she had an expectation of employment for a specific duration through either the letter, the employment handbook, or the representation made by Mr. Cosentino.

We assume without deciding that the employee handbook constitutes a portion of the employment contract under which plaintiff asserts liability. Similarly, defendants apparently do not dispute the allegation that Mr. Cosentino represented to plaintiff that her period of probation would comprise one year as opposed to 3 month period specified in the employee handbook. Based on these assumptions and the clear language of both the employee handbook and Mr. Cosentino's letter, we find that plaintiff fails to state a cause of action for breach of express contract.

First, we note that the letter sent to plaintiff by Mr. Cosentino unambiguously indicates that the employment relationship between plaintiff and [*23] the defendant company was at will and thus terminable by either part for any reason. The letter specifically stated that the letter is "not intended as a binding agreement and either party may withdraw at any time." Consequently, this letter does not help plaintiff establish a contractual term of duration.

Plaintiff next points to the representations by Mr. Cosentino that her probationary period was to last for a year instead of the standard 3 months. Assuming the accuracy of this allegation, the extension of the probationary period served to weaken and not strengthen plaintiff's position in the company. The employee handbook clearly states that "[i]f at any time during this [probationary] period it is felt that you are not suited for the job, you may be terminated without prior notice." *See* Plaintiff's Complaint Exhibit D at 3. However, once an employee makes it through the probationary period and achieves a regularized status, he is entitled to the grievance and corrective procedures which provides for a series of warnings prior to termination. Thus, defendants'

extension of the plaintiff's probationary period to one year, far from enhancing her employment rights, actually served [*24] to diminish those rights. It would have been a full year before plaintiff was entitled to a series of warnings prior to termination or could make use of the grievance procedures as outlined in the handbook. During that year, plaintiff was subject to termination at any time without notice.

We find therefore, that plaintiff has failed to establish a contract between the parties that embodied a durational term. Accordingly, plaintiff has failed to establish that she had any right to be employed by defendants for a specific period of time. Plaintiff's claim for breach of express contract is dismissed.

B. Implied Contracts

Plaintiff also claims that defendants breached contracts implied in fact and in law. Plaintiff contends her contract implied in fact had a minimum term of one year. Plaintiff bases this contention on statements by company principals that plaintiff was expected to be in charge of the store's opening, publicity, marketing and sales, and plaintiff's allegation that it is "commonly understood by those in the business" that establishing such a store will take at least 1-2 years.

Plaintiff's argument indicates that she misperceives the appropriate application of evidence of [*25] industry practice. Typically, courts hear evidence of industry practice where the parties disagree as to the meaning of a particular contractual term and that term is ambiguous as well. See Sunstream Jet Exp. Inc. v. Intern'l Air Service Co., Ltd., 734 F.2d 1258 (7th Cir. 1984) (only when terms of contract leave meaning uncertain may court resort to extrinsic evidence). Thus, because the court has no direct evidence of the parties' intent, the preferred evidence of meaning, and cannot discern its meaning from the language of the clause, the court assumes that the industry practice will shed light on what the parties intended.

Here, plaintiff attempts to establish a contract through a proffer of industry custom evidence. The evidence plaintiff relies on does not help plaintiff establish a contract, however. While plaintiff contends that industry custom dictates that it takes one to two years to establish a retail store, plaintiff does not indicate that it is the custom of companies to establish management contracts with durational terms of one to

two years. Indeed, plaintiff has not alleged that it is the industry custom to even offer contracts to management personnel. Thus, [*26] the industry custom on which plaintiff relies is not relevant to whether there was a contract at all, much less a contract with a specific durational term. Furthermore, as discussed previously, plaintiff's reliance on the employee handbook and Mr. Cosentino's representations undermine plaintiff's contention that her employment was to last for a specific period of time.

