**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| PAMELA STELLA, individually and on behalf of all others similarly situated, | : | |
| | : | |
| Plaintiff, | : | |
| | : | ***07 CV 6509*** |
| -against- | : | |
| | | **HON. ELAINE E. BUCKLO** |
| LVMH PERFUMES AND COSMETICS USA INC., a New York Corporation, | | **MAGISTRATE JUDGE ARLANDER KEYS** |
| | : | |
| Defendant. | : | **JURY TRIAL DEMANDED** |

**PLAINTIFF'S OPPOSITION TO DEFENDANT**
**<u>LVMH PERFUMES AND COSMETICS, INC.'S MOTION TO DISMISS</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION................................................................................1

STATEMENT OF FACTS ............................................................... 1

      Defendant's Numerous Mischaracterizations and Misstatements of Fact ..............3

ARGUMENT........................................................................ 5

I.      DEFENDANT'S FAILED RELIANCE ON JUDICIAL NOTICE.................. 5

II.     PLAINTIFF HAS STATED A CLAIM FOR RELIEF UNDER
       THE ILLINOIS CONSUMER FRAUD ACT.................................. 8

      A.     Plaintiff has Alleged Defendant's Deceptive Conduct........................ 9

      B.     Defendant Intended that Consumers Rely on Its Failure to
          Disclose that Its Lipstick Products Contain Unreasonably
          High Levels of Lead............................................... 12

      C.     Plaintiff has Clearly Articulated the Injuries She has Suffered.............. 13

      D.     Plaintiff Has Alleged that Defendant's Conduct Deceived Her.............. 14

III.    PLAINTIFF HAS SUFFICIENTLY ALLEGED A CLAIM FOR
       THE COST OF MEDICAL MONITORING.................................. 16

IV.    PLAINTIFF HAS SUFFICIENTLY STATED A CLAIM FOR UNJUST
       ENRICHMENT...................................................... 18

V.     PLAINTIFF HAS PLAINLY ARTICULATED COGNIZABLE INJURIES IN
       SUPPORT OF HER CLAIMS FOR BREACH OF IMPLIED WARRANTIES...... 20

      A.     Defendant's Lipstick Products Are Not Merchantable.................... 20

      B.     Damages........................................................ 20

      C.     Plaintiff Satisfied the Notice Requirement for His Breach of Implied
          Warranty Claims.................................................21

      D.     Privity.......................................................... 23

      E.     The Court has jurisdiction over the Magnuson Moss Warranty Act......... 25

VI.    PLAINTIFF'S CLAIMS FOR STRICT LIABILITY AND NEGLIGENCE PER SE
       HAVE BEEN ADEQUATELY PLED....................................... 26

VII.    INJUNCTIVE RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. 28

VIII.   SHOULD THE COURT DISMISS ANY OF PLAINTIFF'S CLAIMS,
        PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND. . . . . . . . . . . . . . . . . . . 28

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

## TABLE OF AUTHORITIES

<u>Cases</u>

*Airborne Beepers & Video, Inc. v. AT&T Mobility LLC,*
499 F.3d 663 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Allgood v. General Motors Corp.,*
2005 WL 2218371 (S. D. Ind. Sept. 12, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*Bell Atlantic Corp. v. Twombly,*
127 S. Ct. 1955 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Board of Educ. of City of Chicago v. A,C and S, Inc.,*
131 Ill.2d 428, 546 N.E.2d 580 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22, 23

*Brothers v. Hewlett-Packard Co.*, No. 06-2254,
2007 WL 485979 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

*Burns v. Jaquays Mining Corp.,*
752 P.2d 28 (Ariz. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Carey v. Kerr-McGee Chemical Corp.,*
999 F. Supp. 1109, 1118 (N.D. Ill. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*Caterpillar, Inc. v. Usinor Industeel,*
393 F. Supp.2d 659 (N.D. Ill. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*Celex Group, Inc. v. Executive Gallery, Inc.*,
877 F. Supp. 1114 (N.D. Ill. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Chavis v. Fidelity Warranty Services., Inc.,*
415 F.Supp.2d 620 (D.S.C. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

*Collins Co., Ltd. v. Carboline Co.*,
125 Ill. 2d 498, 532 N.E.2d 834 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

*Connick v. Suzuki Motor Corp.*,
174 Ill. 2d 482, 675 N.E.2d 584 (1996)................................................................10, 15, 22

*DiPirro v. J.C. Penny Co.*, No. 407150, *mem. op.* (Stmt. Of Decl.)
(Super. Ct. Cal. Feb. 9, 2005) ..............................................................................12

*Erickson v. Pardus*,
127 S. Ct. 2197 (2007)..........................................................................................5

*General Elec. Capital Corp. v. Lease Resolution Corp.*,
128 F.3d 1074 (7th Cir. 1997) ..............................................................................6

*Gershengorin v. Vienna Beef, Ltd.*, No. 06 C 6820,
2007 WL 2840476 (N.D. Ill. 2007) ..............................................................22, 23, 24

*Golf v. Henderson*,
376 Ill. App. 3d 271, 876 N.E.2d 105 (1st Dist. 2007)........................................26, 27

*Hansen v. Mountain Fuel Supply Co.*,
858 P.2d 970 (Utah 1993) ....................................................................................16

*Hennessy v. Penril Datacomm Networks, Inc.*,
69 F.3d 1344 (7th Cir. 1995) ................................................................................6

*HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*,
131 Ill. 2d 145, 545 N.E.2d 672............................................................................18

*In re McDonald's French Fries Litig.*,
503 F. Supp.2d 953 (N.D. Ill. 2007) ..............................................................20, 21

*In re Paoli R.R. Yard PCB Litig.*,
916 F.2d 829 (3d Cir.1990)..............................................................................16, 17

*Jensen v. Bayer AG*,
371 Ill. App 3d 682, 862 N.E.2d 1091 (1st Dist. 2007)....................................9, 17, 23

*Kanter v. Deitelbaum*,
271 Ill. App. 3d 750, 648 N.E.2d 1137 (1st Dist. 1995)....................................26, 27

*Kutzler v. Thor Indust., Inc.*,
No. 03-C-2389, 2003 WL 21654260 (N.D. Ill. 2003) ................................................24

*Lantz v. American Honda Motor Co.*,
2007 U.S. Dist. LEXIS 34948 (N.D. Ill. 2007) ......................................................15

*Lewis v. Lead Indus. Assoc., Inc.,*
342 Ill. App. 3d 95, 793 N.E.2d 869 (1st Dist. 2003) ...........................................16, 17

*Malawy v. Richard Mfg. Co.,*
150 Ill. App. 3d 549, 501 N.E.2d 376 (5th Dist. 1986) ................................................21

*Maldonado v. Creative Woodworking Concepts, Inc.,*
296 Ill. App. 3d 935, 694 N.E.2d 1021 (3d Dist. 1998) .........................................21, 22

*McGhee v. Cont'l Tire N. Am., Inc.,*
No. 06-6234, 2007 U.S. Dist. LEXIS 62869 (D.N. J. Aug. 27, 2007) ........................25

*Miller v. William Chevrolet/Geo, Inc.,*
326 Ill. App. 3d 642, 762 N.E.2d 1 (1st Dist. 2001).....................................................10

*Moorman Mfg. Co., v. Nat'l Tank Co.,*
91 Ill. 2d 69, 435 N.E.2d 443 (Ill. 1982) ..............................................................26, 27

*Muehlbauer v. General Motors Corp.,*
431 F. Supp. 2d 847 (N.D. Ill. 2006)...........................................................................15

*Muniz v. Rexnord Corp.,*
2006 WL 1519571 (N.D. Ill. 2006)...............................................................................16

*Oliveira v. Amoco Oil Co.,*
201 Ill. 2d 134, 776 N.E.2d 151 (2002) .......................................................................15

*Patargias v. Coca-Cola Bottling Co.,*
332 Ill. App. 117, 74 N.E.2d 162 (1st Dist. 1947) .......................................................24

*Payne v. Fujifilm U.S. A., Inc. d/b/a Fuji Photo Film USA, Inc.,*
2007 WL 4591281 (D.N.J. 2007) .................................................................................25

*McGee v. Cont'l Tire N. Am., Inc.,*
No. 06-6234, 2007 U.S. Dist. LEXIS 62869 (D.N. J. Aug. 27, 2007) ...........................

