Exhibit 5

Marshall Meyers
KROHN & MOSS, LTD.
111 West Monroe, Suite 1124
Phoenix, AZ 85003
(602) 275 5588
Attorney No. 020584

DEC 1 6 2003

## IN THE UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF ILLINOIS

### EASTERN DIVISION

FRANK KUTZLER,           )
                         )
   Plaintiff,            )          Case No. 03 C 2389
                         )
   vs.                   )
                         )
THOR INDUSTRIES INC.     )          **NOTICE OF SETTLEMENT**
                         )
   Defendant.            )

NOW COME THE PARTIES by and through their attorneys to respectfully notify this

Honorable Court that this case has settled. This Court shall retain jurisdiction over this matter

until fully resolved   A Stipulation to Dismiss and Order will be forthcoming.

Respectfully Submitted this ____ day of _____, 2003

By:_____

Marshall Meyers
KROHN & MOSS, LTD.
111 W. Monroe, Ste. 1124
Phoenix, AZ 85003
(602) 275-5588
Attorney No. 020584

Original and one copy was mailed and sent via facsimile this _____ day of _____, 2003, to:

Attn: Clerk of the Court
United States District Court
Northern District of Illinois
EASTERN DIVISION
219 S. Dearborn Street, 20th floor
Chicago IL 60604

Hon. Sidney I. Schenkier
Room Number 1700
U.S. District Court
Northern District of Illinois
219 S. Dearborn Street
Chicago, IL. 60604

Copy of the Original was mailed this _____ day of _____, 2003, to:

Mr. Paul Wojcicki
Attorney
Segal, McCambridge, Singer & Mahoney, Ltd.
One IBM Plaza
330 N Wabash Ave Ste 200
Chicago IL 60611-3603

Cathy Bopp

Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2389 | **DATE** | 1/22/2004 |
| **CASE TITLE** | | Kutzler vs. Thor Ind., Inc. | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐   Filed motion of [ use listing in "Motion" box above.]

(2)  ☐   Brief in support of motion due _____.

(3)  ☐   Answer brief to motion due_____.  Reply to answer brief due_____.

(4)  ☐   Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐   Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐   Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐   Trial[set for/re-set for] on _____ at _____.

(8)  ☐   [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐   This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10)  ■   [Other docket entry]   Pursuant to the agreed stipulation to dismiss, this action is dismissed with prejudice and without costs.

(11)  ☐   [For further detail see order (on reverse side of/attached to) the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices

JAN 2 3 2004
date docketed

docketing deputy initials

**Document Number**

24

mm   courtroom deputy's initials

U.S. DISTRICT COURT

date mailed notice

Date/time received in central Clerk's Office

mailing deputy initials

# Exhibit 6

*Westlaw.*

Slip Copy                                                                                                    Page 1
Slip Copy, 2007 WL 4591281 (D.N.J.)
(Cite as: Slip Copy, 2007 WL 4591281)

**C**

Payne v. Fujifilm U.S.A., Inc.
D.N.J.,2007.
Only the Westlaw citation is currently available.NOT FOR PUBLICATION
United States District Court,D. New Jersey.
Jerilynn PAYNE, on behalf of herself and all others
similarly situated, Plaintiff,
v.
FUJIFILM U.S.A., INC. d/b/a Fuji Photo Film
USA, Inc., Defendant.
**Civil Action No. 07-385(JAG).**

Dec. 28, 2007.

Gary S. Graifman, Kantrowitz, Goldhamer & Graifman, Esqs., Montvale, NJ, Michael Scott Green, Green & Pagano, Milltown, NJ, for Plaintiff.
Vincent N. Avallone, Kirkpatrick & Lockhart Preston Gates Ellis, Newark, NJ, for Defendant.

**OPINION**

GREENAWAY, JR., U.S.D.J.
**\*1** This matter comes before this Court on the motion of Defendant Fujifilm, U.S.A., Inc. ("Defendant") to dismiss for failure to state a claim upon which relief can be granted, pursuant to FED.R.CIV.P. 12(b)(6). For the reasons set forth below, Defendant's motion will be denied.

**I. *FACTUAL BACKGROUND***

On January 5, 2003, Plaintiff Jerilynn Payne ("Plaintiff") purchased a FinePix 3800 camera, manufactured by Defendant, from Circuit City. (First Am. Compl. ¶ 9.) Plaintiff paid $399 for the camera. (*Id.*) Plaintiff alleges that the camera "contained a defect with the internal memory battery."(*Id.* at ¶ 2.) Specifically, Plaintiff claims that

the charging circuit for the internal battery causes it to overcharge and corrode ... [and that] the internal circuitry causes the electric current being drawn

from the internal battery ... to discharge the internal battery too deeply because there is not a proper circuit and governor on the circuit limiting this discharge....

(*Id.* at ¶ 4.) In addition, Plaintiff alleges that Defendant
knew or had reason to know that the FinePix 3800s they designed, manufactured, marketed, distributed and sold were materially defective, yet they concealed from the general public the potential problem and continued to design, manufacture, distribute and sell the FinePix 3800 which uniformly contained the material defect.

(*Id.* at ¶ 2.)

Plaintiff brought the instant class action, on behalf of herself and all others similarly situated, "because they purchased the FinePix 3800s that did not perform as warranted by the Defendant in that the digital cameras failed and are materially defective. (*Id.* at ¶ 13.)Plaintiff alleges that a class action is appropriate because: "the matter in controversy exceeds $5,000,000 and the named Plaintiff is a citizen of a state different from the Defendant"(*id.* at ¶ 12);"members of the class have common legal grievances against the Defendant"(*id.* at ¶ 13);"[t]he Class is composed of thousands of persons or entities that purchased in total over 42,000 of the FinePix 3800s that are geographically dispersed throughout the United States, the joinder of whom in one action is impracticable"(*id.* at ¶ 15);"there are common questions of law and fact that exist as to all Class members and these questions predominate over questions affecting only individual Class members"(*id.* at ¶ 17);"Plaintiff ... is asserting claims that are typical of the claims of the entire Class"(*id.* at ¶ 18);"Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent ..."(*id.* at ¶ 19); and "[t]he class mechanism is superior to other available means for the fair and efficient adjudication of the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 4591281 (D.N.J.)
(Cite as: Slip Copy, 2007 WL 4591281)

claims of the Plaintiff and Class members ..."(*id.* at ¶ 20).

## II. *STANDARD OF REVIEW*

**\*2** "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957), while abrogating the decision in other respects). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly,* 127 S.Ct. at 1964-65 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* at 1965.

When deciding a motion to dismiss, pursuant to FED.R.CIV.P. 12(b)(6), a court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir.1994). The court is to view these allegations and inferences in the light most favorable to the non-moving party. *Id.* A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. *See In re Warfarin in Sodium,* 214 F.3d 395, 397-98 (3d Cir.2000). That is, a motion to dismiss should be granted if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face."*Twombly,* 127 S.Ct. at 1974 (abrogating *Conley,* 355 U.S. 41). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974);

*Semerenko v. Cendant Corp.,* 223 F.3d 165, 173 (3d Cir.2000).

The court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. *See Pittsburgh v. W. Penn Power Co.,* 147 F.3d 256, 259 (3d Cir.1998); 5 A Wright & Miller, *Federal Practice & Procedure* : Civil 2d § 1357. "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them."*In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997)."[A] 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.' "[FN1] *Id* (emphasis in original) (quoting *Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1220 (1st Cir.1996)). Any further expansion beyond the pleading, however, may require conversion of the motion into one for summary judgment. FED.R.CIV.P. 12(b).[FN2]

> FN1. Defendant submits the Limited U.S.A. One Year Warranty with its Brief in Support of its Motion to Dismiss. (*See* Second Supplemental Decl. of Christopher Maxwell Ex. 2 "Maxwell Decl. Ex. 2".) This warranty is integral to Plaintiff's claims and, Plaintiff explicitly relies upon it in Count I of the First Amended Complaint. This Court will, therefore, consider the warranty in resolving Defendant's motion.

> FN2. Plaintiff attaches a Business Entity Status Report from the New Jersey State Business Gateway Service, Corporate and Business Information Reporting website as Exhibit A, and listings of Defendant's facilities and service centers, from Defendant's own website, as Exhibits B and C. (*See* Certification of Michael S. Green Exs. A, B and C.) The information found in these three exhibits constitutes evidence

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

outside the pleadings, and this Court shall not consider these documents in resolving this motion to dismiss. *See Thompson v. Princeton Univ.,* No. 05-314, 2005 U.S. Dist. LEXIS 18421, *6 (D.N.J. Aug. 24, 2005).

### III. *DISCUSSION*

#### A. Breach of Warranty

**\*3** Defendant argues that Plaintiffs breach of warranty claims fail because "[P]laintiff expressly alleges that her FinePix 3800 digital camera failed to operate *after* its one-year written warranty [ ] expired, and the warranty conspicuously disclaimed implied warranties of merchantability and fitness for a particular purpose beyond that one-year period."(Def.'s Br. in Supp. of Mot. to Dismiss 2) (emphasis in original). Plaintiff, on the other hand, claims that she states a claim for breach of express warranty because the FAC alleges "that the defect affects and manifests in the Camera *immediately...* [,]" and the "durational limits [of the express warranty] are unconscionable."(Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss 5, 7) (emphasis in original). Plaintiff also argues that she states a claim for breach of implied warranties because "Defendant's disclaimer of the implied warranties and in effect limitation of the implied warranties is unconscionable."(*Id.* at 12.)

#### *1. Breach of Express Warranty*

Plaintiff's claim pursuant to the express warranty FN3 accompanying Defendant's FinePix 3800 falls outside of the relevant warranty period. The warranty states, in relevant part,

> FN3. Express warranties by the seller are created as follows:
>
> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of

the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

N.J. STAT. ANN. § 12 A:2-313.

Your FujiFilm equipment has been manufactured to precise standards, and with rigid quality control through every process of manufacture, by FUJI PHOTO FILM CO., LTD., Tokyo, Japan. It is warranted by FUJI PHOTO FILM U.S.A., INC. against defective workmanship or materials for one full year from the date of purchase. FujiFilm will, at its option, either repair or replace free of charge equipment which is returned either in person or postpaid and insured to one of the FujiFilm Repair Centers whose addresses are listed on the reverse side....

.... THE FOREGOING WARRANTY IS FUJI-FILM'S ONLY WARRANTY WITH RESPECT TO THE PRODUCT AND FUJIFILM MAKES NO OTHER WARRANTY WHATSOEVER, EXPRESS OR IMPLIED, REGARDING THE PRODUCT INCLUDING MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. In no event will FujiFilm or its authorized dealers be liable for incidental, consequential or special damages, even if such damages result from negligence or other fault.

Maxwell Decl. Ex. 2. This warranty clearly provides coverage for one year following the date of purchase, and disclaims additional warranties, including the implied warranties of merchantability and fitness for a particular purpose.