Finally, plaintiff contends that she can recover damages based on a contract implied in law. She invokes two implied contract doctrines. First, plaintiff argues that she seeks recovery based on promissory estoppel. Specifically, plaintiff contends that she relied on defendants' promise to employ her for at least one year. In reliance on this promise, plaintiff moved her residence from the suburbs into the city and now pays additional rent. Thus, plaintiff insists that she is entitled to be reimbursed for the difference in rent as well as moving expenses. In addition, plaintiff contends that defendants have been unjustly enriched by her work in helping set up the new store and hiring its personnel and is entitled to restitution for the value of that assistance.

The theory of promissory estoppel may be invoked where an [*27] individual reasonably relies on a promise made by another and acts to his detriment in reliance on that promise. See, e.g., Terracom Dev. Group Inc. v. Coleman Cable & Wire Co., 50 Ill. App. 3d 739, 747, 365 N.E.2d 1028, 1034 (1977) (under Illinois law claim of estoppel requires conduct or representation that induces good faith, detrimental reliance). Thus the elements of the doctrine require that the plaintiff establish: (1) a promise; (2) upon which he reasonably relied; (3) to his detriment. Id. To establish her promissory estoppel claim, plaintiff's relies on defendants' alleged promise to employ plaintiff for at least one year. In reliance on this promise, plaintiff moved her residence and incurred unnecessary expense. The promise, made by Mr. Cosentino, was that she would be on probation for a one-year period. However, as we determined previously, this promise of an extended probationary period did not constitute a promise to employ plaintiff for one year. Indeed, the language of the employee handbook and the clear terms as stated in the letter from Mr. Cosentino are at odds with an interpretation of this promise that would provide plaintiff with an employment [*28] contract of a year's duration. Plaintiff has failed to establish that this representation

constituted a promise to employ her for a period of a year. Thus, because plaintiff has failed to establish a promise, plaintiff has not set forth a claim for promissory estoppel.

Similarly, we find that plaintiff's claim under quasi-contract cannot stand. Contracts implied in law, or quasi-contracts are not based on the intentions of the parties; there need be no meeting of the minds. Such obligations are created by law for reasons of justice. *See, A. H. Gruetzmacher & Co. v. Massey-Ferguson, 512 F. Supp. 194 (N.D. Ill. 1981).* The essential elements of a claim for unjust enrichment are a benefit conferred on defendant by plaintiff, acceptance of the benefit by defendant and circumstances which make it inequitable for the defendant to retain the benefit. *See Knapp v. McCoy, 548 F. Supp. 1115 (N.D. Ill. 1982).* Thus, an essential element of this cause of action is establishing unjust enrichment.

Here, plaintiff claims that defendants were unjustly enriched by virtue of the services plaintiff provided in connection with the store opening. Specifically, plaintiff asserts that her assistance [*29] in hiring employees, coordinating with publicists, and arranging merchandise

conferred a benefit upon defendants. However, these services were part of the job for which plaintiff was hired. Plaintiff was presumably paid the salary to which she was entitled pursuant to her agreement with Boehm, Inc. Indeed, plaintiff's pleadings do not indicate that she was not paid her salary for the time she was employed by the company. Thus, assuming, as we must, that plaintiff was paid for her services in compliance with the parties' agreement, there can be no unjust enrichment. Plaintiff has failed to plead that defendants received a benefit to which they were not entitled. Accordingly, plaintiff fails to state a claim under the theory of quasi-contract.

CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part. Plaintiff is entitled to maintain her Title VII claim based on alleged religious discrimination and may maintain that action against Helen Boehm as well as Boehm, Inc. She does not, however, state a claim for discrimination based on national origin. Additionally, plaintiff's breach of express and implied contract claims are insufficiently pled and are hereby dismissed.