*Potter v. Firestone Tire & Rubber Co.,*
863 P.2d 795 (Cal. 1993) ........................................................................................16, 17

*Reed v. City of Chicago,*
263 F. Supp. 2d 1123 (N.D. Ill. 2003) .........................................................................24

*Schiffner v. Motorola, Inc.,*
697 Ill. App. 3d 1099, 697 N.E.2d 868 (1st Dist. 1998) ..............................................14

*St. John's United Church of Christ v. City of Chicago,*
502 F.3d 616 (7th Cir. 2007) ........................................................5

*Suvada v. White Motor Co.,*
32 Ill. 2d 612, 210 N.E.2d 182 (1965) ......................................24

*Thompson v. Illinois Dep't of Prof'l Regulation,*
300 F.3d 750 (7th Cir. 2002) ..................................................26, 28

*Verb v. Motorola, Inc.,*
284 Ill. App. 3d 460, 672 N.E.2d 1287 (1st Dist. 1996)...............14

*Whitaker v. Lian Feng Machine Co.,*
156 Ill. App. 3d 316, 509 N.E.2d 591 (1st Dist. 1987)............24, 25

*White v. Daimler-Chrysler Corp.,*
368 Ill App. 3d 278, 865 N.E.2d 542 (1st Dist. 2006)............11, 12

*Zekman v. Direct Am. Marketers, Inc.,*
182 Ill. 2d 359, 695 N.E.2d 853 (1998) ...........................8, 9, 15

## Statutes

21 U.S.C. §§ 331(a), 361 ........................................................28

810 ILCS 5/2-314(c) ..............................................................20

810 ILCS 5/2-607 (3)(A) .....................................................21, 22

815 ILCS 505/2....................................................................8

Fed. R. Civ. P. 12 ..............................................................5, 28

Fed. R. Civ. P. 56(c) ..........................................................5, 8

Section 1332(d)(2) of the Class Action Fairness Act ("CAFA") ............25, 26

Section 2310(d)(3) of the Magnuson-Moss Warranty Act ...................25, 26

Proposition 65, Safe Drinking Water and Toxic Enforcement Act of 1986, West's Ann. Cal.

Health & Safety Code § 25249.5, et seq. ................................4, 7

## INTRODUCTION

Defendant LVMH Perfumes and Cosmetics, Inc.'s ("Defendant" or "LVMH") argument in support of its Motion to Dismiss can be summed up as follows: "lead is present in a vast number of consumer products," so it is immaterial that lead is also present in Defendant's lipstick products, even though it is a known hazardous substance and Defendant fails to advise consumers that it is in its products. Memorandum in Support of Defendant LVMH Perfumes and Cosmetics, Inc.'s Motion to Dismiss ("Def. Memo.") at 5. That is a cavalier attitude, by any measure. Defendant supports its motion by relying on the refutable substance of countless documents that are outside the pleadings and cannot properly be considered on a motion to dismiss, along with a gross misinterpretation of the well-plead allegations contained in Plaintiff's Class Action Complaint. For the reasons that follow, Defendant's motion must be denied in its entirety.

## STATEMENT OF FACTS

Plaintiff filed her Class Action Complaint on November 16, 2007. *See* Plaintiff's Class Action Complaint ("Complaint"), attached hereto as Exhibit 1. Plaintiff seeks to represent a Class comprised of:

> [A]ll persons who purchased lipstick that was manufactured, marketed, and/or distributed by LVMH Perfumes and Cosmetics USA Inc. ("LVMH"), from the offering of sale of the concerned lipstick products to the present (the "Relevant Period"), containing lead (the "concerned lipstick products").

Compl. at ¶ 2. Plaintiff purchased and used Christian Dior "Addict Positive Red", which is manufactured, marketed, and/or distributed by Defendant. Compl. at ¶ 11. Plaintiff succinctly yet thoroughly lays out the allegations in support of her claims.

On October 11, 2007, a study revealed that Defendant's concerned lipstick products contain dangerous levels of lead. Compl. at ¶ 27. The U.S. Food and Drug Administration

1

("FDA") has established a limit of 0.1 parts per million ("ppm") as the maximum allowable amount of lead in candy, a limit established to protect individuals from directly ingesting lead. The results of the study reveal that Defendant's concerned lipstick products contain levels of lead in the amount of 0.21 ppm—more than twice the FDA's limit on lead in candy. Compl. at ¶¶ 28, 30. The concerned lipstick products contain lead at levels that are potentially dangerous for human ingestion. Compl. at ¶¶ 2, 27–30. Lipsticks products are ingested by way of licking ones lips, while eating, etc. Compl. at ¶ 29.

None of Defendant's lipstick products revealed, through advertising, labeling, or packaging, that they contained any lead at all, let alone the levels of lead contained therein, which are unreasonably and dangerously high, and are harmful. Compl. at ¶¶ 2–6. Consequently, said advertising, labeling, and packaging was misleading, inaccurate, and deceptive, as Defendant omitted the material fact that harmful levels of lead were present in the concerned lipstick products. Compl. at ¶ 7, 11, 15, 47, 50, 51. In light of said omissions, Plaintiff and other members of the Class purchased the concerned lipstick products under the implied representation that said products were safe for ordinary use. Compl. at ¶¶ 13–15. Despite Defendant's representations to the contrary, however, the concerned lipstick products are not fit for their ordinary and intended use—application to one's lips—and, as a result, Plaintiff and other members of the putative Class have been improperly exposed to a known, hazardous substance. Compl. at ¶ 3–7, 13–15, 34.

Plaintiff would not have purchased or used the concerned lipstick had she been apprised of the lead content of said lipstick. Compl. at ¶ 11. Thus, Plaintiff seeks recovery of the purchase price of the concerned lipstick, including the corresponding profit from said sale, which has been unjustly retained by Defendant. Compl. at ¶¶ 8, 53, 61, 69, 74, 78, 85. Moreover, due

to their unknowing exposure to lead, Plaintiff and other members of the Class are at an increased risk of suffering the effects of lead poisoning, and may have already been adversely affected. Compl. at ¶¶ 7, 34.  Thus, Plaintiff also seeks to recover the cost of medical monitoring, which has been necessitated by her exposure to the dangerously high levels of lead contained in Defendant's concerned lipstick products.  Compl. at ¶¶ 8, 53, 61, 69, 74, 78, 85.

**<u>Defendant's Numerous Mischaracterizations and Misstatements of Fact.</u>**

Unable to defeat Plaintiff's claims, Defendant makes countless mischaracterizations and misstatements of Plaintiff's Complaint and the allegations as contained therein.  Without waiving her argument that none of the documents that have been attached to Defendant's memorandum can be properly considered here, as identified *infra*, Section I, Defendant's motion must still be denied.

For example, Defendant makes the bold statement that the FDA has been monitoring the levels of lead in lipstick since the 1990's.  Def. Memo. at 4.  Defendant's assertion is unequivocally false, however, as the 1990's was the *last* time the FDA tested for the presence of lead in lipstick.  *See* FDA Center for Food Safety and Applied Nutrition Press Release: "Lipstick and Lead:  Questions and Answers," Dec. 27, 2007, at Exhibit B of Defendant's Memorandum ("FDA's *previous* analysis of such claims . . . .") (emphasis added).  Hence, it has been, at the very least, nearly ten years since the FDA has conducted any scientific inquiry into the presence of lead in lipstick, including the concerned lipstick product here.  Thus, the FDA is not *currently* "[f]ully aware of the presence of lead in some lipstick," as Defendant erroneously asserts.  Def. Memo. at 4.