"The general rule [pertaining to warranties] is that an express warranty does not cover repairs made after the applicable time ... periods have elapsed."*Abraham v. Volkswagen of Am., Inc .,* 795 F.2d 238, 250 (2d Cir.1986). Similarly, "[t]he Third

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 4591281 (D.N.J.)
**(Cite as: Slip Copy, 2007 WL 4591281)**

Circuit has held that a defect which is not discovered until after the expiration of the express warranty period is not actionable ..."*Ne. Power Co. v. Balcke-Durr, Inc.*, No. 97-4836, 1999 U.S. Dist. LEXIS 13437, at *14 (E.D.Pa. Aug. 20, 1999) (citing *Duquesne Light Co. v. Westinghouse Elec. Corp.*. 66 F.3d 604, 616 (3d Cir.1995))."The case law almost uniformly holds that time-limited warranties do not protect buyers against hidden defects which are typically not discovered until after the expiration of the warranty period."*Id.*

*4 Plaintiff consistently alleges, throughout the FAC, that her camera malfunctioned after her one-year express warranty expired. (*See* First Am. Compl. ¶ 3) (stating that "[i]n actuality, *within a few years of purchase,* the FinePix 3800 is unable to make any shots due to the defective internal memory battery despite having fully charged external batteries.") (emphasis added); (*see also id.* at ¶ 23) (stating that "in actuality, the FinePix 3800 fails to operate *within a couple years after purchase* due to a defective internal memory battery even with fully charged external batteries.") (emphasis added). Plaintiff's claim for breach of express warranty, therefore, seemingly fails.

However, Plaintiff also alleges that because Defendant had, or should have had, knowledge of the alleged defect at the time of sale to Plaintiff, the time limitations in the express warranty are unconscionable. (*See* First Am. Compl. ¶ ¶ 37-38.) Specifically, Plaintiff claims that

Class members had no meaningful choice in determining those time limitations; the terms of the limited warranties unreasonably favored FUJIFILM over members of the Class; a gross disparity in bargaining power existed as between FUJIFILM and members of the Class; and FUJIFILM knew the FinePix 3800s were defective at the time of sale and would fail well before their useful lives.

(*Id.* at ¶ 38.)

If the court as a matter of law finds the contract or any clause of the contract to have been unconscion-

able at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

[ ] When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

N.J. STAT. ANN. § 12 A:2-302.

In determining whether a contractual provision or clause is unconscionable, courts look to two factors: 1) unfairness in the formation of the contract, or procedural unconscionability, and 2) excessively disproportionate terms, or substantive unconscionability. *Sitogum Holdings, Inc. v. Ropes,* 800 A.2d 915, 921 (N.J.Super.Ct. Ch. Div.2002). Procedural unconscionability "can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process."*Id.* Substantive unconscionability, on the other hand, "simply suggests the exchange of obligations so one-sided as to shock the court's conscience."*Id.*

This Court, applying § 12A:2-302 to the allegations in the Complaint, holds that Plaintiff has alleged sufficient facts to withstand a motion to dismiss, pursuant to Rule 12(b)(6), on her unconscionability claim. *Bussian v. DaimlerChrysler Corp.,* 411 F.Supp.2d 614, 622, 2005 U.S. Dist. LEXIS 39791, at *20 (M.D.N.C.2005)*adopted by.* 411 F.Supp.2d 614, 2006 U.S. Dist. LEXIS 3634 (M.D.N.C.2006) (holding that the plaintiff "sufficiently pled unconscionability to state a claim for breach of express warranties" and denying the defendants' motion to dismiss).

*5 Plaintiff specifically alleges that Defendant

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

knew, or should have known, of the alleged defect in the FinePix 3800. (*See* First Am. Compl. ¶¶ 2, 6, 8, 24.) Plaintiff also alleges that Defendant failed to disclose such defect to Plaintiff and members of the class. (*Id.* at ¶¶ 2, 7, 25, 27-28, 37-38.)"The Fourth Circuit in [*Carlson v. Gen. Motors Corp.,* 883 F.2d 287 (4th Cir.1989) ] has expressly recognized that such allegations are sufficient to withstand a motion to dismiss under Rule 12(b)(6)."*Id.; see also Carlson,* 883 F.2d at 296 (stating that "proof that [the defendant] knew of and failed to disclose major, inherent product defects would obviously suggest that its imposition of the challenged 'durational limitations' on implied warranties constituted 'overreaching,' and that the disclaimers themselves were therefore 'unconscionable.' When a manufacturer is aware that its product is inherently defective, but the buyer has 'no notice of or ability to detect' the problem, there is perforce a substantial dispartiy in the parties' relative bargaining power. In such a case, the presumption is that the buyer's acceptance of limitations on his contractual remedies-including of course any warranty disclaimers-was neither 'knowing' nor 'voluntary,' thereby rendering such limitations unconscionable and ineffective.... That is in large measure what the plaintiffs here have claimed; and we therefore cannot say that their amended complaint failed to allege facts which, if proven to the court's satisfaction, could establish that, as a matter of law, [the defendant's] durational limitations on the operation of implied warranties were indeed unconscionable.") (internal citations omitted). The *Carlson* court's rationale is applicable here. Based on this reasoning, this Court shall deny Defendant's motion to dismiss Plaintiff's breach of express warranties claim because Plaintiff has met her pleading burden.

*2. Breach of Implied Warranties of Merchantability and Fitness for a Particular Purpose*

Plaintiff's breach of the implied warranties of merchantability and fitness for a particular purpose also survive dismissal because Plaintiff has alleged suf-

ficiently that the limitation of the implied warranties is unconscionable.[FN4]

> FN4. Defendant argues that Plaintiff's implied warranty claims should be dismissed because Defendant disclaimed such warranties beyond the express warranty period. (Def.'s Br. in Supp. of Mot. to Dismiss 9-12.) However, although Defendant may be correct that its disclaimer was conspicuous and specific as to the recovery period, the underlying question for this Court to resolve is whether such disclaimer is unconscionable.

As noted above, perhaps the most significant allegation in Plaintiff's breach of warranty claims is that Defendant knew of the inherent defect in its FinePix 3800. In *Carlson,* the Fourth Circuit addressed the issue of implied warranties and determined their vitality survived. Specifically, the Court noted,

The claim is, of course, that [Defendant] imposed its durational limitations on the operation of implied warranties in the course of bargaining tainted by the 'concealment of relevant facts'; that *ipso facto,* plaintiffs had no 'meaningful choice' when they accepted the limitations; and that the disclaimers themselves were therefore unconscionable as a matter of law.

*6 883 F.2d at 294.

Plaintiff alleges concealment and unequal bargaining power in the FAC, albeit not as concretely as she does for her claim pertaining to breach of express warranty. (*See,* First Am. Compl. ¶ 28) (stating that "the fraudulent acts of concealment by FUJIFILM included the intentional concealment and refusal to disclose facts known to FUJIFILM of the defects of their product which Plaintiff and Class members could not reasonably have learned, known of, or otherwise discovered."); (*see also id.* at ¶ 39) (stating that "FUJIFILM breached the implied warranty of fitness for a particular purpose.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Based upon Plaintiff's and the Class's skill and judgment and the implied warranties of fitness for a particular purpose, Plaintiff and Class members unknowingly purchased the defective FinePix 3800 for personal and business use."). Although Plaintiff's allegations concerning the implied warranties are not as specific as those relating to the express warranty, "unconscionability claims should but [sic] rarely be determined on the bare-bones pleadings."*Bussian,* 411 F.Supp.2d at 621 (citing *Carlson,* 883 F.2d at 292).

Therefore, "Plaintiff should be allowed a 'reasonable opportunity to present evidence as to commercial setting, purpose and effect to aid the court in making the determination' [as to whether the time limitations of the warranties are unconscionable,] ... which can only occur after an opportunity for discovery."*Id.*

## B. The Magnuson-Moss Act

Next, Defendant argues that Count II of the FAC, alleging a cause of action pursuant to the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301-2312, should be dismissed "because there are not at least 100 named plaintiffs as explicitly required by the Act to provide subject matter jurisdiction."(Def.'s Br. in Supp. of Mot. to Dismiss 2.) Plaintiff claims that "Magnuson-Moss Act claims that cannot independently be heard in federal court owing to the absence of one of the requirements, can still be heard in federal court in circumstances where supplemental jurisdiction is properly exercised under 28 U.S.C. § 1367."(Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss 14.)

Sections 2310(d)(1) and (3) of the Magnuson-Moss Warranty Act provide that

[s]ubject to subsections (a)(3) and (e), a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this title [15 USCS §§ 2301 et seq.], or under a written warranty, implied warranty, or

service contract, may bring suit for damages and other legal and equitable relief-(A) in any court of competent jurisdiction in any State or the District of Columbia; or (B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection....

.... [ ] No claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection-(A) if the amount in controversy of any individual claim is less than the sum or value of $ 25; (B) if the amount in controversy is less than the sum or value of $ 50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or (C) *if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.*

*\*7 15 U.S.C. §§ 2310(d)(1) and (3) (emphasis added).

"It is clear that jurisdictional requisites of 15 U.S.C. § 2310(d)(3) must be met when a suit is brought as an original action in federal court."*Brummet v. Skyline Corp.,* No. 81-103, 1984 U.S. Dist. LEXIS 17702, at \*3 (W.D.Ky. Apr. 11, 1984) (citing *Barr v. Gen. Motors Corp.,* 80 F.R.D. 136 (S.D.Ohio 1978)). However, § 1332(d)(2) of the Class Action Fairness Act ("CAFA") also creates an alternative basis for federal jurisdiction over the MMWA claim. *McGhee v. Cont'l Tire N. Am., Inc.,* No. 06-6234, 2007 U.S. Dist. LEXIS 62869, at \*8 (D.N. J. Aug. 27, 2007).

In reconciling CAFA with the MMWA, *Chavis [v. Fidelity Warranty Services., Inc.,* 415 F.Supp.2d 620, 626 (D.S. C.2006) ] noted that a firmly embedded principle of statutory construction requires courts to presume that Congress enacts legislation with knowledge of existing law and, consequently, that the newly-enacted statute is harmonious with the existing law. *Chavis* reasoned that Congress must have been aware of MMWA's limited jurisdictional provisions and intended to expand them with CAFA. *Chavis* concluded that this interpretation was logical in light of the fact that CAFA's legislat-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ive history clearly indicates the congressional intent to expand federal jurisdiction over class actions.

*Id.*

"CAFA requires that the class members' aggregate claims exceed $5,000,000," *id.* at *9, and that minimal diversity exists between the parties, 28 U.S.C. § 1332(d)(2)(A)-(C). Similarly, a plaintiff must satisfy the requirements set forth in FED.R.CIV.P. 23. *Brummett*, 1984 U.S. Dist. LEXIS 17702, at *6 (citing FED.R.CIV.P. 23 (stating as prerequisites to class actions: "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.")).