[*30] Dated: March 28, 1990

# EXHIBIT O

LEXSEE 2006 U.S. DIST. LEXIS 92169

**IN RE SEARS, ROEBUCK & CO. TOOLS MARKETING AND SALES PRACTICES LITIGATION; CHARLES CHATHAM et al., individually and on behalf of all others similarly situated, Plaintiffs, v. SEARS, ROEBUCK & CO., Defendant.**

**MDL-1703, No. 05 C 4742, No. 05 C 2623**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2006 U.S. Dist. LEXIS 92169*

**December 18, 2006, Decided**

**SUBSEQUENT HISTORY:** Class certification denied by *Chatham v. Sears, Roebuck & Co. (In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.), 2007 U.S. Dist. LEXIS 89349 (N.D. Ill., Dec. 4, 2007)*

**PRIOR HISTORY:** *Santamarina v. Sears, 466 F.3d 570, 2006 U.S. App. LEXIS 25861 (7th Cir. Ill., 2006)*

**COUNSEL:** [*1] For Sears, Roebuck & Co.: Francis A. Citera, John F. Gibbons, Greenberg Traurig, LLP, Chicago, IL.

For Tracy Hutson: Michael T. George, Michael T. George, P.C., St. Louis, MO.

For Jeffrey Greenfield: Aron David Robinson, LEAD ATTORNEY, Law Office of Aron D. Robinson, Chicago, IL; Lance A. Harke, Harke & Clasby LLP, Miami, FL.

For Charles Velez: Barbara J Hart, Goodkind, Labaton, Rudoff & Sucharow, New York, NY.

For Brenda Lifsey, Guillermo Garcia Santamarina, Chris Wilson: Donald R Pepperman, Blecher & Collins, Los Angeles, CA.

For Larry Steven Anderson, Jr.: Lawrence Wiley Schad, Schad, Diamond & Shedden, P.C., Chicago, IL.

For Charles Chatham: Thomas M Sobol, Hagens Berman Sobol Shapiro, Cambridge, MA.

For Tammy Cyr, Heather Pistorius: Jennifer Winter

Sprengel, Miller Faucher and Cafferty, LLP, Chicago, IL.

**JUDGES:** John F. Grady, United States District Judge.

**OPINION BY:** John F. Grady

**OPINION**

*MEMORANDUM OPINION*

Before the court is defendant's motion to dismiss plaintiffs' unjust enrichment claims brought pursuant to Illinois law in Count IV of the Second Amended Consolidated Class Action Complaint filed in *Chatham v. Sears, Roebuck & Co.,* 05 C 2623. [*2] For the reasons explained below, the motion is granted.

*BACKGROUND*

In this putative class action, plaintiffs, who are citizens of several different states, claim that defendant Sears, Roebuck & Company ("Sears") deceptively advertised its proprietary line of "Craftsman" tools as manufactured exclusively in the United States ("Made in USA") when in fact many of the tools are foreign-made or contain significant foreign parts.

Plaintiffs' current complaint is titled "Second Amended Consolidated Class Action Complaint." In our Pretrial Order Number 6 of July 31, 2006, we dismissed Counts I and II of the complaint (which alleged violations of the Illinois Consumer Fraud and Deceptive Business

2006 U.S. Dist. LEXIS 92169, *2

Practices Act and the Illinois Deceptive Trade Practices Act) with prejudice as to all plaintiffs except William Beanblossom and John S. Bertrand. We dismissed Beanblossom and Bertrand's claims without prejudice for failure to allege fraud with particularity. (Since then, Bertrand voluntarily dismissed his claims; thus, Beanblossom is the only remaining Illinois plaintiff.) We also dismissed Count VII, the Magnuson-Moss claim, with prejudice as to all plaintiffs. And as to certain plaintiffs, [*3] we dismissed Count III, which is alleged in the alternative to Counts I and II and in which plaintiffs seek damages and/or injunctive relief under the consumer fraud and deceptive trade practices of all fifty states and the District of Columbia.

Other claims asserted by plaintiffs are Count IV, an unjust enrichment claim, and Count VI, a claim for "equitable relief." [1] As to Count IV, we stated in our previous order: "It appears to the court that the claim most likely to involve an amount of money sufficient to support federal diversity jurisdiction in this case, either on an individual or a class basis, is plaintiffs' claim for unjust enrichment . . . . Defendant believes that there is no basis for the unjust enrichment claim, and a briefing of the issues regarding Count IV will be the next item of business in the litigation." (Pretrial Order Number 6 at 5.) We gave Sears leave to file a motion to dismiss Count IV and set a briefing schedule, instructing the parties to focus on the issues of what state's law applies to the unjust enrichment claims and whether a nexus must exist between the injury sustained by a plaintiff and the amount of recoverable disgorgement of defendant's [*4] profits. The motion to dismiss is now fully briefed.