Defendant also makes several unsupported conclusions in its citation of the relevant facts here, and boldly asserts that "apart from limiting the lead content of color additives used in

lipsticks, the FDA has found it unnecessary to impose more stringent controls on lead in lipstick," because the levels of lead in the lipstick are "infinitesimally small and not per se dangerous." Def. Memo. at 5. Again, Defendant overreaches, as this conclusory statement goes unsupported and merely represents Defendant's own skewed rationale as to why the FDA has failed to adequately regulate the lead content levels in lipstick.

Defendant also pays great heed to Proposition 65, Safe Drinking Water and Toxic Enforcement Act of 1986, West's Ann. Cal. Health & Safety Code § 25249.5, et seq., and its admittedly stringent disclosure requirements. Plaintiff, however, has not brought a claim under Proposition 65. Rather, Plaintiff has brought well-pled claims for violations of the Illinois Consumer Fraud Act, unjust enrichment, breach of implied warranty, negligence per se, and strict liability. The provisions, standards, and requirements of Proposition 65 are *entirely* irrelevant for purposes of addressing the sufficiency of Plaintiff's Complaint, and have no place being considered in conjunction with Defendant's motion to dismiss.

Finally, Defendant makes the confusing allegation that "plaintiff goes on to contend that there is *no* safe level of lead in lipstick at all, arguing that even the slightest trace of lead in lipstick renders it *ipso facto* dangerous and defective." Def. Memo. at 2; *see also* Def. Memo at 12 ("plaintiff contends that any amount of lead renders a product unsafe"). Defendant fails to cite the portion of Plaintiff's Complaint that makes this contention. This is unsurprising, though, as no portion of Plaintiff's Complaint makes this outrageous allegation. What Plaintiff does contend, however, is that the levels of lead in Defendant's lipstick products are unreasonably and dangerously high, a fact which forms the underlying foundation of her Complaint. It is that truthful proposition that Defendant seeks to avoid by its mischaracterization and sophistry.

## ARGUMENT

"[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007) (analyzing the holdings of *Bell Atlantic v. Twombly*, 127 S. Ct. 1965 (2007) and *Erickson v. Pardus*, 127 S. Ct. 2197 (2007)).  The allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1935 (2007).  Although this does "not require heightened fact pleading of specifics," it does require the complaint to contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974; *see also St. John's United Church of Christ v. City of Chicago,* 502 F.3d 616 (7th Cir. 2007).

## I.      DEFENDANT'S FAILED RELIANCE ON JUDICIAL NOTICE.

Defendant begins its memorandum in support of its motion to dismiss with references and citations to the disputable substance of several documents and reports it attaches to its memorandum, matters that are entirely outside the pleadings in this matter.  Unfortunately, Defendant's attempt to do so effectively converts its motion to dismiss into a motion for summary judgment, should the Court elect to consider said documents.  *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").  The documents attached by Defendant that qualify as matters "outside the pleadings" include:

> (1)      FDA Center for Food Safety and Applied Nutrition Press Release:
>
> "Lipstick and Lead:  Questions and Answers," Dec. 27, 2007;

(2)    FDA Center for Food Safety and Applied Nutrition Guidance Document,

"Lead in Candy Likely to be Consumed Frequently by Small Children:

Recommended Maximum Level and Enforcement Policy," Nov. 2006;

(3)    Health Consultation Exposure Investigation, U.S. Dep't of Health &

Human Svcs., June 9, 2005;

(4)    CDOJ Opinion Letter (Mar. 3, 2008); and

(5)    CDOJ Opinion Letter (Mar. 12, 2008).

Consequently, should the Court choose to accept and allow the above-listed documents to be

considered here, then the Court must necessarily convert Defendant's motion to dismiss into a

motion for summary judgment.

Defendant's attempt to rely on judicial notice is based upon a flawed interpretation of

what matters a court can properly take judicial notice of.  "Judicial notice is premised on the

concept that certain facts or propositions exist which a court may accept as true without requiring

additional proof from the opposing parties.  It is an adjudicative device that substitutes the

acceptance of a universal truth for the conventional method of introducing evidence." *General

Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 n.6 (7th Cir. 1997).

Additionally, "[i]n order for a fact to be judicially noticed, indisputability is a prerequisite."

*Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354 (7th Cir. 1995).  While a court

may take judicial notice that an administrative body made findings, the doctrine does not allow

the court to conclude that those findings are actually indisputable facts.

For instance, the "Lipstick and Lead:  Questions and Answers," attached at Defendant's

Exhibit B, is nothing more than a press release.  It contains no actual, indisputable facts relative

to Plaintiff's Complaint; rather, it merely states that the FDA plans "to conduct independent

testing" of lipsticks.  The "Lead in Candy Likely to be Consumed Frequently by Small Children: Recommended Maximum Level and Enforcement Policy" report, attached at Defendant's Exhibit C, fares no better.  Despite being nothing more than "Guidance for Industry", as its title plainly states, it further notes that the document "does not create or confer any rights for or on any person and *does not operate to bind the FDA or the public*."  (emphasis added).  Notably, the document specifically cautions that it "should be viewed only as recommendations."  Again, it contains no undisputed facts, and cannot properly receive judicial notice.  The Health Consultation Exposure Investigation, attached at Defendant's Exhibit E, echoes similar sentiments to those in the documents above.  Again, it explicitly states that "[t]his import alert . . . does not establish any requirements, or create any rights for, or obligations on, FDA or regulated entities"—which includes Defendant here.

The CDOJ Opinion Letters dated March 3, 2008 and March 12, 2008, attached at Defendant's Exhibits G and H, suffer the same fate.  Aside from the fact that Defendant fails to reveal how it obtained these letters, they are nothing more than the unofficial, disputable opinions of a branch of a state government on the legislated Proposition 65, which is not being sued under here.  This is clearly evidenced by the letters' opining nature, particularly with the use of phrases such as "we do not think" and "we think."  More importantly, though, is the fact that the letters are based on claims potentially being brought under Proposition 65, which, as noted above, has its own separate pleading requirements and standards of proof.  While Defendant claims that the CDOJ letters are documents of which the Court may properly take judicial notice, it fails to give any support for this erroneous conclusion, despite its burden to do so, and the letters thus cannot be properly considered in conjunction with Defendant's motion to dismiss.

As a result, the above-referenced documents should not be considered by the Court when deciding Defendant's motion to dismiss, and should thus be stricken. Alternatively, should the Court deem it appropriate to accept and consider said documents, then Defendant's motion must necessarily be converted into a motion for summary judgment.[1] In the context of summary judgment then, summary judgment would only be proper where "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Given that Defendant takes issue with nearly *every* material fact relied upon by Plaintiff, even under this standard, summary judgment and, thus, dismissal, would still be clearly inappropriate.

## II.     PLAINTIFF HAS STATED A CLAIM FOR RELIEF UNDER THE ILLINOIS CONSUMER FRAUD ACT.

As Section 2 of the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/2, states, in pertinent part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation **or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact,** or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

(emphasis added). To state a claim under the ICFA, a plaintiff need only allege: (1) a deceptive act or practice; (2) intent by the defendant that the plaintiff rely on the deception; (3) the deception occurred in the course of conduct involving trade or commerce; and (4) the plaintiff's injury was proximately caused by the fraud complained of. *Zekman v. Direct Am. Marketers,*

---

[1] Nevertheless, a motion for summary judgment would be premature at this junction, as no discovery has taken place yet.

*Inc.*, 182 Ill. 2d 359, 373, 695 N.E.2d 853, 860–61 (1998).  As alleged in her Complaint, Plaintiff has sufficiently stated a claim for relief under the ICFA.

      **A.**      **Plaintiff has Alleged Defendant's Deceptive Conduct.**

     Plaintiff has sufficiently alleged that Defendant knew or should have known that the concerned lipstick products contained lead, yet failed to disclose this fact to Plaintiff and other members of the Plaintiff Class.  Compl. at ¶ 48–49.  Such conduct is clearly and plainly deceptive.