Plaintiff sufficiently alleges the requirements, pursuant to FED.R.CIV.P. 23 and CAFA. (*See* First Am. Compl. ¶ 12) ("Plaintiff believes this is a class action in which the matter in controversy exceeds $5,000,000 and the named Plaintiff is a citizen of a state different from the Defendant.") [FN5]; (*see also id.* at ¶ 13) ("The members of the class have common legal grievances against the Defendant because they purchased the FinePix 3800s that did not perform as warranted by the Defendant in that the digital cameras failed and are materially defective."); (*id.* at ¶ 15) ("The Class is composed of thousands of persons or entities that purchased in total over 42,000 of the FinePix 3800s that are geographically dispersed throughout the United States, the joinder of whom in one action is impracticable. The disposition of their claims in a class action will provide substantial benefits to both the parties and the Court. Class members are so numerous that their individual joinder herein is impracticable."); (*id.* at ¶ 17) ("[T]here are common questions of law and fact that exist as to all Class members and these questions predominate over questions affecting only individual Class members ...."); (*id.* at ¶ 18)

("Plaintiff ... is asserting claims that are typical of the claims of the entire Class."); (*id.* at ¶ 19) ("Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent ...."); (*id.* at ¶ 20) ("The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Plaintiff and Class members....").

> FN5. Plaintiff alleges that over 42,000 FinePix 3800 cameras were sold. (*Id.* at ¶¶ 1, 15.)Plaintiff also claims that she paid $399 for her camera. (*Id.* at ¶ 9.) This allegation amounts to claimed damages of over $16,000,000.

*8 Therefore, "although [P]laintiff[ ] cannot satisfy the Magnuson-Moss jurisdictional requirements because they do not have 100 named plaintiffs, th [is][C]ourt has jurisdiction based on [P]laintiff['s] allegations of federal jurisdiction under CAFA." *Brothers v. Hewlett-Packard Co.,* No. 06-2254, 2007 U.S. Dist. LEXIS 13155, *28 (N.D.Cal. Feb. 12, 2007).

## C. New Jersey Consumer Fraud Act

Next, Defendant argues that Plaintiff's claim, pursuant to the New Jersey Consumer Fraud Act, N.J. STAT. ANN. §§ 56:8-1 to -2.13, fails to state a claim upon which relief can be granted for four independent reasons, including that: 1) Plaintiff "does not allege any connection between the sale of her FinePix 3800 digital camera and the [S]tate of New Jersey sufficient to invoke the NJFCA"; 2) Plaintiff's "camera performed beyond the warranty period"; 3) "the economic loss doctrine [prohibits NJCFA claims] ... based upon an alleged fraud in the nonfulfillment of a warranty"; and 4) "Plaintiff fails to plead her allegations of fraud ... with particularity as required under Rule 9(b) [of the Federal Rules of Civil Procedure]." (Def.'s Br. in Supp. of Mot. to Dismiss 2.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Plaintiff counters and argues that: 1) the instant case has sufficient connections to New Jersey to invoke the NJCFA; 2) the alleged defect manifests in the camera immediately; 3) the economic loss doctrine does not bar claims in tort for fraud and negligent misrepresentation; and 4) the NJCFA claim is pled with sufficient particularity. (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss 15-28.)

The NJCFA protects consumers against "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale ... of any merchandise...."N.J. STAT. ANN. § 56:8-2. The Act is worded in the disjunctive, and requires only that Plaintiff allege that Defendant committed one of the prohibited practices to allege a cause of action. *See Cox v. Sears Roebuck & Co.,* 647 A.2d 454, 462 (N.J.1994).

*1. Connection to New Jersey*

Defendant's first argument in favor of dismissal of Plaintiff's NJCFA claim is that Plaintiff "does not allege any connection between the sale of her FinePix 3800 digital camera and the [S]tate of New Jersey ..." (Def.'s Br. in Supp. of Mot. to Dismiss 2.) Defendant states that "a plaintiff must demonstrate sufficient connections to New Jersey in order to maintain a claim under the NJCFA."(*Id.* at 14) (citing *Lewis Tree Serv., Inc. v. Lucent Tech. Inc.,* 211 F.R.D 228, 233 (S.D.N.Y.2002) (stating that "plaintiff has failed to allege that all class members or their transactions with the defendants, or any subset thereof, have sufficient connections to New Jersey so as to maintain a claim under the NJCFA").) The NJCFA is intended to be liberally applied, and "permits recovery ... by persons, whether or not New Jersey residents, who suffer 'any ascertainable loss.' " *Int'l Union of Operating Eng'rs Local # 68 Welfare Fund v. Merck & Co., Inc.,* 894 A.2d 1136, 1143

(N.J.Super.Ct.App.Div.2006), *rev'd on other grounds,*929 A.2d 1076 (N.J.2007).

**\*9** Unlike the facts of *Lewis Tree,* Plaintiff has alleged connection to the State of New Jersey sufficiently. Most notably, the Complaint alleges that Defendant's "principal place of business [is located] at 1100 King George Post Road, Edison, Middlesex County, New Jersey, 08837, pursuant to FUJI-FILM's own filings with the State of New Jersey."(First Am. Compl. ¶ 10.) Plaintiff also claims that Defendant's "principal nationwide repair center ... and its warranty program is administered ... in Edison, New Jersey."(*Id.*) Finally, Plaintiff states that "consumers are told to send in their warranty registration cards to ... Edison, New Jersey."

Defendant argues that Plaintiff's allegations "are demonstrably false." (Def.'s Br. in Supp. of Mot. to Dismiss 15.) However, "a court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom."*Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d at 1384. Therefore, Plaintiff has alleged sufficient connections to New Jersey in order to state a cause of action, pursuant to the NJCFA.

*2. Warranty Period*

Next, Defendant argues that Plaintiff cannot maintain a NJCFA claim because Plaintiff's "camera performed beyond the warranty period."(Def.'s Br. in Supp. of Mot. to Dismiss 2.) However, Defendant confuses the import of Plaintiff's allegations. As this Court has explained *supra* in Section III, A of this Opinion, many of Plaintiff's arguments pertain to the time limitations expressed in the warranties. Plaintiff claims that such limitations are unconscionable. (*See* First Am. Compl. ¶ 38); (*see also* Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss 28.) Plaintiff's same allegations pertaining to contractual unconscionability underlie her NJCFA claim. As noted above, these allegations provide an exception to the defense that the camera performed beyond

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 4591281 (D.N.J.)
**(Cite as: Slip Copy, 2007 WL 4591281)**

the warranty period. Therefore, this Court holds that such allegations are sufficient to survive Defendant's motion to dismiss.

*3. Economic Loss Doctrine*

Third, Defendant argues that Plaintiff's NJCFA claim fails because the claim "arises only out of an alleged nonfulfillment of Defendant's warranty."However, as Plaintiff notes, and this Court explains *supra* in Section III, A of this Opinion, "[t]he Defendant misinterprets Plaintiff's NJCFA claims...."(*Id.* at ¶ 19.)

When alleging a claim under the NJCFA, a plaintiff must allege "substantial aggravating circumstances." *See Suber v. Chrysler Corp.,* 104 F.3d 578, 582 (3d Cir.1997); *see also Cox,* 647 A.2d at 462. In *Suber,* the Third Circuit held that the plaintiff alleged sufficient aggravating circumstances to withstand a motion to dismiss. *Id.* at 581.In that case, the plaintiff brought suit for alleged suspension defects in his Dodge Ram 250 Conversion van. *Id.* The plaintiff alleged that the defendant's representative and a dealership employee both acknowledged defects in the van's suspension, but later wrote a contradictory official report. *Id.* at 581 & 587.The plaintiff further alleged that the defendant had knowledge of such defects. *Id.* at 587.The court held that such "allegations [ ], if proven, could constitute substantial aggravating circumstances, such that we cannot find that recovery is precluded to a legal certainty."*Id.*

**\*10** The same is true here. Plaintiff alleges that Defendant knew about, and actively concealed, the alleged defect in the FinePix 3800. (First Am. Compl. ¶ ¶ 2, 28, 53, 55-56.) Plaintiff also alleges that Defendant "misrepresented material facts relating to the character and quality of the FinePix 3800."(*Id.* at ¶ 54) (*see also id.* at ¶¶ 17(a), (d)-(e), 34, 54.)Finally, Plaintiff alleges that Defendant "committed [such] acts and omissions [with] actual malice and ... wanton and willful disregard of persons, including Plaintiff and Class members, who

foreseeably might be harmed by those acts and omissions."(*Id.* at ¶ 30.)These allegations could constitute substantial aggravating circumstances, if proven. The pleading requirement, pursuant to the economic loss doctrine, is met.

*4. Sufficient Particularity*

Finally, Defendant argues that Plaintiff does not plead the NJCFA claim with sufficient particularity, as required by Fed.R.Civ.P. 9(b). However, a liberal reading of Plaintiff's Complaint suggests that Plaintiff's NJCFA claim pertains to contractual unconscionability, rather than fraud.[FN6]Plaintiff is not required to meet the higher pleading standard for claims alleging fraud. Fed.R.Civ.P. 9(b) (stating that "[i]n all averments of *fraud* or *mistake,* the circumstances constituting *fraud* or *mistake* shall be stated with particularity.") (emphasis added).

> FN6. To the extent that Plaintiff attempts to plead fraud, pursuant to the NJCFA, she fails to meet her burden. Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."FED.R.CIV.P. 9(b)."To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."*Frederico v. Home Depot,* 507 F.3d 188, 2007 U.S.App. LEXIS 26144, at *28 (3d Cir. Nov. 9, 2007); *see also In re Ins. Brokerage Antitrust Litig.,* No. 04-5184, 2007 U.S. Dist. LEXIS 73220, at *49 (D.N.J. Sept. 28, 2007).

> Plaintiff alleges that she purchased her camera on January 5, 2003 from a Circuit City store, and that the camera contained a defective internal memory. (First Am. Compl. ¶ 9) Plaintiff also claims that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the charging circuit for the internal battery causes it to overcharge and corrode ... [and that] the internal circuitry causes the electric current being drawn from the internal battery ... to discharge the internal battery too deeply because there is not a proper circuit and governor on the circuit limiting this discharge....

(*Id.* at ¶ 4.) Further Plaintiff claims that she "noticed Defendants of the failure, demanding that Defendant cure[, and that] Defendant refused to fix the camera without payment by the Plaintiff ."(*Id.* at ¶ 9.) However, Plaintiff does not allege who she spoke with, or when and where this conversation took place.

In addition, Plaintiff alleges that Defendant knew or should have known of the defect because several complaints were listed on various websites.(*Id.* at ¶¶ 29, 31.)However, Plaintiff does not allege that Defendant, or anyone employed with Defendant viewed such websites.