[1] The complaint does not contain a Count V.

## DISCUSSION

### A. *Choice of Law*

Our first inquiry is the choice-of-law question--which state's (or states') law applies to plaintiffs' unjust enrichment claims. The parties do not agree on this issue. Even though plaintiffs are citizens of several different states, they all contend that Illinois law applies to their claims (evidently because they are seeking certification of a nationwide class). [2] Defendant, on the other hand, contends that the claims are governed by the laws of the various states where each plaintiff saw the advertising and purchased his or her tools. [3]

2    In the alternative, plaintiffs contend that the unjust enrichment laws of their home states or the states where they purchased Craftsman tools apply. (Second Amended Consolidated Class Action Complaint P 125.)

3    We refer to these states for convenience as plaintiffs' "home states," even though at least one of the plaintiffs purchased some of her tools in a state where she does not reside.

Plaintiffs suggest that it is not necessary to engage in a choice-of-law analysis (implying that we should simply apply Illinois law because the unjust enrichment laws of the fifty states are "substantially identical." (Pls.' Opp'n to Def.'s Mot. at 10.) We are unpersuaded. Plaintiffs attach an exhibit that purports to be a fifty-state survey of unjust enrichment. However, it is merely a list of one-sentence statements of the elements of unjust enrichment drawn from a single case from each state. Plaintiffs do not engage in any sort of analysis of the nuances of unjust enrichment law or what must actually be proved in each state. It is clear just from our review of Illinois law that unjust enrichment is a tricky type of claim that can have varying interpretations even by courts within the same state, let alone amongst the fifty states. As discussed in *Clay v. American Tobacco Co., 188 F.R.D. 483, 501 (S.D. Ill. 1999)* (citations omitted): "[V]ariances exist in state common laws of unjust enrichment. The actual definition of 'unjust enrichment' varies from state to state. Some states do not specify the misconduct necessary to proceed, while others require that the misconduct include dishonesty or fraud. Other states only allow a claim of unjust enrichment when no adequate legal remedy exists. Many states, but not all, permit an equitable defense of unclean hands. Those states that permit a defense of unclean hands vary significantly in the requirements necessary to establish the defense."

[*5] The parties do agree that because Illinois is the forum state of this diversity case, we must consult the choice-of-law rules of Illinois to determine which state's substantive law applies. *See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941); GATX Leasing Corp. v. National Union Fire Ins. Co., 64 F.3d 1112, 1114 (7th Cir. 1995).* The

Illinois Supreme Court uses the "most significant relationship" test for choosing the appropriate law in tort cases. [4] The Seventh Circuit has stated:

> The Illinois Supreme Court uses the "most significant relationship" test for choosing the appropriate law in tort cases. In practice, this means that "the law of the place of injury controls unless Illinois has a more significant relationship with the occurrence and with the parties." A court is to determine whether Illinois has the more significant relationship by examining the following factors: (1) the place of the injury, (2) the place where the injury-causing conduct occurred, (3) the domicile of the parties, and (4) the place where the relationship between the parties is centered. The Illinois courts also consider "the interests and public policies [*6] of potentially concerned states . . . as they relate to the transaction in issue."

*Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 503-04 (7th Cir. 1998) (citing *Esser v. McIntyre*, 169 Ill. 2d 292, 661 N.E. 2d 1138, 1141, 214 Ill. Dec. 693 (Ill. 1996) and *Jones v. State Farm Mut. Auto. Ins. Co.*, 289 Ill. App. 3d 903, 682 N.E.2d 238, 249, 224 Ill. Dec. 677 (Ill. App. Ct. 1997)).