     The issue of whether Defendant actually knew of the presence of lead in its lipstick products is a matter than can be dealt with through discovery.  Defendant's authority on this point, *Jensen v. Bayer AG*, is a case that was decided on a motion for summary judgment, *not* a motion to dismiss.  371 Ill. App 3d 682, 689, 862 N.E.2d 1091, 1098 (1st Dist. 2007).  Indeed, as the *Jensen* court specifically noted, "[o]n a *motion for summary judgment*, plaintiff must produce *some* evidence in favor of its claim."  *Id.* (emphasis added).  Defendant's internal documents will undoubtedly shed more light on this subject.

     Nevertheless, at this time, Plaintiff has not been given the opportunity to present any evidence regarding Defendant's knowledge of the presence of lead in its lipstick products, and on a motion to dismiss, the sufficiency of the evidence is not at issue.  Rather, the issue is whether on its face, Plaintiff's Complaint states a valid claim—it does.  Furthermore, there is a presumption that a corporation knows of the substances in the products it manufactures, and Defendant cannot now feign ignorance of this basic principle.

     Defendant further contends that it has done nothing to affirmatively or impliedly assure customers that its lipstick products are safe for use.  Def. Memo. at 10.  However, Defendant has indeed done just that—it sold the concerned lipstick products without disclosing the fact that said

lipsticks contained unreasonably high levels of lead.  In fact, Defendant makes Plaintiff's

argument for her:  "plaintiff alleges that nothing was said about lead at all."  Def. Memo. at 10.

Given the dangers associated with the ingestion of lead, the inclusion of said lead in the

concerned lipstick products is a material fact for consumers purchasing Defendant's lipstick

products.  The omission of this fact resulted in Defendant impliedly representing that its lipstick

products were safe for use, when in fact, they contain unreasonably high levels of lead and are

*not* safe for their ordinary use.  Defendant's lipstick products contain unreasonably high levels of

lead, which is a material fact that Defendant failed to disclose to consumers.  Defendant's

conduct is clearly deceptive under the ICFA.

It has been firmly established that "it is unnecessary to plead a common law duty to

disclose in order to state a valid claim of consumer fraud based on an omission or concealment."

*Connick v. Suzuki Motor Corp.*, 174 Ill. 2d 482, 505, 675 N.E.2d 584, 595 (1996).  On the other

hand, a seller of a consumer product *does* have a duty not to omit material facts from consumers

purchasing said products.  *See Miller v. William Chevrolet/Geo, Inc.*, 326 Ill. App. 3d 642, 658,

762 N.E.2d 1, 14 (1st Dist. 2001).  "A material fact exists where a buyer would have acted

differently knowing the information, or if it concerned the type of information upon which a

buyer would be expected to rely in making a decision whether to purchase."  *Connick*, 174 Ill. 2d

at 505.  Moreover, it is unnecessary to plead a common law duty to disclose in order to state a

valid claim of consumer fraud based on an omission or concealment.  *Id.* (*citing Celex Group,*

*Inc. v. Executive Gallery, Inc.*, 877 F. Supp. 1114, 1129 (N.D. Ill. 1995)).

Both aspects of materiality are present here, as Plaintiff has plainly alleged that she

would not have purchased the concerned lipstick product had she known of its excessive lead-

containing nature, and the inclusion of lead in a product that is ingested or absorbed poses severe

risks to one's health.  Compl. at ¶¶ 4, 11.  Thus, Defendant *was* under an obligation to disclose the presence of lead in its lipstick products to consumers, as such a fact is clearly material to the average consumer in deciding whether to purchase Defendant's lipstick products, particularly where one's health is at risk.

Defendant's skewed interpretation of its duty to disclose the lead content of its lipstick products is off point.  Defendant incorrectly asserts that it only had to have known that the lead in its lipstick products rendered them defective or dangerous before it was obligated to disclose said lead content to consumers.  Def. Memo. at 11.  Contrary to Defendant's outrageous position that the inclusion of lead in its lipstick products—which are regularly applied to one's lips and subsequently ingested—is not a material fact to consumers, such a matter *is* indeed material, and the consumer needs to have the opportunity to weigh this fact before purchasing Defendant's lipstick products.  Defendant's unlawful omission has deprived Plaintiff and other consumers of weighing this material fact—that its lipstick products contain unreasonably high levels of lead—and said conduct violates the ICFA.  The real "widely held belief", as Defendant so aptly frames the matter, is that the ingestion of lead is dangerous, and is a reality that Defendant fails to adequately address in its memorandum.

Defendant also relies on *White v. Daimler-Chrysler Corp.*, 368 Ill App. 3d 278, 865 N.E.2d 542 (1st Dist. 2006).  Def. Memo. at 11 n.10.  *White* is readily distinguishable, however. There, the plaintiff failed to allege that the defendant intended for him to rely on its concealment or omission, and the plaintiff failed to alleged that "he would have acted differently if he had possessed the [omitted] information before the sale, nor does he say how or why consumers would be expected to rely on that information before making a purchase."  *White*, 368 Ill App. 3d

at 286, 865 N.E.2d at 549.  On the other hand, here, Plaintiff has properly alleged all of these matters.

Finally, Defendant cites to *DiPirro v. J.C. Penny Co.*, No. 407150, *mem. op.* (Stmt. Of Decl.) (Super. Ct. Cal. Feb. 9, 2005).  But despite the fact that *DiPirro* was decided after a 72-day *full trial on the merits*, and the fact that the plaintiff appealed the trial court's decision and the defendant settled the case while the appeal was pending, the plaintiff's claims there were "that there is no proven safe level of lead," and the plaintiff failed to introduce *any* evidence to support the concept that cosmetics containing lead could harm consumers.  *Id.* at 1, 122.  Here, Plaintiff has alleged that the levels of lead specifically contained in Defendant's lipstick products are unsafe, and once given the opportunity, is ready and able to submit evidence supporting the conclusion that said levels are indeed harmful to consumers.

## B.    Defendant Intended that Consumers Rely on Its Failure to Disclose that Its Lipstick Products Contain Unreasonably High Levels of Lead.

Plaintiff devotes a substantial portion of her Complaint to plainly articulating the dangers associated with the ingestion of lead.  *See* Compl. at ¶¶ 18–26.  In the context of these allegations, Defendant's suggestion that "[P]laintiff has failed to allege any facts demonstrating that LVMH had reason to believe that consumers would consider trace amounts of lead in lipstick to be material," cannot be taken seriously.  Def. Memo. at 13.  Plaintiff has clearly stated that had she known of the presence of lead in Defendant's lipstick products, she would not have purchased said lipstick.  Compl. at ¶ 8.  Additionally, given that the presence of lead in a product that is readily ingested is a material fact to consumers purchasing lipstick products, as articulated above, Defendant had every reason to know that consumers expected its lipstick products to be free of high levels of harmful ingredients such as lead.  Moreover, Defendant intended for consumers to rely on the implied representation that the concerned lipstick products are safe for

their ordinary and intended use, which thereby allowed it to increase its sales and, thus, its profits.  Compl. at ¶¶ 49–50.

### C.    Plaintiff has Clearly Articulated the Injuries She has Suffered.

Plaintiff has indeed suffered actual, present injuries, and she has articulated as much in her Complaint.  For example, Plaintiff alleges that, due to the presence of unreasonably high levels of lead, the concerned lipstick products are not fit for their ordinary and intended use, and thus, she did not receive the benefit of her bargain with Defendant.  Compl. at ¶¶ 2, 6.  As a result, Plaintiff has suffered damages in the amount of money spent on the concerned lipstick product, which is of no use to her, in addition to the unjustly obtained profits retained by Defendant from its sale of the lead-containing lipstick products.  Compl. at ¶ 8.  Furthermore, Plaintiff is entitled to recover the cost for medical monitoring necessitated by her exposure to the lead in the concerned lipstick products, and her claim for such is a recognizable injury, as explained below.  Compl. at ¶ 8.