While Plaintiff alleges that Defendant fraudulently concealed the defects in the FinePix 3800 cameras (*id.* at ¶ 28), she provides no additional information regarding such allegations. Instead, Plaintiff uses conclusory language to advance her assertions. (*See id.* at ¶ 24) (stating that "Plaintiff alleges specifically and with particularity ..."). However, this Court "need not credit a complaint's ... 'legal conclusions' when deciding a motion to dismiss."*Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997).

Therefore, if Plaintiff had intended to plead a fraud claim, such claim has not been pled with the requisite particularity. Plaintiff may seek leave from this Court to file an amended complaint, specific-

ally pleading a fraud claim, if she so chooses.

Therefore, Plaintiff has pleaded her NJCFA claim sufficiently to put Defendant on notice of the claims against it. *Twombly,* 127 S.Ct. at 1964.

**D. Breach of Contract**

Defendant argues that "Plaintiff has no claim for breach of contract ... because the FAC fails to plead the privity necessary to bring a breach of contract claim."(Def.'s Br. in Supp. of Mot. to Dismiss 3.) Plaintiff claims that "she entered into contract and warranty agreements with Defendant[ ], that she has satisfied her obligations under these contracts, warranties and agreements[,] and Defendant has failed to so perform and breached said agreements."(Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss 30.)

"To establish a breach of contract claim, a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result."*Murphy v. Implicito,* 920 A.2d 678, 689 (N.J.Super.Ct.App.Div.2007).

Plaintiff has met her burden in pleading a breach of contract claim. First, Plaintiff alleges a contractual relationship with FujiFilm through the written warranty and specifications included with her purchase of the FinePix 3800.[FN7] (*See* First Am. Compl. ¶¶ 23, 38); (*see also id.*Ex. A.) Second, Plaintiff claims that Defendant failed to perform its obligations, pursuant to the warranty and specifications, in a number of ways. Plaintiff avers that: 1) the camera did not function as provided by the listed specifications, 2) Defendant concealed a known defect, and 3) Defendant failed to honor the warranty. (*Id.* at ¶¶ 23, 28, 38 and 58.)Third, Plaintiff alleges that she "and Class members satisfied their obligations under these contracts and agreements."(*Id.* at ¶ 59.)Finally, Plaintiff alleges "the loss of the bene-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 4591281 (D.N.J.)
(Cite as: Slip Copy, 2007 WL 4591281)

fit of the bargain," or in other words, the $399 paid for the camera, as well as additional damages to be determined at trial. (*Id.* at ¶¶ 9, 23, 28, 61 and Prayer for Relief.)

> FN7. Even if Plaintiff had not alleged such a contractual relationship with Defendant, Plaintiff's breach of contract claim would still survive dismissal. "The lack of a contractual relationship or privity does not automatically defeat a claim. As Judge Pressler noted in *Ranier v. Frieman,* 682 A.2d 1220, 1222-23 (N.J.Super.Ct.App.Div.1996), the Supreme Court has effectively eliminated privity as a prerequisite for the imposition of liability. The existence of a duty is defined not by the contractual relationship between the parties but, rather, by consideration of foreseeability and fairness."*Zielinski v. Prof'l Appraisal Assocs.,* 740 A.2d 1131, 1134 (N.J.Super.Ct.App.Div.1999). Plaintiff has clearly alleged that "FUJIFILM committed acts and omissions which were actuated by actual malice and accompanied by a wanton and willful disregard of persons, including Plaintiff and Class members, who foreseeably might be harmed by those acts and omissions."(First Am. Compl. ¶ 30.) Plaintiff's allegations adequately allege reliance upon Defendant's written warranty and specifications, such that it is foreseeable that a purchaser would be harmed by Defendant's alleged concealment of a known defect.

*11 Plaintiff has alleged each of the requirements necessary to state a cause of action for breach of contract. This count shall survive dismissal.

## E. Breach of Implied Covenant of Good Faith and Fair Dealing

Finally, Defendant argues that Plaintiff's breach of the implied covenant of good faith and fair dealing

claim fails "because the facts alleged in the FAC do not fit into any of the three categories for recognition of such a claim under New Jersey law."(Def.'s Br. in Supp. of Mot. to Dismiss 3.) Plaintiff argues that she has pled sufficiently a claim for breach of the implied covenant by alleging that Defendant "acted in *bad faith* by selling digital cameras it knew were defective."(Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss 29) (emphasis in original).

"[E]very contract imposes on each party the duty of good faith and fair dealing in its performance and its enforcement."*Pickett v. Lloyd's & Peerless Ins. Agency, Inc.,* 621 A.2d 445, 450 (N.J.1993). The implied covenant therefore ensures that "neither party to a contract shall injure the right of the other to receive the fruits of the agreement."*Onderdonk v. The Presbyterian Homes of N.J.,* 425 A.2d 1057, 1062 (N.J.1981).

New Jersey case law has recognized the potential for such an independent cause of action based upon the covenant of good faith and fair dealing in three situations: (1) to allow the inclusion of additional terms and conditions not expressly set forth in the contract, but consistent with the parties' contractual expectations; (2) to allow redress for a contracting party's bad-faith performance of an agreement, when it is a pretext for the exercise of a contractual right to terminate, even where the defendant has not breached any express term; and (3) to rectify a party's unfair exercise of discretion regarding its contract performance.

*Barrows v. Chase Manhattan Mortgage Corp.,* 465 F.Supp.2d 347, 365 (D.N.J.2006).

Plaintiff has alleged breach of the implied covenant of good faith and fair dealing, pursuant to category two, listed above. Throughout the Complaint, Plaintiff alleges that Defendant acted in bad faith. Plaintiff claims that Defendant had knowledge of a defect in the FinePix 3800, and yet continued to sell this camera. (First Am. Compl. ¶¶ 2, 7-8, 24-25, 29). Plaintiff also alleges that Defendant fraudulently concealed such defect (*id.* at ¶ 28, 30), and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 4591281 (D.N.J.)
(Cite as: Slip Copy, 2007 WL 4591281)

"misrepresented the character and quality of the FinePix 3800"(*id.* at ¶ 3). Finally, Plaintiff specifically states that

FUJIFILM breached those implied covenants by selling Plaintiff and Class members digital cameras that were inherently defective in *bad faith* with knowledge that the contract and/or warranties were unconscionable and by abusing its discretion in its performance of the contract by intentionally subjecting Plaintiff and Class Members to a risk [the defect] beyond one they would have contemplated at the time of purchasing the camera....

**\*12** .... FUJIFILM also breached those implied covenants by not providing terms in the contract and/or warranty that conspicuously stated to the Plaintiff and Class Members that the internal battery would fail and the camera would not be able to provide the approximately 320 or more frames with the new external batteries that it states in the camera's specifications.

(*Id.* at ¶¶ 66-67) (emphasis added).

Plaintiff has alleged sufficiently a breach of the implied covenant of good faith and fair dealing.

## IV. *CONCLUSION*

For the reasons stated above, the motion of Defendant Fujifilm U.S.A., Inc. to dismiss, pursuant to FED.R.CIV.P. 12(b)(6), is denied.

D.N.J.,2007.
Payne v. Fujifilm U.S.A., Inc.
Slip Copy, 2007 WL 4591281 (D.N.J.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 7

Slip Copy                                                                    Page 1
Slip Copy, 2007 WL 2462624 (D.N.J.)
**(Cite as: Slip Copy, 2007 WL 2462624)**

**C**

McGee v. Continental Tire North America, Inc.
D.N.J.,2007.
Only the Westlaw citation is currently available.NOT FOR PUBLICATION
United States District Court,D. New Jersey.
William W. McGEE, on behalf of himself and others similarly situated, Plaintiff,
v.
CONTINENTAL TIRE NORTH AMERICA, INC.,
Defendant.
**Civ. No. 06-6234 (GEB).**

Aug. 27, 2007.

Cary L. Flitter, Lundy, Flitter, Beldecos & Berger, PC, Marlton, NJ, for Plaintiff.
Dennis M. Reznick, Eric Francis Gladbach, Edwards, Angell, Palmer & Dodge, LLP, Short Hills, NJ, for Defendant.

### MEMORANDUM OPINION

BROWN, Chief Judge.
**\*1** This matter comes before the Court upon defendant Continental Tire North America, Inc.'s ("CTNA") motion to dismiss plaintiff William McGee's Magnunson-Moss Warranty Act, 15 U.S.C. §§ 2301 et seq. ("MMWA") and declaratory relief claims. The Court has jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). The Court, having considered the parties' submissions and decided the matter without oral argument pursuant to Federal Rules of Civil Procedure Rule 78, and for the reasons set forth below, will deny CTNA's motion.

### I. BACKGROUND

McGee initiated this consumer class action on behalf of all persons who purchased CTNA's ContiSeal model tires since 2004. (Plaintiff's Brief at 1). The Complaint alleges that the ContiSeal model tires are defective in design, materials and work-

manship because they wear prematurely and abnormally. *Id.* McGee asserts four claims on behalf of the class: (1) violation of the MMWA; (2) breach of express warranty; (3) breach of implied warranty; and (4) declaratory relief. McGee also asserts one claim on behalf of the New Jersey state subclass: violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 et seq. *Id.*The declaratory relief claim requests in relevant part that the Court enter an order declaring CTNA's conduct unlawful, and directing CTNA to compensate the class members and to issue a notice to the class members informing them that they have a right to a free set of replacement tires. Complaint ¶ 69(b).

In the present motion, CTNA seeks to dismiss McGee's MMWA and declaratory relief claims. Briefing on the matter now complete, the Court will address the pending motion.

### II. DISCUSSION

### A. Standard of Review

Pursuant to Federal Rules of Civil Procedure Rule 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. Previously, a motion to dismiss would be granted "only if it appear[ed] that the plaintiff[ ] could prove no set of facts that would entitle [him] to relief."*Watson v. Abington Twp.,* 478 F.3d 144, 150-51 (3d Cir.2007) (internal quotations omitted). In *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955 (2007), the Supreme Court changed the standard, stating that the " 'no set of facts' language has been questioned, criticized, and explained away long enough.... [T]his famous observation has earned its retirement."*Twombly,* 127 S.Ct. at 1969. According to the Supreme Court, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2462624 (D.N.J.)
**(Cite as: Slip Copy, 2007 WL 2462624)**

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do....."*Id.* at 1964-65 (internal quotations omitted)."Factual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)...."*Id.* at 1965.

**B. Magnunson-Moss Warranty Act**

**1. The Parties' Arguments**

**\*2** CTNA argues that this Court does not have subject matter jurisdiction over the MMWA claim because McGee failed to sufficiently plead two out of the three jurisdictional requirements delineated in Section 2310(d)(3). (Defendant's Brief at 3-7). Specifically, CTNA argues that the Complaint does not name at least 100 plaintiffs and does not properly allege that the amount in controversy is at least $50,000. *Id.* at 4.