4     We recognize that Count IV is an unjust enrichment claim, not a tort claim. It is, however, an unjust enrichment claim that sounds in tort; it is based on alleged wrongful conduct, fraud. Under Illinois law, there are three distinct prongs of unjust enrichment: (1) where a benefit should have been given to plaintiff, but a third party mistakenly gave it to defendant instead; (2) where the defendant procured the benefit through some type of wrongful conduct; and (3) where plaintiff had a better claim to the benefit than the defendant for some other reason. *See HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 545 N.E.2d 672, 679, 137 Ill. Dec. 19 (Ill. 1989). Plaintiffs rely on the second prong. It makes more sense, therefore, to use tort terminology in the choice-of-law analysis.

The parties devote considerable attention to which section of the Restatement (Second) of Conflict of Laws has the greatest application to this case-- *§ 6 or § 221*--which is not worth belaboring. *Comment a to § 221* states explicitly that that section "applies to claims, which are based neither on contract nor on tort, to recover for unjust enrichment." Plaintiffs' claim is an unjust enrichment claim that is based on tort. Thus, *§ 221* does not apply. But in any event, its substance is largely the same as the tort choice-of-law analysis outlined *infra*. For example, one of the elements of the choice-of-law analysis set forth in *§ 221* is "the place where the act conferring the benefit or enrichment was done," which is the same as "the place of the injury." Under both analyses, we examine the domicile of the parties and the place where the relationship between the parties was centered. And as for *§ 6*, which sets forth general principles of choice of law, we analyze the primary choice-of-law factors set forth in Illinois case law in the context of the underlying principles set forth in *§ 6*.

[*7] The place of the injury here (or, in unjust enrichment terms, the place where plaintiffs allegedly "conferred" the benefit on defendant) is the plaintiffs' home states where they purchased Sears's tools. The place where the parties' relationship is centered is the plaintiffs' home states as well. Plaintiffs saw the allegedly misleading advertising in those states, and they purchased the tools (which were located there) in those states as well. Plaintiffs contend that the relationship is centered in Illinois because plaintiffs purchased the tools "by virtue of" Sears's nationwide advertisements, which were conceived of and sent from Illinois. (Pls.' Opp'n to Def.'s Mot. at 10.) This characterization rings hollow. The relationship arose from plaintiffs' purchases of Craftsman tools, which occurred in plaintiffs' home states. [5] *Cf. First Wisconsin Trust Co. v. Schroud*, 916 F.2d 394, 399 (7th Cir. 1990) (where unjust enrichment claim arose from the purchase of property in Indiana, relationship between the parties was centered in Indiana).

5     As mentioned *supra* note 3, the only exception is plaintiff Janett Foster, who is a citizen of Indiana but purchased tools in both Indiana and Kentucky.

[*8] The "domicile of the parties" factor adds little to the mix; it is a wash. The plaintiffs are domiciled in

their respective home states, and Sears, though not an Illinois corporation, is headquartered in Illinois. The last factor--the place where the injury-causing conduct occurred--seems to favor Illinois because that is where Sears is headquartered and where its advertising decision-making takes place.

Thus, for the unjust enrichment claims, the parties and underlying occurrences have more significant contacts with plaintiffs' home states than with Illinois. The most important factors in this case are the place of injury and the center of the parties' relationship, and both of those factors point to the plaintiffs' home states. Plaintiffs argue that, considering underlying choice-of-law policies, Illinois has a interest in "controlling the acts" of its corporate citizens. This may be true, but the plaintiffs' home states also have an interest in regulating business conduct that takes place within their borders. In addition, those states also have an interest in preventing and remedying unjust enrichment that occurs at the expense of their citizens.

After considering all of the [*9] relevant factors and the underlying choice-of-law principles, we conclude that the laws of each of the plaintiffs' home states apply to their unjust enrichment claims. [6] Accordingly, the non-Illinois plaintiffs' unjust enrichment claims in Count IV that are brought "under the unjust enrichment laws of the state of Illinois" are dismissed with prejudice. The unjust enrichment claims that are brought under the unjust enrichment laws of the non-Illinois plaintiffs' home states or the states where they purchased their Craftsman tools survive.