Defendant's argument that Plaintiff bought and received a functional lipstick product for the price she paid ignores the underlying deception of the transaction—that Defendant failed to disclose to Plaintiff that the concerned lipstick contained unreasonably high levels of lead.  What Plaintiff *actually* received was a lipstick product that, through its application to her lips, has exposed Plaintiff to unreasonably high levels of lead, which is widely known to be a dangerous and hazardous substance.  The concerned lipstick product is unfit for its intended use and, thus, Defendant cannot rationally argue that Plaintiff received that which she bargained for.

Plaintiff's case is distinguishable from that in *Verb v. Motorola, Inc.*, 284 Ill. App. 3d 460, 672 N.E.2d 1287 (1st Dist. 1996).  There, the plaintiff alleged that the value of their cell phones had been diminished in value, that the cell phones *might* be unsafe, and failed to allege

that the phones were defective. *Id.* at 472, 672 N.E.2d at 1295. Here, on the other hand, Plaintiff has alleged that the concerned lipstick is, for all practical purposes, worthless, that the concerned lipstick is in fact unsafe in its current condition, and that as a result, the concerned lipstick is defective. Compl. at ¶¶ 2, 6, 7, 48, 49. Plaintiff has alleged an actual, present injury, in the form of the purchase price of the concerned lipstick product, which is presently of no use to her. Compl. at ¶ 53. *Compare Schiffner v. Motorola, Inc.*, 697 Ill. App. 3d 1099, 697 N.E.2d 868 (1st Dist. 1998). Defendant's supposed inability to comprehend the injury Plaintiff has suffered is clearly contradicted by the allegations of the Complaint. Furthermore, without Defendant's placement of the lead-laden lipstick products in the hands of consumers, including Plaintiff, there would be no need for the medical monitoring Plaintiff seeks, which is another form of injury she has suffered.

### D.    Plaintiff Has Alleged that Defendant's Conduct Deceived Her.

Plaintiff purchased the concerned lipstick under the entirely reasonable belief that it did not contain a highly toxic substance—lead. Defendant attempts to shift the blame to Plaintiff by stating that she does not allege that she reviewed the ingredient label on the concerned lipstick. Def. Memo. at 18. Yet even if she had, it would have been a fruitless effort, as Defendant failed to disclose the presence of unreasonably high levels of lead in its lipstick products.

Defendant incorrectly frames this case as one of misrepresentation. Not so. This is a case of an omission by Defendant of the material fact that its lipstick products contain unreasonably high levels of lead. The authorities relied upon by Defendant illustrate its misconception.[2] For example, in *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 154–55, 776 N.E.2d

---

[2] *Lantz v. American Honda Motor Co.*, 2007 U.S. Dist. LEXIS 34948 (N.D. Ill. 2007), also relied upon by Defendant, is also a misrepresentation case, not an omission case, and Plaintiff's claims were dismissed because the allegedly deceptive conduct was merely "puffing," and thus inactionable. As a result of these glaring distinctions, *Lantz* is clearly inapplicable here.

151, 163 (2002), the plaintiff failed to "allege that he received anything other that what he expected to receive when he purchased defendant's gasoline," and failed to "allege that he saw, heard or read any of defendant's ads," and hence could not have been deceived.  The same holds true for *Zekman v. Direct Am. Marketers, Inc.*, 182 Ill. 2d 359, 695 N.E.2d 853 (1998).  There, in ruling on the defendant's *motions for summary judgment*, the court held that the plaintiff did not read the bills that contained allegedly deceptive statements, and thus "could not have been misled by the allegedly deceptive nature of the bills."  *Id.* at 375, 695 N.E.2d at 861.

Here, however, Plaintiff's ICFA claim focuses on Defendant's material omission of the fact that its lipstick products contain unreasonably high levels of lead.  Plaintiff has clearly alleged that she would not have purchased the concerned lipstick product had Defendant informed her of its unreasonably high lead content.  As a direct and proximate result of Defendant's material omission, Plaintiff suffered the damage of paying full price for lipstick that was unfit for its ordinary and intended use.  Consequently, Plaintiff relied on Defendant's silence in the matter, and has been damaged as a result.

Despite the fact that Plaintiff has indeed alleged proximate cause in her Complaint, ultimately, allegations regarding proximate cause under the ICFA need only be "minimal, since that determination is best left to trier of fact."  *Muehlbauer v. General Motors Corp.*, 431 F. Supp. 2d 847, 868–69 (N.D. Ill. 2006), *quoting*, *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 504 (1996).

### III.    PLAINTIFF HAS SUFFICIENTLY ALLEGED A CLAIM FOR THE COST OF MEDICAL MONITORING.

"Because diseases and injuries caused by the exposure of toxic substances are often latent, relief in the form of medical monitoring has developed as a means to compensate plaintiffs that have been wrongfully exposed to various toxic substances and require medical testing because of that exposure." *Muniz v. Rexnord Corp.*, 2006 WL 1519571, *5 (N.D. Ill. 2006) (citing *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 849-50 (3d Cir. 1990); *Lewis v. Lead Indus. Assoc., Inc.*, 342 Ill. App. 3d 95, 101, 793 N.E.2d 869 (1st Dist. 2003); *Carey v. Kerr-McGee Chemical Corp.*, 999 F. Supp. 1109, 1118 (N.D. Ill. 1998); *Allgood v. Gen. Motors Corp.*, 2005 WL 2218371 (S. D. Ind. Sept. 12, 2005) [attached hereto as Exhibit 3]; *Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970, 976-78 (Utah 1993)), attached hereto as Exhibit 2. Plaintiff has been so exposed here.  As a result, Plaintiff has indeed suffered a present injury, despite Defendant's arguments to the contrary.  As the court held in *Lewis v. Lead Indus. Assoc., Inc.*:

> If a defendant's breach of duty makes it necessary for a plaintiff to incur expenses to determine if he or she has been physically injured, we find no reason why the expense of such an examination is any less a present injury compensable in a tort action than the medical expenses that might be incurred to treat an actual physical injury caused by such a breach of duty.

342 Ill. App. 3d at 101–02, 793 N.E.2d at 874.  Plaintiff is under no duty to allege that she has suffered an actual injury at present, but rather, need only allege that her exposure to a toxic substance, such as lead, necessitates her being tested to determine *whether* she has indeed suffered actual personal injury.  "The injury in a medical monitoring claim is the cost of the medical monitoring that will, one hopes, detect that injury." *In re Paoli*, 916 F.2d at 850. Particularly in the toxic exposure context, as in this case, courts have consistently held that "recovery of medical monitoring damages is not contingent upon a showing of a present physical

16

injury or upon proof that injury is reasonably certain to occur in the future." *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 822-23 (Cal. 1993); *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 852 (3d Cir. 1990); *Burns v. Jaquays Mining Co*rp., 752 P.2d 28, 33 (Ariz. 1987).

Defendant misapprehends Plaintiff's claims.  "There is a fundamental difference between a claim seeking damages for an increased risk of future harm and one which seeks compensation for the cost of medical examination."  *Lewis,* 342 Ill. App. 3d at 101, 793 N.E.2d 869.  Plaintiff here does not seek damages for an increased risk of future harm, but rather seeks to recover the actual "costs of  diagnostic tests necessary to detect lead poisoning for her and other members of the Plaintiff Class resulting from LVMH's actions."  Compl. at ¶ 8.