CTNA also disagrees with McGee's argument that Section 1332(d)(2) of CAFA creates an alternative basis of federal jurisdiction over the MMWA claim. (Defendant's Reply at 2-7). CTNA argues that the Court should decline to interpret CAFA in this way for two reasons: First, the Third Circuit Court of Appeals has held that a statute " 'dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum.' " *Id.* at 6 (quoting *Feidt v. Owens Corning Fiberglas Corp.,* 153 F.3d 124, 130 (3d Cir.1998). CTNA reasons that because the MMWA is a narrow statute and CAFA is a general statute enacted at a later date, the former cannot be submerged by the latter. *Id.* at 4. Second, there is no discussion or suggestion in CAFA or its legislative history that Congress intended to overrule, amend or modify the MMWA. *Id.* at 6-7.

McGee does not dispute that his claim fails to meet all of MMWA's jurisdictional requirements. (Plaintiff's Brief at 2-6). However, he argues that federal jurisdiction over his MMWA claim is based

on CAFA, which merely requires minimal diversity of citizenship and that the aggregate class claims exceed $5,000,000. *Id.* at 2 fn. 1. McGee argues that his MMWA claim meets CAFA's requirements because the parties are of diverse citizenship and the class members' aggregate claims exceed $5,000,000 since CTNA's sale of 35,000 ContiSeal tires in the United States since 2004 at $142 per tire totals $4,970,000 and the plaintiffs' attorneys fees exceed $30,000. *Id.* at 5. McGee also cites to numerous decisions from other courts that have held that CAFA provides an alternate basis of federal jurisdiction over MMWA claims, including *Chavis v. Fidelity Warranty Services, Inc.,* 415 F.Supp.2d 620 (D.S.C.2006); *Brothers v. Hewlett-Packard Co.,* 2007 WL 485979 (N .D.Cal. Feb. 12, 2007); *Clark v. Wynn's Extended Care,* 2007 WL 922244 (N.D.Ill. March 23, 2007); and *McWhorter v. Elsea, Inc.,* 2007 WL 1101249 (S.D. Ohio April 11, 2007).*Id.* at 3-4;*see also* (Plaintiff's April 25, 2007, Notice of Supplemental Authority).

**2. Applicable Law**

Congress enacted the MMWA in 1975 "to protect the purchasers of consumer goods from deceptive warranty practices."*Miller v. Willow Creek Homes, Inc.,* 249 F.3d 629, 630 (7th Cir.2001). In limited circumstances, it permits a consumer to file a state-law warranty claim in federal court, even when the parties are not of diverse citizenship. *Chavis,* 415 F.Supp.2d at 622. Section 2310(d), which is the statutory provision allowing such suits, delineates the following jurisdictional requirements:

**\*3** (1) ... a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief-

(A) in any court of competent jurisdiction in any State or the District of Columbia; or

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2462624 (D.N.J.)
(Cite as: Slip Copy, 2007 WL 2462624)

(B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection.

....

(3) No claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection-

(A) if the amount in controversy of any individual claim is less than the sum or value of $ 25;

(B) if the amount in controversy is less than the sum or value of $ 50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or

(C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

One stated rationale for these limitations is the desire "to avoid trivial or minor actions being brought as class actions in the federal district courts."*Novosel v. Northway Motor Car Corp.,* 460 F.Supp. 541, 543-44 (N.D.N.Y.1978).

Congress enacted CAFA in 2005 to expand federal court jurisdiction over class actions. S.Rep. No. 109-14, at 42 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 40. CAFA's jurisdictional provision, Section 1332(d), states:

(2) The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $ 5,000,000, exclusive of interest and costs, and is a class action in which-

(A) any member of a class of plaintiffs is a citizen of a State different from any defendant;

(B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or

(C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

Section 1332(d)(6) adds that the class members' claims can be aggregated to determine the sum or value of the matter in controversy.

Recently, various district courts have interpreted CAFA as "an alternate basis by which federal courts may become courts of 'competent jurisdiction' under [the MMWA]."*Chavis,* 415 F.Supp.2d at 626. *Chavis* is the seminal case addressing this issue. In reconciling CAFA with the MMWA, *Chavis* noted that a firmly embedded principle of statutory construction requires courts to presume that Congress enacts legislation with knowledge of the existing law and, consequently, that the newly-enacted statute is harmonious with the existing law. *Id. Chavis* reasoned that Congress must have been aware of MMWA's limited jurisdictional provisions and intended to expand them with CAFA. *Id. Chavis* concluded that this interpretation was logical in light of the fact that CAFA's legislative history clearly indicates the congressional intent to expand federal jurisdiction over class actions. *Id.*

*4 Subsequently, the United States District Court for the Northern District of California adopted the *Chavis* decision in *Brothers,* 2007 WL 485979, * at 8. *Brothers* harmonized CAFA and the MMWA by noting that the MMWA expressly contemplates alternative jurisdiction "in any court of competent jurisdiction" and CAFA provides the means by which "alternative jurisdiction" may be obtained. *Id.* As McGee pointed out in his moving papers, two recent federal court decisions have adopted *Chavis'* reasoning also: *Clark,* 2007 WL 922244, at *4-5; and *McWhorter,* 2007 WL 1101249, at 10.

### 3. The MMWA Claim is not Subject to Dismissal

The Court will not dismiss the MMWA claim at this time. Because the MMWA expressly contemplates alternative jurisdiction "in any court of competent jurisdiction" and the Congress intended for CAFA to expand federal court jurisdiction over class actions, the Court finds that CAFA provides an alternate basis of jurisdiction for MMWA

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2462624 (D.N.J.)
**(Cite as: Slip Copy, 2007 WL 2462624)**

claims. However, the Court also finds that McGee has failed to plead CAFA's amount in controversy requirement.

CAFA requires that the class members' aggregate claims exceed $5,000,000. The sole reference in the Complaint to the amount of damages incurred by any plaintiff is McGee's allegation that he paid $333.21 for a full set of replacement tires. Complaint ¶ 33. In his opposition brief, McGee alleges for the first time that the aggregate claims exceed $5,000,000 because CTMA's tire sales total $4,970,000 and the plaintiffs' attorney's fees are bound to exceed $30,000. (Plaintiff's Brief at 5). McGee does not cite to any documents in support of his allegations. It is not clear how he arrived at these figures, and accusations in moving papers cannot compensate for the insufficiency of the Complaint. As the "master of the complaint," McGee is required to plead all of the necessary jurisdictional facts to establish subject matter jurisdiction.*Caterpillar Inc. v. Williams,* 482 U.S. 386, 398-99 (1987). Pursuant to Federal Rules of Civil Procedure Rule 8(a), jurisdiction must be pleaded in the complaint and "subsequent oral or written reference to claimed sources of jurisdiction do not suffice."*Matherly v. Lamb,* 414 F.Supp. 364, 366 (D.Pa.1976). The Court will permit McGee to file an amended complaint within thirty (30) days from the date of this Opinion that complies with CAFA's jurisdictional requirements. Provided McGee does so, the Court will retain jurisdiction over his MM-WA claim.

## C. Declaratory Relief

### 1. The Parties' Arguments

CTNA argues that declaratory relief is inappropriate here because the Court must resolve whether the ContiSeal tires are defective before it can declare the parties' rights under the warranty. (Defendant's Brief at 7). CTNA also argues that there is no legal precedent for McGee's demand for a declaration requiring CTNA to recall and replace the tires. *Id.* at

7-8 (citing *Leslie v. United States,* 986 F.Supp. 900, 913 (D.N.J.1997); *Padilla v. Black & Decker Corp.,* 2005 WL 697489, *5 (E.D.Pa. March 24, 2005); *Boyer v. Case Corp.,* 1998 WL 205695, *2 (E.D. Pa. April 28, 1998); *Nat'l Women's Health Network v. A.H. Robins Co., Inc.,* 545 F.Supp. 1177, 1180 (D.Mass.1982)).

*5 McGee argues that his entitlement to declaratory relief should not be resolved at the motion to dismiss phase. (Plaintiff's Brief at 7-8). He points out that the Court should permit the parties to present evidence and arguments framing the request for declaratory relief before deciding whether to grant it. *Id.* He also argues that declaratory relief will be useful to resolve the parties' dispute over the interpretation of CTNA's warranty. *Id.* at 6-7.Third, McGee disagrees with CTNA's argument that it would be improper for a factfinder to first resolve whether the tires are defective and then decide whether the declaratory relief is an appropriate remedy. *Id.* at 8-9.

### 2. Applicable Law

The Declaratory Judgment Act, 28 U.S.C. § 2201, vests a federal court with the authority to order declaratory relief. It provides:

In a case of actual controversy within its jurisdiction, ... a court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not such relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

The phrase "case of actual controversy" indicates that this Act applies only to cases that are justiciable pursuant to Article III of the Constitution.*MedImmune, Inc. v. Genentech, Inc.,* 127 S.Ct. 764, 771 (2007). To meet this requirement, a case must be, " 'definite and concrete, touching the legal relations of parties having ad-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2462624 (D.N.J.)
(Cite as: Slip Copy, 2007 WL 2462624)

verse legal interests'; and that it be 'real and substantial' and 'admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " *Id.* (quoting *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240-41 (1937)). The Third Circuit Court of Appeals has phrased this standard as a three-prong test that requires a plaintiff to establish that the parties have adverse interests, that the declaratory judgment will be conclusive and that the judgment will have practical utility.*Step-Saver Data Systems, Inc. v. Wyse Technology,* 912 F.2d 643, 647 (3d Cir.1990).

A district court has " 'unique and substantial discretion in deciding whether to declare the rights of litigants.' " *MedImmune,* 127 S.Ct. At 776 (quoting *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286 (1995)). This is so because the district court is presented with facts during the litigation that indicate whether a declaratory judgment will be a useful remedy and whether the case is fit for resolution. *Id.*

### 3. The Declaratory Judgment Claim is not Subject to Dismissal

The Court concludes that dismissal of the declaratory judgment claim would be inappropriate at this early stage in the litigation. CTNA's concern that the declaratory judgment claim depends on an issue that has yet to be determined-i.e., whether the tires are defective-is insufficient to necessitate dismissal, particularly because this issue will be resolved in this action. If the factfinder determines that the tires are defective, then the Court will consider whether the requested declaratory relief is an appropriate remedy. Therefore, the declaratory relief will not depend on a future or contingent event. Also, the Court is not persuaded by CTNA's argument that McGee's request for a recall and replacement is unprecedented. The cases CTNA cites to do not govern this action. In *Leslie,* this Court declined to order a recall because no tort duty was undertaken by the manufacturer. 986 F.Supp. at 912-13. By con-

trast, in this action McGee argues that CTNA did undertake a duty to the class members by issuing the warranty. Also, the *Padilla* and *Boyer* decisions are not controlling because these held that there is no duty to recall under Pennsylvania state law. CNTA merely highlights the need for further arguments and evidence on this issue before the Court can decide whether a recall and replacement is an appropriate remedy in this action.