> [6]    Thus, we need not address defendant's argument that application of Illinois law to the unjust enrichment claims would violate the *Commerce Clause of the United States Constitution* and the interests of comity.

## B. *Plaintiff Beanblossom's Unjust Enrichment Claim*

As noted *supra,* William Beanblossom is the only remaining Illinois plaintiff. Therefore, his unjust enrichment claim is the only one to which Illinois law applies. Sears moves to dismiss the claim [*10] pursuant to *Federal Rule of Civil Procedure 12(b)(6).*

Sears maintains that Beanblossom's unjust enrichment claim fails because it is equitable in nature

and plaintiff fails to allege that he has no adequate remedy at law. It is well settled that a party cannot seek equitable relief when he has an adequate legal remedy. *See, e.g., Crowley v. Golden Rule Ins. Co., 166 Ill. App. 3d 199, 519 N.E.2d 1191, 1192, 117 Ill. Dec. 24 (Ill. App. Ct. 1988).* Unjust enrichment, however, is a legal claim. *See Partipilo v. Hallman, 156 Ill. App. 3d 806, 510 N.E.2d 8, 11, 109 Ill. Dec. 387 (Ill. App. Ct. 1987); Burns Philp Food, Inc. v. Cavalea Cont'l Freight, Inc., 135 F.3d 526, 527-28 (7th Cir. 1998).* Its significant equitable aspects [7] have led to numerous confusing statements in case law that it is equitable in nature, but it is essentially an action at law. *Burns, 135 F.3d at 528.*

> [7]    These equitable aspects are not implicated here because plaintiff's claim is based in tort and monetary recovery is sought.

[*11] Sears asserts that Beanblossom "cannot state an unjust enrichment claim grounded in quasi-contract because there is a 'real' contract that governs his relationship with Sears." (Def.'s Mem. in Support of Mot. at 9.) This argument is neither here nor there because plaintiffs' unjust enrichment claims are obviously not grounded in quasi-contract. Rather, as discussed *supra* note 4, they are grounded in tort--fraud, to be specific. [8]

> [8]    Sears also contends in its reply brief that Beanblossom's claim is doomed by *Shaw v. Hyatt International Corp., 461 F.3d 899 (7th Cir. 2006),* in which the Court of Appeals held that the plaintiff's consumer fraud and unjust enrichment claims failed because what plaintiff called "deception" or "consumer fraud"--charging more than the agreed-upon price for a hotel room--was simply Hyatt's failure to fulfill its contractual obligations. *461 F.3d at 901-02.* The Court stated that a "deceptive act or practice" involves more than the mere fact that a defendant promises to do something and then fails to do it. *Id. at 901.*
>
> *Shaw* is distinguishable from the facts of the instant case. Plaintiffs complain that Sears induced them to buy Craftsman tools by misrepresenting the country of origin of the tools, not simply that Sears made a false promise of future conduct.

[*12] Even if Beanblossom's claim is grounded in tort, Sears argues, it must be dismissed because he fails to state an independent claim for consumer fraud,

common-law fraud, duress, or undue influence. Plaintiffs respond that they are not required to state a separate claim in order to state an unjust enrichment claim. Both plaintiffs and defendant cite cases that seem to support each of their positions.