Such medical monitoring is indeed necessary "to a reasonable degree of medical certainty," as Defendant notes.  Def. Memo. at 16 (citing *Lewis,* 342 Ill. App. 3d at 101–102, 793 N.E.2d 869).  As Defendant itself points out, "lead is present in a vast number of consumer products."  Def. Memo. at 5.  With Defendant's assertion in mind, viewed in conjunction with the presence of unreasonably high levels of lead in the concerned lipstick products, there is certainly a reasonable degree of certainty that medical monitoring is necessary.  Nevertheless, "concerns about the degree of certainty required can easily be accommodated by requiring that a jury be able reasonably to determine that medical monitoring is probably, not just possibly, necessary."  *In re Paoli*, 916 F.2d at 850.  Moreover, Defendant's own cited authority, *Jensen v. Bayer AG*, recognizes that the determination of whether medical monitoring is necessary to a reasonable degree of certainty is a matter best left to a motion for summary judgment, and *not* a motion to dismiss, as Plaintiff has not yet had the opportunity to produce any evidence or expert testimony on this matter.  371 Ill. App. 3d 682, 692, 862 N.E.2d 1091, 1100–01 (1st Dist. 2007).

## IV.    PLAINTIFF HAS SUFFICIENTLY STATED A CLAIM FOR UNJUST ENRICHMENT.

To state a claim for unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the retention of said benefit by the defendant violates fundamental principals of justice, equity, and good conscience. *HPI Health Care Servs., Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160, 545 N.E.2d 672, 679 (1989). Despite Defendant's erroneous contentions to the contrary, Plaintiff has sufficiently alleged each of these elements here.

Count VI of Plaintiff's Complaint clearly and succinctly alleges her claim for unjust enrichment.  Plaintiff alleges that "LVMH received from Plaintiff and the other Plaintiff Class members certain monies from their purchase of the concerned lipstick products which are excessive and unreasonable, and are the result of LVMH's deceptive conduct."  Compl. at ¶ 81. The concerned lipstick products contain lead, and are "not fit for [their] intended purpose"— application to one's lips.  Compl. at ¶ 6.  Had Plaintiff known that she would be exposed to lead by purchasing and using the concerned lipstick products, she would not have purchased them. Compl. at ¶ 11.  Further, "Plaintiff and the other members of the Plaintiff Class have conferred a benefit on LVMH," and "LVMH will be unjustly enriched if it is allowed to retain such funds." Compl. at ¶¶ 82, 83.  As shown herein and in Plaintiff's Complaint, she has sufficiently alleged that she and other members of the putative Class have paid Defendant monies for the concerned lipstick products, and Defendant has received and retained said monies, despite the fact that all Plaintiff received was lead-tainted lipstick that cannot be safely used as intended.

Defendant's arguments to the contrary are entirely off-point and represent its fundamental misunderstanding, or willful avoidance, of Plaintiff's claims, not to mention the plain allegations stated in her Complaint.  Defendant argues that Plaintiff has not alleged a

factual basis demonstrating that the concerned lipsticks are unreasonably dangerous or unfit for their intended purpose. Def. Memo. at 25. Not so. Despite the fact that Plaintiff has done so, Plaintiff is under no duty to allege that the concerned lipstick products are "unreasonably" dangerous in order for her to recover damages based on the theory of unjust enrichment. It is enough that Plaintiff alleges that Defendant omitted from Plaintiff the fact that its lipstick products contain unreasonably high levels of lead, and that Plaintiff would not have purchased said products had she known of their lead-containing nature. Compl. at ¶¶ 5, 6, 11. The concerned lipstick products contain substantial levels of lead, the exposure to which causes adverse health effects. Lipstick's intended and ordinary use is to be applied to one's lips, thereby allowing for its ingestion, whether intentionally or inadvertently. As a result, the concerned lipstick products cannot be used as intended, as said use results in the ingestion and exposure to unreasonable and dangerous levels of lead.

Defendant further argues that Plaintiff has not disclosed how she did not receive what she bargained for. Def. Memo. at 25. Quite the contrary. Plaintiff distinctly states that had she known that she would be exposed to high levels of lead by purchasing and using the concerned lipstick product, then she would not have purchased it. Compl. at ¶ 11. Thus, Plaintiff did not receive what she bargained for—i.e., lipstick that does not contain an unreasonably high level of lead, which is a toxic substance.

Defendant also argues that Plaintiff has not conferred any benefit on it. Def. Memo. at 26. Surely, Defendant is not suggesting that it has received no money whatsoever from Plaintiff and other members of the Plaintiff Class' purchases of the concerned lipstick products— including the profits associated with each corresponding purchase. Nevertheless, regardless of whatever position Defendant is attempting to take with respect to this argument, there is no

requirement of privity to state a claim for unjust enrichment, and Defendant's argument necessarily fails.

## V.     PLAINTIFF HAS PLAINLY ARTICULATED COGNIZABLE INJURIES IN SUPPORT OF HER CLAIMS FOR BREACH OF IMPLIED WARRANTIES.

The implied warranty counts under the U.C.C. and the Magnuson Moss Warranty Act should not be dismissed, as the concerned counts state viable causes of action.

### A.     Defendant's Lipstick Products Are Not Merchantable.

"For goods to be considered 'merchantable,' they must conform to a set of standards which includes being 'fit for the ordinary purposes for which such goods are used.'" *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 957 (N.D. Ill. 2007) (citing 810 ILCS 5/2-314(c)). The concerned lipstick products are not fit for their ordinary and intended use—application to one's lips—because they contain unreasonably and dangerously high levels of lead and ordinary use improperly exposes Plaintiff and other members of the Class to a known, hazardous substance.   Compl. at ¶¶ 3–7, 13–15, 34.   Defendant argues Plaintiff has not sufficiently alleged that the lipstick products are not "reasonably safe" and represents that the FDA has found the lead levels harmless. Def. Memo. at 19-20. As stated above, Defendant overreaches, as it has been nearly ten years since the FDA has conducted any scientific inquiry into the presence of lead in lipstick, including the concerned lipstick product here, and plans "to conduct independent testing" of lipsticks. See Defendant's Exhibit B. Thus, at very least, it is a question of fact as to whether the lipsticks are merchantable.

### B.     Damages.

As set forth above, Plaintiff has sufficiently alleged damages.

### C.     Plaintiff Satisfied the Notice Requirement for Her Breach of Implied Warranty Claims.

Defendant argues that Plaintiff's breach of implied warranty claims should be dismissed because Plaintiff did not give notice as required by 810 ILCS 5/2-607 (3)(A). Def. Memo. at 20. Under the Uniform Commercial Code, a buyer must notify a seller of the troublesome nature of a transaction or be barred from recovery for breach of warranty. 810 ILCS 5/2-607 (3)(A). However, there are two exceptions to this requirement, both of which apply here. "Direct notice is not required when (1) the seller has actual knowledge of the defect of the particular product; or (2) a consumer plaintiff suffers a personal injury, in which case the notice requirement could be satisfied by filing a lawsuit against the seller." *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 956 (N.D. Ill. 2007). Defendant had actual knowledge of lead in its lipsticks and of the dangers of lead. Additionally, Plaintiff's Complaint, which alleges harmful exposure to lead and seeks diagnostic testing for lead, served as notice.

An evaluation of whether the notice requirement has been complied with must be based upon the factual setting of each case and the circumstances of the parties involved. *Malawy v. Richard Mfg. Co.*, 150 Ill. App. 3d 549, 561, 501 N.E.2d 376, 384 (5th Dist. 1986). Therefore, "whether sufficient notice has been provided is generally a question of fact to be determined based upon the particular circumstances of each case." *Maldonado v. Creative Woodworking Concepts, Inc.*, 296 Ill. App. 3d 935, 940, 694 N.E.2d 1021, 1025 (3d Dist. 1998). The facts and circumstances here demonstrate Defendant's actual knowledge.