### III. CONCLUSION

*6 For these reasons, CTMA's motion to dismiss is denied. McGee is ordered to file an amended complaint in accordance with the requirements described on page 7 *supra* within thirty (30) days from the date of this Opinion. An appropriate form of order is filed herewith.

D.N.J.,2007.
McGee v. Continental Tire North America, Inc.
Slip Copy, 2007 WL 2462624 (D.N.J.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 8

Westlaw.

Slip Copy                                                    Page 1
Slip Copy, 2007 WL 485979 (N.D.Cal.), 62 UCC Rep.Serv.2d 76
(Cite as: Slip Copy, 2007 WL 485979)

**H**

Brothers v. Hewlett-Packard Co.
N.D.Cal.,2007.

United States District Court, N.D. California,
San Jose Division.
Michael BROTHERS, an individual, Gregory
McDaniel, an individual, on behalf of themselves
and all others similarly situated, Plaintiffs,
v.
HEWLETT-PACKARD CO., Defendant.
**No. C-06-02254 RMW.**

Feb. 12, 2007.

Robert S. Green, Kamon D Naddaf, Jenelle
Welling, for Plaintiffs.
Thomas R. Green, for Defendant.

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT

RONALD M. WHYTE, United States District
Judge.

*1 Defendant Hewlett-Packard Co. ("HP") moves
to dismiss plaintiffs Michael Brothers's
("Brothers") and Gregory McDaniel's ("McDaniel)
Second Amended Complaint ("SAC") pursuant to
Fed.R.Civ.P. 12(b)(6) for failure to state a claim.
Plaintiffs oppose the motion. The court heard oral
argument on the motion on Friday, February 2,
2007. The court has read the moving and opposing
briefs and considered the arguments of counsel. For
the reasons set forth below, the court grants in part
and denies in part defendant's motion to dismiss.
Brothers's claims for breach of warranty based on
the Limited Warranty and Technical Support docu-
ment are dismissed with prejudice. Plaintiffs' fourth
claim for relief is stricken pursuant to Fed.R.Civ.P.
12(f). Defendant's motion is denied as to the re-
maining claims.

## I. BACKGROUND

### A. Procedural History

On October 31, 2006 this court granted defendant's
motion to dismiss Brothers's initial complaint and
denied defendant's motion to strike portions of the
complaint. *See* Order of October 31, 2006 Granting
Defendant's Motions to Dismiss and Denying De-
fendant's Motion to Strike ("October 31, 2006 Or-
der"). Prior to the court's issuance of the October
31, 2006 Order, plaintiffs filed a first amended
complaint, which plaintiffs withdrew after the order
was issued. The SAC adds plaintiff McDaniel and
five additional claims for relief.

### B. Factual Allegations

HP manufactures, sells, and services, *inter alia,*
notebook computers throughout the United States,
including the "Pavilion zd7000" line of notebook
computers (collectively, the "Pavilion"). SAC ¶¶
7-8. Brothers is a resident of Nevada and McDaniel
is a resident of Washington. *Id.* ¶¶ 1, 2.

On August 24, 2004 Brothers purchased a Pavilion
zd7260us with an nVidia 5700 equipped mother-
board from Circuit City, paying "over $2,000." *Id.*
¶ 40.Brothers alleges that in August 2005 the dis-
play screen began showing red vertical lines, went
blank, and ultimately would not turn on. *Id.* at ¶
42.At the time, Brothers's computer was still sub-
ject to the Limited Warranty and Technical Support
document ("Limited Warranty") that accompanied
the purchase of his computer. Brothers contacted
HP and received "in-warranty" repairs, essentially a
replacement of the motherboard with another
motherboard similarly equipped with the nVidia
5700 GPU. *Id.* ¶ 44.Five months later, Brothers's
Pavilion notebook again overheated and the display
screen exhibited "graphics distortion." *Id.* ¶
46.Brothers called HP and requested that his note-
book be repaired. *Id.* ¶ 47.At this time, Brothers's
Pavilion was apparently no longer under warranty.
HP informed Brothers that his notebook was no

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 485979 (N.D.Cal.), 62 UCC Rep.Serv.2d 76
(Cite as: Slip Copy, 2007 WL 485979)

longer under warranty and that he could either (1) pay $300 to repair the problem or (2) purchase an extended warranty. *Id.* ¶ 48.

McDaniel purchased a Pavilion "zd7000 (CTO)" notebook computer on May 9, 2004 from HP along with a three-year service contract ("Care Pack Service Contract").*Id.* ¶¶ 49, 50.In July of 2006 McDaniel's computer display "appeared corrupted, began showing red vertical lines and refused to boot into any video mode using the nVidia GeForce FX 5700 GPU."*Id.* ¶ 51.On July 11, 2006 McDaniel called HP's technical support. *Id.* ¶ 52.HP's customer service web site indicated that the notebook would be returned to McDaniel on July 24, 2006. *Id.* ¶ 53.On approximately July 24, 2006 McDaniel contacted HP about his notebook and was informed that "he would have to wait indefinitely for a motherboard with the integrated nVidia 5700 GPU."*Id.* ¶ 54.HP suggested that McDaniel either accept a downgraded replacement motherboard or wait 30 days, after which HP might consider replacing his defective computer. *Id.* McDaniel informed HP that neither suggestion was acceptable. *Id.* On approximately August 9, 2006 HP returned McDaniel's computer with a replacement motherboard equipped with an nVidia 5700 GPU. *Id.* ¶ 56.On August 27, 2006 McDaniel's notebook failed again. *Id.* ¶ 57.McDaniel initiated a service claim with HP on August 28, 2006 and was informed that if the nVidia 5700 GPU was not in stock HP would contact him to authorize a downgraded nVidia GPU.*Id.* ¶ 58.McDaniel alleges that HP refused to honor the three-day turnaround and did not return his computer for eight days. *Id.* ¶¶ 59-60.Although McDaniel alleges that he informed the customer service representative that he did not agree to a downgraded motherboard, HP repaired his notebook by installing an ATI GPU equipped motherboard, rather than the zd7000 series.*Id.* ¶ 61.McDaniel alleges "[w]hile the ATI GPU functions, it does not deliver the performance [he] was promised when he purchased his zd7000."*Id.*

**\*2** The Limited Warranty is a standard one-year

warranty that HP offers with each Pavilion. It provides in part: "HP warrants that the HP hardware product and all internal components of the product that you have purchased or leased from HP are free from defects in materials and workmanship under normal use during the Limited Warranty Period" and "During the Limited Warranty Period, HP will repair or replace the defective component parts or hardware products ."*Id.* ¶¶ 37-38.In addition, HP offers the Care Pack Service Contract, an extended warranty which customers can purchase separately, and which provides, *inter alia,* express repairs within three business days. *Id.* ¶ 39.In addition, HP has in some instances replaced the notebook for Pavilion owners, typically a zd8000 series computer.[FN1] *Id.* ¶ 35.

> FN1. Although plaintiffs' initial complaint alleged that HP replaces the computers for customers who have had repeated repairs within warranty, plaintiffs now allege that HP replaces computers for those customers who are "persistent enough."

According to the complaint, in February 2006 HP issued an internal "Service Coverage Notice" that the "SPS-BD SYSTEM NV36/128 MB 365894-001" and "SPS-BD SYSTEM NV36/64MB 365893-001" are "experiencing a high rate of failure."*Id.* ¶ 23.Plaintiffs allege that the SPS-BD SYSTEM NV36/128 MB 365894-001 and SPS-BD SYSTEM NV36/64MB 365893-001 are the identical motherboards HP installed in the Pavilions at issue. *Id.* ¶ 25.

**C. Claims for Relief**

Plaintiffs' SAC asserts seven claims for relief: (1) breach of warranty in violation of the Magnuson-Moss Act, 15 U.S.C. § 2301 *et seq.,* (2) breach of service contract in violation of the Magnuson-Moss Act, 15 U.S.C. § 2301*et seq.,* brought by plaintiff McDaniel (3) breach of Cal. Com.Code § 2313(1)(b), (4) breach of Cal. Com.Code § 2313(1)(a), (5) common law breach of express war-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 485979 (N.D.Cal.), 62 UCC Rep.Serv.2d 76
(Cite as: Slip Copy, 2007 WL 485979)

ranty, (6) violation of Cal. Bus. & Prof.Code § 17200*et seq.* based on unlawful conduct, and (7) violation of Cal. Bus. & Prof.Code § 17200*et seq.* based on unfair conduct. Plaintiffs essentially seeks restitution and disgorgement, actual damages, repair or replacement of the zd7000, and any statutory remedies.FN2

> FN2. The initial complaint asserted that HP's conduct violated Cal. Bus. & Prof.Code § 17200*et seq.* and that HP breached its express warranty.

## II. ANALYSIS

### A. Legal Standard

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Dismissal can be based on the "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."*Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988). The issue is not whether the non-moving party will ultimately prevail but whether it is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir.1997). When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Barron v. Reich,* 13 F.3d 1370, 1374 (9th Cir.1994). A court must not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."*Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *see also United States v. Redwood City,* 640 F.2d 963, 966 (9th Cir.1981). However, the court is not required to accept conclusory legal allegations "cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."*Clegg v. Cult Awareness Network,* 18 F.3d 752, 754-55 (9th Cir.1994).

### B. Breach of Express Warranty

*3 Plaintiffs' first through fifth claims for relief assert breach of warranty.

### 1. Limited Warranty and Technical Support Document

Plaintiffs' fifth claim asserts a common law breach of express warranty. Brothers received the one year Limited Warranty with his purchase of a Pavilion notebook. Plaintiffs allege that HP promised in its Limited Warranty (1) "that the HP hardware product and all the internal components of the product ... are free from defects in materials or workmanship under normal use during the Limited Warranty Period" and (2) "During the Limited Warranty Period, HP will repair or replace the defective component parts or the hardware product."SAC ¶ ¶ 128-130. Plaintiffs contend that HP breached these warranties because the internal components of Brothers's Pavilion were "not free from defects in materials or workmanship under normal use" and because HP "fail[ed] to repair or replace the products as promised."*Id.* ¶¶ 133, 135.

HP first argues that Brothers's claim fails for lack of privity of contract. HP cites *Burr v. Sherwin Williams Co.,* 42 Cal.2d 682, 695-97 (1954), for the proposition that as a general rule privity is required in an action for breach of express warranty. In *Burr,* the court held that the trial court erred in instructing the jury that privity is not a requirement for *implied* warranties between a manufacturer and a subsequent purchaser. *Id.* at 696.Although the court observed that, in general, privity is a requirement for both express and implied warranty claims, the court's holding did not address express warranties. In *Seely v. White Motor Co.,* 63 Cal.2d 9, 14 (1965), the court, citing *Burr,* concluded that no privity of contract was necessary between the manufacturer and a subsequent purchaser because "there was an express warranty to plaintiff in the purchase order" from the manufacturer. Privity appears to remain a general requirement in breach of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 485979 (N.D.Cal.), 62 UCC Rep.Serv.2d 76
**(Cite as: Slip Copy, 2007 WL 485979)**

express warranty claim. *See All West Elecs., Inc. v. M-B-W, Inc.,* 64 Cal.App. 4th 717, 725 (1998) ("The general rule is that privity of contract is required in an action for breach of either express or implied warranty."); *Cellars v. Pac. Coast Packaging,* 189 F.R.D. 575, 580 (N.D.Cal.1999) ("privity of contract remains a requirement in express warranty actions"); *But see Hauter v. Zogarts,* 14 Cal.3d 104, 115 (1975) ( "Privity is not required for an action based upon an express warranty.").