We have engaged in an exhaustive review of the sometimes-bewildering realm of Illinois unjust enrichment law, and our conclusions are as follows. It is often expressed that in order to state an unjust enrichment claim under Illinois law, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc., 131 Ill. 2d 145, 545 N.E.2d 672, 679, 137 Ill. Dec. 19 (Ill. 1989).* The law regarding whether a plaintiff must also show wrongdoing is initially confusing because there are decisions that go both ways. *Compare, e.g., Stathis v. Geldermann, Inc., 295 Ill. App. 3d 844, 692 N.E.2d 798, 811, 229 Ill. Dec. 809 (Ill. App. Ct. 1998)* [*13] ("A cause of action based upon unjust enrichment does not require fault or illegality on the part of defendants.") *with Alliance Acceptance Co. v. Yale Ins. Agency, Inc., 271 Ill. App. 3d 483, 648 N.E.2d 971, 977, 208 Ill. Dec. 49 (Ill. App. Ct. 1995)* (recovery for unjust enrichment permitted only when there is "unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence"). However, as is pointed out in an excellent Illinois Bar Journal article concerning the Illinois law of unjust enrichment, there is a way to reconcile the case law. *See* Ronald M. Lepinskas, *Unjust Enrichment Claims in Illinois: Applying a Venerable Doctrine to Modern Disputes,* 91 Ill. B.J. 514, 517 (2003). We have explained *supra* note 4 that there are three prongs of unjust enrichment: a benefit mistakenly conferred, a benefit procured through wrongful conduct, and a benefit to which plaintiff has a better claim than the defendant for some other reason. Courts have not required proof of wrongful conduct where the factual allegations fall within the "mistakenly conferred" or "better claim" prongs, but they have required such proof of when the allegations fall within the "wrongful conduct" [*14] prong. So, while it is correct to say that unjust enrichment is its own claim that does not necessarily require the existence of an underlying claim, or a particular underlying claim, it is also correct to say that when a plaintiff brings an unjust enrichment claim that is based on wrongful conduct, plaintiff must plead and prove that conduct. *See Alliance, 648 N.E.2d at 977;*

*Bober v. Glaxo Wellcome PLC, 246 F.3d 934, 943 (7th Cir. 2001).*

Here, plaintiffs allege in Count IV that "Sears has been unjustly enriched by virtue of its false, misleading advertising of Craftsman products." (Second Amended Consolidated Class Action Complaint P 128.) The "unlawful or improper conduct as defined by law," *Alliance, 648 N.E.2d at 977,* is fraudulent misrepresentation. Fraudulent conduct consists of a knowing misrepresentation made with the intent to deceive the plaintiff. *See People v. L & M Liquors, Inc., 37 Ill. App. 3d 117, 345 N.E.2d 817, 820 (Ill. App. Ct. 1976).*

*Federal Rule of Civil Procedure 9(b)* provides that in "all averments of fraud . . . the circumstances constituting fraud . . . shall be stated [*15] with particularity." In our Order of July 31, 2006, we dismissed Beanblossom's statutory fraud claims in the Second Amended Consolidated Class Action Complaint for failure to allege fraud with particularity because Beanblossom fails to allege where he saw the advertisements on which he based his belief that Craftsman tools were made in the United States. (He alleges broadly that he "heard advertisements for Craftsman products on the radio and saw advertisements for Craftsman products in magazines, newspapers, and on displays and banners in a Sears store," Second Amended Consolidated Class Action Complaint P 8.) We indicated that we would entertain a motion to file a third amended complaint, but Beanblossom has never presented such a motion. Therefore, there is no allegation of the requisite fraudulent conduct, and the unjust enrichment claim must also be dismissed. Like the dismissal of his statutory fraud claims, the dismissal of Beanblossom's unjust enrichment claim will be without prejudice.

### C. Disgorgement of Profits

We asked the parties to brief the issue of whether, under Illinois law, a nexus must exist between the injury sustained by a plaintiff and the amount [*16] of recoverable disgorgement of defendant's profits. In view of our dismissal of all of the unjust enrichment claims brought pursuant to Illinois law, we need not address this issue at this juncture.

### CONCLUSION

Defendant's motion to dismiss plaintiffs' unjust

2006 U.S. Dist. LEXIS 92169, *16

enrichment claims brought pursuant to Illinois law in Count IV of the Second Amended Consolidated Class Action Complaint filed in *Chatham v. Sears, Roebuck & Co.,* 05 C 2623, is granted. The non-Illinois plaintiffs' unjust enrichment claims in Count IV that are brought "under the unjust enrichment laws of the state of Illinois" are dismissed with prejudice. Plaintiff William Beanblossom's unjust enrichment claim is dismissed

without prejudice.

A status hearing is set for January 10, 2007, at 11:30 a.m. to discuss the next steps in this litigation.

DATE: December 18, 2006

John F. Grady, United States District Judge