Defendant knew of the specific concern about lead in its lipsticks. Defendant cannot reasonably argue that it had no knowledge about health concerns relating to lead exposure. It is well known that lead is a health hazard. Compl. ¶¶18-22 (detailing the known-hazards of lead). Further, Defendant knew of the inclusion of lead in lipsticks and knew that the lead-content of

the pigments used in lipsticks is regulated. Def. Memo. at 1 (recognizing that the presence of lead in some lipsticks has been "known for many years"), and at 4 ("lead in some lipstick is not news" and is found "in the pigments used to color some lipsticks"). Moreover, Defendant had to have known the ingredients in its own lipsticks. *Gershengorin v. Vienna Beef, Ltd.*, No. 06 C 6820, 2007 WL 2840476 at *4 (N.D. Ill. 2007) (actual knowledge by defendant found where the complained-of pork was an ingredient in the concerned hot dogs), attached hereto as Exhibit 4. Furthermore, the level of lead in the lipstick purchased by Plaintiff, LVMH's Christian Dior "Addict Positive Red", was included in a report by the Campaign for Safe Cosmetics, which issued a related press release in October 2007 that resulted in the issue of lead in lipsticks being widely publicized.[3] All of these factors support a finding that the actual knowledge exception has been satisfied.

A consumer plaintiff who has suffered a personal injury may also satisfy the notice provisions of section 2-607(a)(3) by filing a complaint alleging the seller's breach of warranty. *Maldonado*, 296 Ill. App. 3d at 940, 694 N.E.2d at 1026. A plaintiff need not seek damages for or allege a separate count for personal injuries in order to satisfy the notice requirement by the filing of a complaint. *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 495, 675 N.E.2d 584, 590 (1996) ("Only a consumer plaintiff <u>who *suffers* a personal injury</u> may satisfy the section 2-607 notice requirement by filing a complaint stating a breach of warranty action against the seller.") (emphasis added). The court did not state that a plaintiff must separately sue for damages for personal injuries. The Illinois Supreme Court has recognized the existence of this exception in stating that it was not met in a case where no personal injuries were alleged and the plaintiffs were a body politic and not typical consumers. *Bd. of Educ. of City of Chicago v. A,C*

---

[3] Plaintiff's Class Action Complaint was filed on November 16, 2007.

*and S, Inc.,* 131 Ill. 2d 428, 462-63, 546 N.E.2d 580, 596 (1989). *A fortiori*, the exception could

be met where personal injuries are alleged by consumers.[4] *Id.* This is just such a case. The

Complaint alleges that Plaintiff and other consumers have been exposed to lead from

Defendant's lipstick products, that lead can build up over time, and that diagnostic testing is

necessary. Compl. at ¶¶ 22, 34. Having alleged personal injury, the lawsuit-filing exception to

notice has been met.

## D.    Privity

Defendant argues that the implied warranty claims should be dismissed for lack of

privity. Def. Memo. at 21. Plaintiff purchased the lipstick from a Nordstrom Department Store.

Compl. ¶11. Plaintiff purchased the lipstick through Nordstrom as LVMH's agent and, thus,

privity exists. In any event, an exception to the privity requirement is appropriate here as a matter

of public policy.

The existence of agency is a question of fact and a claim should not be dismissed without

giving a plaintiff a chance to prove the existence of the agency relationship. *Caterpillar, Inc. v.

Usinor Industeel*, 393 F. Supp. 2d 659, 671 (N.D. Ill. 2005) (citations omitted). "An agent's

apparent authority is determined in light of the principal's conduct towards a third party; the

principal must do something to lead the third party to believe that the agent is authorized to act

on the principal's behalf." *Id.* In *Gershengorin*, the court declined to dismiss warranty claims for

lack of privity where "plaintiffs sufficiently allege both that Vienna Beef provided the signage

and advertising at the Authorized Stands and that Authorized Stands were Vienna Beef's

---

[4] Defendant has cited *Jensen v. Bayer AG* in its brief for other points. Plaintiff notes that the *Jensen* court also addressed the notice issue. However, Plaintiff believes that *Jensen v. Bayer* was wrongly decided since the Illinois Appellate Court found that the plaintiff had to bring an action for personal injury, not just allege personal injury, in order to avail himself of the lawsuit-filing exception. This is contrary to the Illinois Supreme Court's decision in *Bd. of Educ. of City of Chicago*, and thus, should not be followed. Moreover, the products at issue were different; *Jensen* concerned a drug while *Bd. of Educ. of City of Chicago* concerned exposure to asbestos, which, like lead, can build-up in the body over time.

agents." *Gershengorin*, 2007 WL 2840476 at *4. Here, Plaintiff has sufficiently alleged an agency relationship where the Complaint states that Defendant marketed and distributed its products through various retailers and maintains websites that reach out to consumers throughout the United States and most of the world.[5] Compl. at ¶¶ 1, 12, 17. As Nordstrom and other retailers acted as agents of Defendant, privity is satisfied.

Alternatively, an exception to the privity requirement should be applied. Illinois law has recognized exceptions to the requirement of privity between a manufacturer and seller under certain circumstances. *Patargias v. Coca-Cola Bottling Co.*, 332 Ill. App. 117, 133, 74 N.E.2d 162, 169 (1st Dist. 1947) (holding that public policy demands that an implied warranty be imposed on manufacturer of drink); *Suvada v. White Motor Co.*, 32 Ill. 2d 612, 210 N.E.2d 182 (1965), *overruled on other grounds*, (holding, prior to the enactment of the UCC in Illinois, that privity of contract is not essential in an action for breach of implied warranty in the sale of food); *Cf. Reed v. City of Chicago*, 263 F. Supp. 2d 1123 (N.D. Ill. 2003) (holding, under Illinois law as predicted by federal district court, that detainee who used paper isolation gown to hang himself was beneficiary of warranties even though he was not the purchaser). In *Suvada*, the Illinois Supreme Court recognized the public interest in life and health and stated that "liability of the manufacturer and vendor [of food] is imposed by operation of law as a matter of public policy for the protection of the public". 32 Ill. 2d 612, 618, 210 N.E.2d 182, 186. Indeed, the UCC "published comments leave a door at least slightly ajar for future extension of some warranties in appropriate circumstances to nonprivity plaintiffs." *Collins Co., Ltd. v. Carboline Co.*, 125 Ill. 2d 498, 516, 532 N.E.2d 834, 842 (1988). In a specially concurring opinion, in *Whitaker v. Lian*

---

[5] In *Kutzler v. Thor Indust., Inc.*, No. 03-C-2389, 2003 WL 21654260, *6 (N.D. Ill. 2003), an unpublished decision cited by Defendant, the plaintiff did not sufficiently allege the agency relationship and did not cite authority on this issue. The decision was not subject to appellate review, since the parties stipulated to a settlement of the case. See Exhibit 5, Notice of Settlement and order dismissing the case.

*Feng Machine Co.*, 156 Ill. App. 3d 316, 323, 509 N.E.2d 591, 596 (1st Dist. 1987), Justice Rizzi stated that "the implied warranty should apply to users and all persons who may reasonably be expected to be affected by a breach of the implied warranty regardless of privity." As Plaintiff and other consumers are expected to be the ones to ultimately apply the lipstick to their lips and subsequently ingest the lead-containing product, the application of an exception to the privity requirement is appropriate, given Illinois' recognized interest in life and health.

E.    **The Court has Jurisdiction Over the Magnuson Moss Warranty Act.**

Defendant argues that Plaintiff does not satisfy Section 2310(d)(3) of the Magnuson-Moss Warranty Act ("MMWA"), because there is only one named plaintiff and not at least 100 named plaintiffs as required by the Act. Def. Memo. at 22. Section 2310(d)(3) sets forth jurisdictional requirements for bringing a MMWA claim in federal court. However, Plaintiff has asserted an alternative basis for federal jurisdiction, which eliminates the need for providing 100 named plaintiffs.