Although there does not appear to be clear California case law excusing the general privity of contract requirement in the instant case, plaintiffs' claims are more analogous to the facts in *Seely.*Here, plaintiffs are consumers, not merchants who negotiated a contract containing warranties. *See AB Avnet EMG v. Sierra Semiconductor Corp.,* 1993 WL 280504, *5-*6 (N.D.Cal.1993) (dismissing claim of breach of express warranty for lack of privity after distinguishing *Seely* on the basis that it involved consumers and not dealings between two merchants). The Limited Warranty expressly provides that it "applies to the HP branded hardware products sold by or leased from Hewlett-Packard Company, its subsidiaries, affiliates, authorized resellers, or country distributors (collectively referred to in this limited warranty as 'HP')." Def.'s Mot., Ex. at 5. Although Brothers bought his computer from Circuit City rather than directly from HP, HP does not contest that Circuit City is an authorized reseller of the HP Pavilion. The court finds that the terms of the Limited Warranty provide that the representations therein are to the end user of the HP product. *See id.*Therefore, the court does not find that Brothers's breach of express warranty claim is barred by a lack of privity.

*4 HP also argues that Brothers's express warranty claim is time-barred for the same reasons noted in the October 31, 2006 Order. In dismissing plaintiffs' initial complaint, the court noted that "[t]o the extent plaintiff [Brothers] contends that HP failed to repair the defect while his Pavilion notebook was under warranty, it is undisputed that

HP replaced the motherboard at the time, which corrected the asserted screen display problems."Plaintiffs now argue, based on the same factual allegations, that although HP replaced plaintiffs' motherboards with the same type of motherboard, there was a breach because such action was inadequate. *See* Pls.' Opp'n at 4:17-26.

The court finds that Brothers has failed to state a breach of express warranty claim based on the Limited Warranty. Plaintiffs argue that there was no "repair" since HP merely replaced the zd7000 motherboard with another zd7000 motherboard, which is essentially replacing a defective part with another defective part. Plaintiffs further argue whether HP repaired Brothers's notebook is a question of fact for the jury because breach of contract questions are questions of fact. As the court stated in its October 31, 2006 Order, it is undisputed that HP replaced Brothers's motherboard at the time he made his in-warranty service claim, and that the replacement motherboard corrected the asserted screen display problems. Oct. 31, 2006 Order at 12:10-13. Plaintiffs' SAC indicates that HP addressed Brothers's in-warranty service claim by replacing the motherboard with another one similarly equipped with the nVidia 5700 GPU. SAC ¶ 44. Brothers then experienced problems with his notebook five months later. *Id.* ¶ 46.While plaintiffs now make the argument that replacing the failed motherboard with a motherboard equipped with the same GPU was inadequate, replacement or repair of malfunctioning components during the life of the warranty is exactly what the Limited Warranty provides. *See* Def.'s Mot. Ex. at 7. HP could not have breached the Limited Warranty by acting in conformance with it.

Moreover, the Limited Warranty does not guarantee against design defects, it guarantees against defects in materials and workmanship. Based on its express terms, the Limited Warranty essentially promises that HP would not use materials that are defective or substandard workmanship in repairing or replacing parts under warranty. Unlike defects in materi-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

als or workmanship, a design defect is manufac-
tured *in accordance with* the product's intended
specifications. *McCabe v. Am. Honda Motor Co.*,
100 Cal.App. 4th 1111, 1120 (2002) (A design de-
fect "exists when the product is built in accordance
with its intended specifications, but the design itself
is inherently defective."). In addition, plaintiffs'
theory charging a manufacturer with breach of war-
ranty because the replacement part later fails is con-
trary to case law. *See Annunziato v. eMachines,
Inc.*, 402 F.Supp.2d 1133, 1141 (C.D.Cal.2005)
(holding that because "Annunziato's express war-
ranty has expired, ... his claims based on breach of
the express warranty fails as a matter of law" in re-
sponse to plaintiff's argument that the defect is of a
"continuing nature" and not a "subsequent malfunc-
tion"); *cf. Daugherty,* 144 Cal.App. 4th at 832
(concluding based on similar warranty language
that, as a matter of law, "Honda did not agree, and
plaintiffs did not understand it to agree, to repair
latent defects that lead to a malfunction after the
term of the warranty") (internal quotation marks
omitted).

**2. The HP Care Pack Service Contract**

**\*5** McDaniel purchased a Care Pack Service Con-
tract along with his Pavilion. HP argues that
McDaniel's express warranty claim fails because he
has not pled that he was damaged or injured in any
way and the terms of his service contract otherwise
bars his claim. Plaintiffs allege that the Care Pack
Service Contract provides, *inter alia,* that (1)
"turnaround time is 3-business days, which is meas-
ured from the time of logging the call to delivering
the repaired unit to the customer," (2) "service in-
cludes repair or replacement, all parts, labor and the
cost of the return shipment," and (3) HP is oblig-
ated to use "replacement parts and products that are
new or equivalent to new in performance."SAC ¶
84. McDaniel alleges that HP breached the Care
Pack Service Contract because it failed to repair his
computer when it replaced it with the motherboard
and GPU with a motherboard equipped with the
same type of GPU, failed to repair the computer

within the three-business day time frame, and re-
placed the nVidia 5700 GPU with a lower perform-
ing GPU.

HP first argues that HP's failure to repair
McDaniel's computer within three business days
was excused by the express terms of the Service
Contract because it provides that "HP will not be li-
able for performance delays or for nonperformance
due to causes beyond its reasonable control."Def.'s
Mot. Ex. at 1. HP argues that its customer service
representative informed McDaniel that HP did not
have the replacement motherboard in stock, which
HP notes was alleged in plaintiffs' first amended
complaint but omitted in the present operative
SAC. On a motion to dismiss, the court considers
the allegations within the complaint. Based on
McDaniel's allegations, HP failed to provide the re-
pairs within three-business days.

HP also contends that McDaniel's allegations fail to
show a breach of the service contract on the basis
that the repairs of McDaniel's computer took longer
than the promised three-business days because
McDaniel does not allege that he suffered any in-
jury or loss by virtue of the repair taking longer
than three business days. In opposition, McDaniel
argues that the damages element is met by his alleg-
ations that he did not receive the benefit of his bar-
gain. Pls.' Opp'n at 10:24-11:1. As noted above,
McDaniel has adequately alleged that HP breached
the three-day express service provision in the Care
Pack Service Contract, which he purchased directly
from HP. As plaintiffs argued in their opposition
brief and at oral argument, the damage that
plaintiffs allege is that portion of McDaniel's pur-
chase price of the Care Pack Service Contract at-
tributable to the three-day express service provi-
sion. Because plaintiffs do not seek consequential
damages, they need not allege such damages in or-
der to state a breach of warranty claim.

Similarly, McDaniel alleges the Care Pack Service
Contract was breached because HP repaired his Pa-
vilion by installing a lower performing GPU. Based
on the terms of the Care Pack Service Contract, HP

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

was obligated to repair or replace defective parts. Use of an inferior part that results in a lower performing computer does not constitute adequate repair or replacement under the warranty. Accordingly, McDaniel has adequately stated a claim for breach of the Care Pack Service Contract based on HP's replacement of the nVidia 5700 GPU with an inferior GPU without any rebate. HP again argues that McDaniel has not alleged any damages. However, at oral argument, counsel for plaintiffs clarified that plaintiffs do not seek consequential damages for the breach. That is, plaintiffs allege that the damage is the difference in value between the nVidia 5700 GPU and the inferior GPU. Plaintiffs' allegations therefore sufficiently state a claim for breach of the Care Pack Service Contract based on HP's replacement of the nVidia 5700 GPU with an inferior GPU for McDaniel's in-warranty Pavilion.

### 3. Cal. Com.Code §§ 2313(1)(b) and 2313(1)(a)

*6 Plaintiff's third claim asserts that HP breached California Commercial Code § 2313(1)(b). As an initial matter, § 2313 does not appear to create an independent cause of action based on violation of § 2313, but merely defines the types of statements that create an express warranty under California commercial law. *See Hauter v. Zogarts,* 14 Cal.3d 104, 115 (1975) (noting that claim for breach of express warranty is governed by California Commercial Code section 2313 and analyzing claim thereunder). Therefore, the court considers plaintiffs' third and fourth warranty claims as common law breach of warranty claims.

HP argues that none of the statements plaintiffs assert as giving rise to a warranty under § 2313(1)(b) are legally and factually sufficient to give rise to an express warranty under § 2313(1)(b) because each of those statements were previously found by this court to be either "non-actionable puffery" with respect to plaintiff's UCL claim or asserted factual statements for which there are no allegations supporting an inference of falsity at the time

However, § 2313 calls for a different inquiry. Moreover, the court's October 31, 2006 Order did not address an alleged statement of the Pavilion's compatibility with the nVidia 5700 GPU. As the court noted in that order, "[w]hile product superiority claims that are vague or highly subjective often amount to non[-] actionable puffery, ... misdescriptions of specific or absolute characteristics of a product are actionable."Oct. 31, 2006 Order at 7:8-11 (citing *Southland Sod Farms v. Stover Seed Co .,* 108 F.3d 1134, 1145 (9th Cir.1997)).

> FN3. Relying on Cal. Com.Code § 2316, HP also argues that the express disclaimers in its Limited Warranty and Technical Support document bars any claims based on purported express warranties outside of that document. The court is not persuaded. Cal. Com.Code § 2316 provides that "[w]ords or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other."Section 2316 further provides that *implied* warranties may be excluded or modified by specific and conspicuous language to that effect.