Section 1332(d)(2) of the Class Action Fairness Act ("CAFA") creates an alternative basis for federal jurisdiction over the MMWA claim. *Payne v. Fujifilm U.S.A., Inc. d/b/a Fuji Photo Film USA, Inc.,* 2007 WL 4591281, at *7 (D.N.J. 2007) (citing *McGhee v. Cont'l Tire N. Am., Inc.,* No. 06-6234, 2007 U.S. Dist. LEXIS 62869, at *8 (D. N. J. Aug. 27, 2007)), attached hereto as Exhibits 6 and 7. As one court has noted in reconciling CAFA with the MMWA, Congress must have been aware of MMWA's limited jurisdictional provisions and intended to expand them with CAFA. *Id.* (citing *Chavis v. Fidelity Warranty Servs., Inc.,* 415 F. Supp. 2d 620, 626 (D.S.C. 2006)). "[T]his interpretation [is] logical in light of the fact that CAFA's legislative history clearly indicates the congressional intent to expand federal jurisdiction over class actions." *Id.* Thus, although Plaintiff does not satisfy the jurisdictional requirements of the

MMWA, the Court has jurisdiction based on Plaintiff's allegations of federal jurisdiction under CAFA. *Id.* at *8 (citing *Brothers v. Hewlett-Packard Co.*, No. 06-2254, 2007 WL 485979 (N.D. Cal. 2007, attached hereto as Exhibit 8). Defendant has not contested jurisdiction of this action under CAFA.

## VI.    PLAINTIFF'S CLAIMS FOR STRICT LIABILITY AND NEGLIGENCE PER SE HAVE BEEN ADEQUATELY PLED.

The economic loss doctrine is not applicable to this action.  In *Moorman Mfg. Co.*, *v. Nat'l Tank Co.*, the Illinois Supreme Court articulated three exceptions to the economic loss rule: (1) where the plaintiff sustained personal injury or property damage resulting from a tortuous event, *i.e.,* a sudden or dangerous occurrence (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, *i.e.,* fraud; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions.  91 Ill. 2d 69. 86-88, 435 N.E.2d 443, 451 (Ill. 1982).  Plaintiff alleges damages that were proximately caused by Defendant intentionally and falsely representing that the concerned of lipstick products were safe for use, when they in fact are not.[6]  Compl. at ¶ 73.  As noted *supra*, the Court must take all facts pled as true and construe all inferences in favor of Plaintiff.   *Thompson v. Illinois Dep't of Prof'l Regulation,* 300 F.3d 750, 753 (7th Cir. 2002).  Thus, Defendant's attempt to stretch the limits of the economic loss doctrine is without merit.

Plaintiff's allegations of strict liability stemming from Defendant's material omissions also support that the economic loss doctrine is inapplicable to this action.  The economic loss doctrine does not apply when a "duty arises that is extracontractual." *Golf v. Henderson,* 376 Ill. App. 3d 271, 279, 876 N.E.2d 105, 112 (1st Dist. 2007); *Kanter v. Deitelbaum,* 271 Ill. App. 3d

---

[6] As noted *supra*, Plaintiff's allegations satisfy the requirements of Fed. R. Civ. P. 9(b).

750, 648 N.E.2d 1137 (1st Dist. 1995). No express contract exists between the parties to this action. Also, identical to situation which the court encountered in *Golf v. Henderson*, Plaintiff has "advanced a statutory consumer fraud claim pursuant to section 2 of the Consumer Fraud Act", and thus, "the duties that plaintiff alleges were violated arose outside of any contract between the parties. Because these duties were extracontractual . . . [P]laintiff's cause of action is not barred by the economic-loss doctrine". 376 Ill. App. 3d at 279, 876 N.E.2d at 112. Thus, the economic loss doctrine is not applicable to this action.

Finally, Plaintiff's damage allegations do not fall within the realm of the economic loss doctrine. In *Moorman*, the court defines "economic loss" as:

> Damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits without any claim of personal injury or damage to other property . . . as well as the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold

91 Ill. 2d at 82, 435 N.E.2d at 449 (citations and quotations omitted). Plaintiff seeks damages which include the "future costs of medical monitoring necessitated by the presence of lead." The cost of future medical monitoring necessitated after exposure to a known hazardous substance as a result of Defendant's fraudulent and negligent conduct does not fall within the court's definition of an economic loss. *See Moorman*, 91 Ill. 2d at 84, 435 N.E.2d at 450 ("Warranty law is ill-suited to correct problems of hazardous products that cause physical injury. Manufacturers are better able to bear the risk or to take action to correct flaws that pose a danger. Accordingly, tort law imposes a duty on manufacturers to produce safe items . . . . "). Thus, Defendant's attempt to discredit Plaintiff's strict liability claim is without merit.

Plaintiff has properly alleged negligence *per se*.[7]  When examining motions brought pursuant to Rule 12(b)(6), a court may look only to the pleadings and must take all the facts pled as true while construing all inferences in favor of the plaintiff.  *Thompson v. Illinois Dep't of Prof'l Regulation,* 300 F.3d 750, 753 (7th Cir. 2002).  Plaintiff has alleged that Defendant's actions violate applicable federal statutes.  The Food, Drug and Cosmetics Act prohibits the introduction or delivery for introduction into interstate commerce of any cosmetic that, "bears or contains any poisonous or deleterious substance which may render it injurious to users under the conditions of use prescribed in the labeling thereof, or under such conditions of use as are customary or usual . . . ."  21 U.S.C. §§ 331(a), 361.  Plaintiff's Complaint alleges that Defendant "manufactured, distributed, delivered, and/or sold cosmetics that contained a poisonous and deleterious substance, lead . . . ."[8]  Compl. at ¶ 78.  Thus, it is clear that Plaintiff has properly alleged negligence *per se*.

## VII.    INJUNCTIVE RELIEF.

As illustrated above, Plaintiff has alleged several well plead and viable causes of action.  Based upon the review of the matter and said causes of action, Plaintiff does not seek to pursue the injunctive relief count at this time and, accordingly, hereby withdraws it.

## VIII.    SHOULD THE COURT DISMISS ANY OF PLAINTIFF'S CLAIMS, PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND.

Alternatively, should the Court dismiss any of Plaintiff's claims, Plaintiff should be granted leave to amend her Complaint, so as to cure any potential defects in pleading that the Court may recognize in so ruling.

---

[7] As detailed *supra*, Plaintiff has alleged actual damages.

[8] As noted *supra*, Defendant's repeated references to the substance of FDA reports in an attempt to prematurely argue the merits of this action should be disregarded.

## CONCLUSION

For the foregoing reasons, Plaintiff, Pamela Stella, respectfully requests that the Court

deny Defendants' motions to dismiss, and grant such other relief as the Court deems appropriate.

Pamela Stella, individually and on behalf
of all others similarly situated,

By:    /s/  Ben Barnow
      Ben Barnow
      Sharon Harris
      Erich Schork
      Barnow and Associates, P.C.
      One North LaSalle Street, Suite 4600
      Chicago, IL 60602
      Telephone: (312) 621-2000
      Facsimile: (312) 641-5504

      *Attorneys for Plaintiff*

Kevin Rogers
Law Offices of Kevin Rogers
307 N. Michigan Avenue, Suite 305
Chicago, IL   60601
Telephone: (312) 332-1188
Facsimile: (312) 332-0192

Aron D. Robinson
The Law Office of Aron D. Robinson
19 S. LaSalle Street, Suite 1300
Chicago, IL 60603
Telephone: (312) 857-9050
Facsimile: (312) 857-9054

*Of Counsel:*

Lance A. Harke, P.A.
Sarah Clasby Engel, P.A.
Harke & Clasby LLP
155 South Miami Ave., Suite 600
Miami, Florida 33130
Telephone: (305) 536-8220
Facsimile: (305) 536-8229

## Certificate of Service By Electronic Means

   I, Ben Barnow, one of the attorneys for Plaintiff, hereby certify that Plaintiff's Opposition to Defendant LVMH Perfumes and Cosmetics, Inc.'s Motion to Dismiss was caused to be served electronically this 29th day of April, 2008, pursuant to ECF as to Filing users and I shall comply with LR 5.5 as to any party who is not a filing user or represented by a filing user.


                                    /s/ Ben Barnow