Here, plaintiffs claim that HP made statements about product specifications that give rise to express warranties under § 2313. First, HP stated in technical specifications, maintenance and service guides, and other materials provided on or with plaintiffs' computers that the Pavilions at issue "contain [ ] and [are] compatible with the 'NVIDIA GeForce FX Go5700 with 64-MB video memory' and with the 'NVIDIA GeForce FX Go5700 with 128-MB video memory.'" SAC ¶ 95. Second, HP stated in product specifications made available on the Internet and at retailers that the Pavilions at issue have "NVIDIA GeForce GPU with 8X AGP for the most cinematic graphics and special effects."*Id.* ¶ 96.Plaintiffs argue that "HP broke its promise when the graphics cards proved to be incompatible with [p]laintiffs' computers, rendering them inoper-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 485979 (N.D.Cal.), 62 UCC Rep.Serv.2d 76
**(Cite as: Slip Copy, 2007 WL 485979)**

able."Pls.' Opp'n at 16:15-17. California Commercial Code section 2313 provides in relevant part:

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

*7 In *Fundin v. Chicago Pneumatic Tool Co.*, 152 Cal.App.3d 951, 957 (1984), the court concluded that certain statements made in a sales brochure by the manufacturer of a drill rig about the product's specifications constituted representations in "labels and advertising material" actionable under an express warranty theory. There, the sales brochure was alleged to have been disseminated to the public, including the plaintiff. *Id.* The brochure provided product specifications, including that the drill rig had a basic depth rating of 1,800 feet using a 4 1/2 inch diameter drill pipe under favorable drilling conditions. *Id.* The court concluded that these statements created an express warranty under California law that the rig will drill to depths of 1,800 feet using a 4 1/2 inch diameter drill pipe under favorable conditions.*Id.*

Similarly, HP's statements that the Pavilion is compatible with the nVidia GeForce FX Go5700 with 64-MB video memory and with 128-MB video memory create express warranties to consumers of the compatibility of the computer with the nVidia 5700 GPU. As in *Fundin*, the statements here represent a particular product's performance specification based on its design. There, the design was a drill rig that could reach a certain depth if used with a particular type of drill pipe. Here, the design is a notebook computer that could provide a certain

level of graphics functions because of its compatibility with a particular graphics card. Plaintiffs allege that the statements of compatibility were made in HP's technical specification document and maintenance and service brochures made available to the public. These materials are similar to the sales brochure that the *Fundin* court concluded constituted "labels or advertising material." HP argues that *Fundin* is distinguishable because the statements at issue in *Fundin* involved very specific product details. The court is not persuaded by this distinction. The statements at issue here is specific to the Pavilion and identifies the computer's compatibility with a specific graphics card touted elsewhere by HP as providing "the most cinematic graphics and special effects."Accordingly, the court finds that plaintiffs have adequately alleged a common law breach of express warranty claim based on HP's statements that the Pavilions at issue are compatible with the nVidia 5700 GPU.[FN4]

> FN4. As noted above, § 2313 does not create a separate cause of action. Therefore, plaintiffs' allegations state a common law breach of express warranty claim based on HP's representations of the Pavilion's compatibility with the nVidia 5700 GPU and not a breach of § 2313.

HP also argues that even if the statements regarding compatibility constitute express warranties under Cal. Com.Code § 2313, plaintiffs' third claim fails because the Limited Warranty and the Care Pack Service Contract expressly disclaims any warranties other than those contained therein. In California, "[s]trict construction against the person who has both warranted a particular fact to be true and then attempted to disclaim the warranty is especially appropriate in light of the fact that [a] disclaimer of an express warranty is essentially contradictory."*Fundin*, 152 Cal.App.3d at 958. In *Fundin*, the court held that the manufacturer's express warranties in its sales brochure could not be disclaimed or excluded. The court reasoned that "when a product has been expressly described by

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

its manufacturer as having certain detailed capacities under certain conditions, it would be both unfair and unreasonable to construe the language [of the disclaimer] as negating the express description."*Id.* The court further reasoned that interpreting the disclaimer as excluding the description of the product specification would be particularly unfair where the consumer is unclear of what comprises the "standard warranty." In *Fundin,* the disclaimer was stated in the sales brochure immediately following the product description. Here, the disclaimer is within the standard warranty itself. Nevertheless, the court's reasoning that allowing the disclaimers to exclude a manufacturer's express representations of product specifications would be unfair is equally applicable here.

**\*8** Plaintiffs' fourth claim asserts that HP breached California Commercial Code section 2313(1)(a) based on the express warranties in HP's Limited Warranty. SAC ¶¶ 113-115. Plaintiffs' fourth claim is simply a repeat of the fifth claim, which the court has already addressed, *see supra* at B.1 and B.2. However, as noted above, § 2313 does not give rise to an independent cause of action. Because plaintiffs' fourth claim is redundant, the court strikes it from the complaint. *See*FED. R. CIV. P. 12(f) ("upon the court's own initiative at any time, the court may order stricken from any pleading ... any redundant ... matter").

**4. Magnuson-Moss Act**

Plaintiffs' first and second claims allege that HP violated the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, 15 U.S.C. § 2301*et seq.,* ("Magnuson-Moss Act") because it breached promises made in its Limited Warranty and Technical Support document and the HP Care Pack Service Contract. HP takes issue with plaintiffs' failure to address the Magnuson-Moss Act jurisdictional requirements in their complaint. *See* HP's Reply at 10:20-22.

The Magnuson-Moss Act "authorizes a civil suit by a consumer to enforce the terms of an implied or express warranty."*Daugherty v. Am. Honda Motor Co.,* 144 Cal.App. 4th 824, 832-33 (2006). However, the Magnuson-Moss Act sets forth specific jurisdictional requirements in order for the claim to be heard in federal court. 15 U.S.C. § 2310(d)(1)(B). In particular, the amount in controversy for each plaintiff must be at least $25, the amount in controversy for all claims in the suit must be at least $50,000, and for class actions, there must be at least 100 named plaintiffs. 15 U.S.C. § 2310(d)(3). In *Chavis v. Fidelity Warranty Services, Inc.,* 415 F.2d 620, 622-624 (D.S.C.2006), the court concluded that a federal court may have jurisdiction of Magnuson-Moss Act claims if it has jurisdiction under the Class Action Fairness Act ("CAFA") even if plaintiffs' allegations do not meet the jurisdictional requirements in § 2310(d)(3). The court reasoned that while the Magnuson-Moss Act provides that federal jurisdiction may be premised on allegations meeting the requirements in § 2310(d) (3), the Act alternatively permits jurisdiction "in any court of competent jurisdiction in any State or the District of Columbia."*Id.; see*15 U.S.C. § 2310(d)(1)(A). In other words, if a federal court otherwise has jurisdiction over the action, no additional jurisdictional showing is required for the Magnuson-Moss claim. In *Chavis,* the jurisdictional requirements for a class claim under the Magnuson-Moss act were not met as there were only two named plaintiffs. The court concluded that it had jurisdiction based on the plaintiff's allegations of federal jurisdiction under CAFA even though the plaintiff did not satisfy the requirements set forth in the Magnuson-Moss Act for class actions.

Similarly, although plaintiffs cannot satisfy the Magnuson-Moss jurisdictional requirements because they do not have 100 named plaintiffs, the court has jurisdiction based on plaintiffs' allegations of federal jurisdiction under CAFA. Therefore, plaintiffs' Magnuson-Moss claim is not barred by lack of jurisdiction. Apart from the jurisdictional requirements, in a class action, the named plaintiffs must provide notice to the defendant, provide an

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 9
Slip Copy, 2007 WL 485979 (N.D.Cal.), 62 UCC Rep.Serv.2d 76
**(Cite as: Slip Copy, 2007 WL 485979)**

opportunity to cure the alleged failure to comply with the warranty contract, and inform the defendant that they are acting on behalf of a class. 15 U.S.C. § 2310(e). Plaintiffs allege in their complaint that such notice has been provided. Finally, because the court has concluded that plaintiffs have stated a claim for breach of warranty under California law, plaintiffs have also stated a claim under the Magnuson-Moss Act. *See Daugherty,* 144 Cal.App. 4th at 833 (Under the Magnuson-Moss Act, a court generally applies the state's warranty laws.)(citations omitted).

### C. Violation of Section 17200 Based on Unlawful Conduct

*9 Plaintiffs' sixth claim asserts that HP violated Cal. Bus. & Prof.Code § 17200 claim against unlawful business acts and practices by violating the Magnuson-Moss Act, Cal. Com.Code § 2313, and section 5 of the Federal Trade Commission Act ("FTC Act") by misrepresenting the reliability of goods and employing unfair and deceptive practices in repair of such goods. Because the court concludes that plaintiffs have sufficiently stated a claim for breach of express warranty and violation of the Magnuson-Moss Act related to HP's handling of plaintiffs' warranty claims for the Pavilions at issue, plaintiffs have sufficiently stated a claim under the unlawful prong of Cal. Bus. & Prof.Code § 17200. However, as the court noted in its October 31, 2006 Order, only the Federal Trade Commission may enforce the FTC Act; plaintiffs' allegations that HP has violated the FTC Act are without support.

### D. Violation of Section 17200 Based on Unfair Conduct

In *Camacho v. Automobile Club of S. Cal.,* 142 Cal.App. 4th 1394, 1400 (2006), the court affirmed the trial court's grant of judgment on the pleadings that plaintiffs failed to allege a violation of section 17200 based on unfair practices. *See id.*("We con-

clude that, under this test, Camacho has not, and cannot, allege facts that constitute an unfair practice under section 17200."). The court so concluded after setting out a three-factor balancing approach to determine whether the alleged conduct constitutes an "unfair act" under section 17200. Thus, a court must consider "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided."*See id.* at 1403, 1405 (applying the three factors).

Here, plaintiffs have alleged that HP: (1) inadequately repaired the computers "by replacing burnt out nVidia 5700 equipped motherboards with another identical board which also generates more heat" than can be effectively dissipated by the computer; (2) inadequately repaired defects by replacing the motherboard with a downgraded GPU without compensating for the difference in value; (3) used a self-created shortage of nVidia 5700 equipped motherboards to downgrade plaintiff McDaniel's GPU and excuse its three-business day turnaround obligation; (4) conducted a secret warranty supplement program under which only select consumers receive monetary refunds or replacement computers; and (5) failed to notify consumers of known defects. SAC ¶ 152.

As to the third and fourth alleged acts, plaintiffs' allegations are vague and conclusory. In particular, plaintiffs do not make any factual allegations supporting that the shortage of nVidia 5700 equipped motherboards was created by HP. Similarly, plaintiffs do not allege fact showing that HP conducted a "secret warranty supplement program." Nevertheless, viewing the remainder of plaintiffs' allegations of unfair business acts and practices in the light most favorable to plaintiffs, the court is satisfied that plaintiffs have stated a claim based on the unfair prong of Cal. Bus. & Prof.Code § 17200.

### III. ORDER

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 485979 (N.D.Cal.), 62 UCC Rep.Serv.2d 76
(Cite as: Slip Copy, 2007 WL 485979)

**\*10** For the foregoing reasons, the court grants in part and denies in part defendant's motion to dismiss. Brothers's claims for breach of warranty based on the Limited Warranty and Technical Support document are dismissed with prejudice. Plaintiffs' fourth claim for relief is stricken pursuant to Fed.R.Civ.P. 12(f). Defendant's motion is denied as to the remaining claims.

N.D.Cal.,2007.
Brothers v. Hewlett-Packard Co.
Slip Copy, 2007 WL 485979 (N.D.Cal.), 62 UCC Rep.Serv.2d 76

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.